```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS      :    MDL DOCKET NO. 875
LIABILITY LITIGATION (No. VI) :
                              :
                              :
THIS DOCUMENT RELATES TO      :
ALL ACTIONS                   :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        FEBRUARY 24, 2009

I. INTRODUCTION

In 2005 and early 2008, certain Defendants issued subpoenas to physicians seeking the production of certain documents from the physicians who had issued a number of diagnosing reports or opinions produced by Plaintiffs in the course of litigation in MDL 875.[1]

Before the court are motions to quash these subpoenas, filed on behalf of Dr. Laxminaraya C. Rao, Dr. Richard Bernstein, and Dr. Jay Segarra (together referred to as the "Doctors"), either through their own attorneys or through counsel for MDL 875 Plaintiffs. In response, certain Defendants have filed motions to compel production of documents in accordance with the subpoenas.

For the reasons that follow, the court finds that the

---

[1] Certain Defendants issued the subpoenas at issue on November 5, 2005 (Dr. Laxminaraya Rao), November 29, 2005 (Dr. Jay Segarra), and May 8 2008 (Dr. Richard Bernstein).

objections to the subpoenas by the Doctors and the Plaintiffs lack merit and accordingly, the motions to quash will be denied. However, the court finds the subpoenas served upon the Doctors are too broad and overly burdensome, and the subpoenas will be enforced only as to the documents related to diagnoses of asbestos related conditions relied upon by Plaintiffs in MDL 875.

II. BACKGROUND

The Judicial Panel on Multidistrict Litigation has consolidated all of the federal asbestos products liability personal injury claims in the Eastern District of Pennsylvania for pretrial proceedings.[2] Defendants in this matter are alleged to have caused or contributed to the cause of asbestos related personal injuries. Plaintiffs are those individuals seeking damages for these asbestos related injuries.

In the course of the MDL 875 litigations, Defendants issued subpoenas to the Doctors who diagnosed Plaintiffs as being afflicted with various diseases, mostly resulting from occupational asbestos exposure.[3] The subpoenas seek, inter alia,

---

[2] According to statistics from the MDL Panel, there are currently approximately 99,000 cases containing at least 3.3 million claims before the court.

[3] The Doctors diagnosed a wide range of asbestos related diseases, ranging from asymptomatic asbestosis to mesothelioma, a

2

production of the Doctors' screening medical documents.[4] The Doctors, argue that the subpoenas should be quashed because: (1) production of the documents requested by the subpoenas would violate the Health Insurance Portability and Accountability Act ("HIPAA"); (2) the subpoenas are exempt from discovery because the Doctors were acting as consulting experts under Federal Rule of Civil Procedure 26(b)(4)(B); (3) The subpoenas are overly broad and unduly burdensome; and (4) the notice of the subpoenas to opposing counsel was untimely, making the subpoenas procedurally deficient under Federal Rule of Civil Procedure 45(b)(1). Defendants, in turn, have filed motions to compel full compliance with the subpoenas.

For the purposes of this opinion, substantive objections

---

particularly deadly form of cancer strongly correlated with asbestos exposure. In ruling on the motions to quash and compel, the court is primarily concerned with the Doctors' practices in diagnosing non-malignant forms of asbestos related diseases.

[4] Many non-malignant asbestos personal injury claims rely on diagnoses from doctors affiliated with screening companies. A screening company sets up mobile x-ray machines in a public place and advertises for clients. The company will x-ray any member of the public and from the x-ray, determine whether the client warrants a pulmonary function test ("PFT") to measure lung efficiency. This PFT, along with the x-ray, is used to determine what type of lung disease the client has and a final diagnosis is recorded. These medical evaluations are considered screening litigation documents.

raised by the Doctors will be addressed jointly.  Addressed in a separate section will be Plaintiffs' objection to the issuance of the subpoenas based on untimely notice.

III. JURISDICTION

Multidistrict litigation ("MDL") is governed by 28 U.S.C. § 1407, which specifically grants district court judges in transferee courts the "powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings".  28 U.S.C. § 1407(b).  Some courts have read this grant of authority to conflict with the general guidance of Federal Rule of Civil Procedure 45 which, in pertinent part, states that "the court by which a subpoena was issued shall quash or modify the subpoena . . . ."  Fed. R. Civ. P. 45(c)(3)(A).  Several courts have reconciled the language of both the statute and the federal rule to find that the statute's reference to "depositions" encompasses document production subpoenas as well.  In re Clients & Former Clients of Baron & Budd, P.C., 478 F.3d 670, 671 (5th Cir. 2007); see also In re Sunrise Sec. Litig., 130 F.R.D. 560, 586 (E.D. Pa. 1989); In re Welding Rod Prod. Liab. Litig., 406 F. Supp. 2d 1064, 1065 (N.D. Cal. 2005); United States ex rel. Pogue v.

Diabetes Treatment Ctrs. of America, Inc., 238 F. Supp. 2d 270, 274-75 (D.D.C. 2002); In re San Juan Dupont Plaza Hotel Fire Litig., 117 F.R.D. 30, 32-33 (D.P.R. 1987).[5]

This accommodation seems reasonable in light of the purpose of the statute to coordinate and consolidate pretrial proceedings, providing centralized management "to ensure 'just and efficient' conduct". United States ex rel. Pogue, 238 F. Supp. 2d at 273 (quoting In re New York City Mun. Sec. Litig., 572 F.2d 49, 51 (2d Cir. 1978)). To hold that a court presiding over an MDL case could not enforce a motion to compel would hamper the ability of an MDL court to coordinate and consolidate pretrial proceedings. United States ex rel. Pogue v. Diabetes

---

[5] Most notably, this issue arose in the MDL 875 action. Petitioners sought a writ of mandamus in the Southern District of Texas ordering the district court to rule on a motion to quash a subpoena of medical records. In re Clients & Former Clients of Baron & Budd, P.C., 478 F.3d at 670. Defendants in the Eastern District of Pennsylvania, where the MDL action is pending, issued the subpoena through the Southern District of Texas. Id. at 670-71. Judge Gilmore in the Southern District of Texas denied the writ of mandamus and ordered that the transferee court in the Eastern District of Pennsylvania had authority to quash the subpoena. Id. at 671-72.

A petition for rehearing was filed for the above decision, but was denied. However, Circuit Judge Owen wrote a dissent emphasizing the distinction in 28 U.S.C. § 1407 and suggesting that if Congress had wished for the statute to cover document production subpoenas, it would have specifically mentioned it. See generally In re Clients & Former Clients of Baron & Budd, P.C., 482 F.3d 835 (5th Cir. 2007).

Treatment Ctrs. of America, 444 F.3d 462, 468 (6th Cir. 2006). If that were the case, motions to compel oral depositions would be heard in one court, while motions seeking documents in the same case would be heard by another.[6]

The Eastern District of Pennsylvania is the district in which the MDL proceeding is pending. Accordingly, under § 1407, the court has jurisdiction to address motions to compel compliance with the subpoenas and motions to quash the subpoenas whether they request oral testimony or production of documents.

IV. DISCUSSION OF THE MERITS

    A.    <u>Segarra and Rao are Not Covered Under HIPAA and Their Litigation Screening Documents are Not Privileged Material.</u>

Doctors Segarra and Rao rely on two arguments. First, they contend that under HIPAA they are barred from producing the documents requested by the subpoena; and second, that the physician-patient privilege requires them to obtain the consent of each Plaintiff before releasing the information requested by

---

[6] This issue may be entirely moot due to the fact that Rule 45 establishes that the court issuing the subpoena has the authority to quash or modify it. Fed. R. Civ. P. 45(c)(3)(A). Here, subpoenas were issued from both the Eastern District of Pennsylvania and the Southern District of Mississippi for Dr. Segarra, the Northern District of Ohio for Dr. Rao and the Middle District of Pennsylvania for Dr. Bernstein.

6

the subpoena.  The court disagrees.

As to the first argument, the medical evaluations provided by Doctors Segarra and Rao are not covered by HIPAA.  HIPAA governs the release of protected health information - individually identified health information transmitted or maintained in any form.  45 C.F.R. § 160.103.  Entities covered by HIPAA include: "(1) a health plan, (2) a health care clearinghouse, and (3) a health care provider. . ." 45 C.F.R. § 160.102.  A health care provider includes a provider of medical services such as physician services.  45 C.F.R. § 160.103.

It is uncontested that Doctors Segarra and Rao do not qualify as "covered entities" under HIPAA either as a "health plan" or a "health care clearinghouse".  Nor are Doctors Segarra and Rao "health care providers" because they were not consulted by the Plaintiffs for physician services, but rather for the purposes of obtaining a diagnosis to be relied upon in initiating an asbestos personal injury suit.  <u>See</u> 45 C.F.R. § 160.103; 42 U.S.C.A. §§ 1395x(u), (s).  Because Doctors Segarra and Rao did not provide physician services to plaintiffs, they are not covered entities under HIPAA and, therefore, HIPAA does not prevent enforcement of the subpoenas.

7

As to the second argument[7], i.e. the physician-patient privilege requires individual consent before disclosure, generally, the physician-patient privilege arises when a physician obtains patient information from the patient during the course of treatment.[8]  See Richard J. Kohlmann, Protected Communication between Physician and Patient, 45 Am. Jur. Proof of Facts 2d 595, §4 (2008)(collecting cases).  Here, Doctor Segarra was not consulted by the Plaintiffs in order to provide treatment.  Rather, he was consulted by Plaintiffs to provide a diagnosis, which would be relied upon by the individual Plaintiffs to support a personal injury claim.[9]  Therefore, under

---

[7]   This argument is pursued only by Dr. Segarra.  In his motion to Quash the Subpoena (doc. no. 4388), Dr. Rao asserts the physician-patient privilege only to the extent that it applies to those of his patients who have not asserted a claim in MDL 875.  Dr. Rao concedes that those patients who have brought suit based on his diagnoses have waived their physician-patient privilege.  (Non-Party Witness Dr. Rao's Mot. to Quash Subpoena, 3-4, Feb. 1, 2006).

[8]   A federal court presiding over a case where jurisdiction is based on diversity of citizenship has to apply the appropriate state law on the issue of privilege.  See Fed. R. Evid. 501.  Here the Doctor Segarra has not identified which state law he is invoking.  Nevertheless, the essence of the patient-physician privilege is universal and the court will consider it in its broadest sense to apply it in this case.

[9]   It does not appear that in most cases, Doctors Segarra and Rao met the Plaintiffs in person before providing their diagnosis.

the circumstances, no physician-patient privilege attached to the information obtained from Plaintiffs by Doctor Segarra during the screening examinations.  See, e.g., Beard v. City of Chicago, No. 03 C 3527, 2005 WL 66074, at *2 (N.D. Ill. Jan. 10, 2005) (doctors who evaluate employees for fitness to return to work are not treating physicians, but rather outside doctors who are providing a service to the Chicago Fire Department under a contract).

Finally, even if the physician-patient privilege applied, it has been waived.  When a patient uses a physician's diagnosis in litigation, the patient places the essence of this information at issue, effectively waiving physician-patient privilege.[10] See Williams v. Rene, 72 F.3d 1096, 1103 (3d Cir. 1995); see also Eugene v. Miller, No. 2007-CV-0013, 2008 WL 2224824, at *1 (D.V.I. May 27, 2008); see also Koch v. Cox, 489 F.3d 384, 389 (D.D.C. 2007); Doe v. Dairy, 456 F.3d 704 (7th Cir. 2006);

---

[10]   States have also allowed, by statute, for disclosure of physician-patient privileged information when the patient puts his health at issue "as part of a claim or defense in a lawsuit." Karl A. Menninger, II, Confidentiality of Medical and Other Treatment Records,87 Am. Jur. Proof of Facts 3d 259, § 20 (2008); see also e.g. 42 Pa. C.S.A. § 5929 ("[n]o physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, . . . except in civil matters brought by such patient, for damages on account of personal injuries").

Schoffstall v. Henderson, 223 F.3d 818 (8th Cir. 2000). By bringing suit based on diagnoses of asbestosis, Plaintiffs have essentially released to the world their own medical information and waived any privilege to the privacy of that information.[11]

For the reasons stated above, Doctors Segarra and Rao cannot rely on either HIPAA protection or the physician-patient privilege in refusing to provide the information requested in the subpoena.

>    B.   Doctors Segarra and Rao Cannot Claim Consulting Expert Privilege Because They do Not Qualify as Non-testifying Experts and the Very Basis of this Suit Involves Their Diagnoses.

Plaintiffs also argue that the information requested under the subpoena is protected by the consulting expert privilege. Once again, the court disagrees.

Federal Rule of Civil Procedure 26(b)(4)(B) provides that a party may not ordinarily discover information known by an expert who was retained in anticipation of litigation, except under a showing of extreme circumstances. Fed. R. Civ. P. 26(b)(4)(B). Extreme circumstances are those "under which it is impractical for the party to obtain facts or opinions on the same subject by

---

[11] It is also generally accepted that only the patient, not the physician, can claim or waive privilege, suggesting the doctors' contentions are without merit.

other means". Id. While this rule traditionally applied only to depositions and interrogatories, and not to production of documents, courts have since recognized the interaction between the Federal Rules and have extended the protection provided under Rule 26 to subpoenas issued under Rule 45. Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1023 (Fed. Cir. 1986).

The party resisting discovery (here, the Plaintiffs) has the burden of demonstrating that the expert was retained in anticipation of litigation. Conoco, Inc. v. United States Dept. of Justice, 687 F.2d 724, 730 (3d Cir. 1982); see also Montgomery County v. MicroVote Corp, 175 F.3d 296, 305 (3d Cir. 1999). This is a highly fact specific inquiry and must be determined on a case by case analysis. See 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2024 (Civ. 2d 2008) ("[p]rudent parties anticipate litigation, and begin preparation prior to the time the suit is formally commenced. Thus the test should be, whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation"); see also Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir. 1993). Where there is no evidence of the scope and

nature of the expert's services as pertaining to the litigation or work done unrelated to litigation, an individual will likely not be considered a non-testifying litigation consultant and the consulting expert privilege will not attach. See, e.g., McNally Tunneling Corp. v. City of Evanston, No. 00C6979, 2002 WL 59115, at *2 (N.D. Ill. Jan. 14, 2002).

This was the case in a silica products liability case before Judge Jack, where she determined that the diagnosing doctors were testifying experts and rejected Plaintiff's motion to quash the subpoena. In re Silica Prod. Liab. Litig., 398 F. Supp. 2d 563, 584 (S.D. Tex. 2005). Judge Jack found that "so long as Plaintiffs were proffering the doctors and their diagnoses to fulfill the court's requirement under Order No. 6 that Plaintiffs produce diagnoses of silica-related disease, Plaintiffs cannot claim the doctors are non-testifying".[12] Id.

Here, as in In re Silica, the only evidence of the scope and nature of Plaintiffs' injuries are the reports made by Doctors Rao and Segarra in the course of their screening

---

[12] In the Silica Products Liability Litigation, Administrative Order no. 6 was a procedural order requiring production of fact sheets on which the Plaintiff had to include information about his or her diagnosing report or opinion - similar to Administrative Order no. 12 in MDL 875.

12

examinations of Plaintiffs.  These diagnostics constitute the Doctors' opinion as to whether the Plaintiffs they examined were afflicted with an asbestos related disease or malignancy. Without the Doctors' opinions, the diagnostic reports are meaningless.  By producing and relying upon the opinion of the Doctors, the Plaintiffs have, de facto, designated the Doctors as expert witnesses in this case.  Plaintiffs, having produced and relied upon the opinions of Doctors Segarra and Rao in this litigation, cannot now claim that Doctors Segarra and Rao are non-testifying experts entitled to the consulting expert privilege under Rule 26(b)(4)(B).

    C.    <u>The Subpoenas are Overly Broad and Unduly Burdensome and Will be Narrowed in Scope to Apply to Only Those Documents Related to this MDL Proceeding.</u>

The subpoenas served upon Doctors Rao and Segarra are overly broad and unduly burdensome and should be limited in scope to only those documents related to the MDL 875 action at hand.[13]

---

[13] For instance, in request number 12, the subpoenas request "any and all patient type or client specific documents" relating to "pulmonary function tests".  This applies to patients who have not brought a claim in MDL 875, and is thus overbroad. In request number 22, the subpoena asks for "any and all documents reflecting the gross revenue for your company for each year of operation".  This is irrelevant to MDL 875, and will not be enforced.  Request number 24 asks for documents identifying all past and present employees of the doctor.  This is also irrelevant, in general, to the diagnosing reports relied upon by

13

Rule 26(b)(2) states that a court may limit the scope of discovery if it finds that the request is unreasonably cumulative and the "burden or expense of the proposed discovery outweighs its likely benefit". Fed. R. Civ. P. 26(b)(2)(C)(I), (iii). The Third Circuit has recognized that, while the scope of discovery under the Federal Rules may be broad, under appropriate circumstances the court has discretion to limit and circumscribe this scope. Bayer v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999) (citing Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1322 (Fed. Cir. 1990)).

In addition, Rule 34(b) states that a request "must describe with reasonable particularity each item or category of items to be inspected". Fed. R. Civ. P. 34(b)(1)(A). "All-encompassing demands" that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A). See Frank v. Tinicum Metal Co., Inc., 11 F.R.D. 83, 85 (E.D. Pa. 1950) ("a blanket request ... for the production of all books and records related to the subject matter is obviously too general and indefinite to be granted").

---

Plaintiffs in this litigation. To the extent that these records may be relevant, the subpoena must be more narrowly tailored to obtain information which is at issue in MDL 875.

Here, the subpoenas called for "[a]ny and all documents and materials, including but not limited to all radiologists' narratives, B-readers' reports, original chest x-rays, . . . and/or any other data which in any way related to, identifies or organizes the requested documents". It also includes requests for "[a]ll files, including but not limited to patient files, relating to the testing, screening or diagnosing of any person". These two examples illustrate the extremely broad scope of the subpoena request. The Doctors see a large number of patients a year and have been practicing in the field for many years. Moreover, Defendants have not shown that all of the Doctors' patients are involved in the MDL 875 asbestos personal injury litigation. It would be burdensome and costly to require the Doctors to produce every document relating to the diagnosing of "any person" regardless of any connection to MDL 875.

Furthermore, the subpoenas request many documents which are not related to the diagnoses of MDL 875 patients in any respect. For example, the subpoenas request tax records and old tax returns of the Doctors and their practices, adverstising materials related to the doctors and their practices, and documents relating to employment arrangements with employees of the Doctors' practices. In the context of the MDL 875

15

litigation, at least at this stage, these requests are unreasonable, overbroad and overly burdensome. The court will limit the scope of the subpoenas to include only the documents named in the subpoena that relate to diagnoses and diagnosing reports of patients who have filed claims now included in MDL 875. See Bayer A.G., 173 F.3d at 191.

   D.   Notice of the Subpoenas was not Served on All Plaintiffs Until After the Subpoena was Served on Doctor Bernstein.

With respect to Dr. Bernstein, counsel for the Plaintiffs requests that the court quash the subpoena because notice of the subpoena's issuance was not given to MDL 875 Plaintiffs' counsel until after the subpoena was served on Dr. Bernstein. Plaintiffs' counsel relies on the language of Federal Rule of Civil Procedure 45(b)(1), which states that "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served, a notice must be served on each party". Fed. R. Civ. P. 45(b)(1). Plaintiffs argue that Defendant's failure to give notice prior to the service of the subpoena renders the subpoena void and unenforceable. Spencer v. Steinman, 179 F.R.D. 484, 488 (E.D. Pa. 1998).

   On January 28, 2009, the court held a hearing on Plaintiffs'

motion to quash a subpoena issued on December 17, 2008 to the Forty-Eight Insulations Qualified Settlement Trust.  In that case, the counsel for the Plaintiffs did not receive notice until December 23, 2008 and moved to quash the subpoena based upon Rule 45(b)(1).  Pls. Mot. to Quash Forty-Eight Insulations Subpoena (doc. no. 5578) (E.D. Pa., filed Dec. 30, 2008).  Plaintiffs' arguments to quash this subpoena were substantively the same as the arguments in their motion to quash the subpoena issued to Dr. Bernstein, i.e. that the subpoena was procedurally deficient because it was not properly served under Rule 45(b)(1).

At the hearing on January 28, 2009, the court ruled that all parties in the case where the subpoena is issued must be given notice of the subpoenas before, or at least contemporaneously with, the issuance of the subpoena to the third party.  The court held that, moving forward, sanctions would be imposed against any party that does not provide notice or subpoenas in accordance with Rule 45(b)(1).  The motion to quash was denied, however, because the Plaintiffs suffered no prejudice from the procedural deficiency.  The Plaintiffs were not prejudiced because, as in this instance, the delay did not interfere with Plaintiffs' ability to file an objection prior to the production of the documents by the third party.  See Ginley v. E.B. Mahoney

Builders, Inc., No. 04-1986, 2006 WL 266507, at *2-3, n.3 (E.D. Pa. Jan. 31, 2006); Seewald v. IIS Intelligent Info. Sys. Ltd., No. 93-4252, 1996 WL 612497 (E.D.N.Y. Oct. 16, 1996).  Similarly, the Plaintiffs suffered no prejudice here, because they have been able to assert timely objections.  Parties should note, however, the standing order of the court that a party issuing a subpoena to a third party must send notice to all parties before, or at least contemporaneously with, the issuance of the subpoena or sanctions will be levied against the violating party, including the possible exclusion of evidence collected as a result of a breach of the notice provision of Rule 45.

V.   CONCLUSION

For the reasons stated above, all motions to quash these subpoenas will be denied.  Defendants motion to compel compliance will be granted in part and denied in part.  The motions to compel will be granted to the extent that Doctors Segarra, Rao, and Bernstein must produce any subpoenaed documents that are relevant to the diagnoses or diagnosing reports relied on by any Plaintiff in MDL 875.

An appropriate order follows.

```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS         :
LIABILITY LITIGATION (No. VI)    :
                                 :
CERTAIN PLAINTIFFS               :    Consolidated Under
                                 :    MDL DOCKET NO. 875
     v.                          :
                                 :
CERTAIN DEFENDANTS               :
                          O R D E R
```

1

**AND NOW,** this **19th** day of **February, 2009,** it is hereby **ORDERED** that Certain Defendants' Motion to Compel (doc. no. 4521) is **GRANTED in part** and **DENIED in part.**  It is **GRANTED** to the extent that Dr. Jay Segarra, Dr. Laxminaraya Rao and Dr. Richard Bernstein are compelled to produce all documents and information relating to diagnosing reports or opinions for Plaintiffs with claims currently pending in MDL 875 within 20 days.  This includes information on the methodology that each doctor used in preparing this diagnosing report or opinion.  It is **DENIED** to the extent that the motion seeks to compel production of documents unrelated to claims currently pending in MDL 875.  The subpoenas are overly broad and unduly burdensome in their scope and will be tailored by the court to apply strictly to materials relevant to MDL 875.

**AND IT IS SO ORDERED.**

                          **S/Eduardo C. Robreno**
                          **EDUARDO C. ROBRENO, J.**