UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | } | MDL DOCKET NO. MDL 875 |
| LIABILITY LITIGATION (No. VI) | } | |
| | } | |
| _____ | } | |
| | } | |
| THIS DOCUMENT RELATES TO: | } | |
| ALL ACTIONS | } | |

**CERTAIN DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
CLARIFICATION OR FOR RECONSIDERATION OF THE COURT'S ORDER TO
COMPEL DR. SEGARRA, DR. RAO AND DR. BERNSTEIN**

COME NOW Certain Defendants[1] ("Defendants") and respectfully submit this response to Plaintiffs' Motion for Clarification or, in the Alternative, for Reconsideration of the Court's Order Granting in Part and Denying in Part Certain Defendants' Motions to Compel Dr. Segarra, Dr. Rao and Dr. Bernstein to Respond to Subpoenas as follows:

This Court's February 2009 Order directs Dr. Segarra, Dr. Rao and Dr. Bernstein to produce "all documents and information relating to diagnosing reports or opinions for Plaintiffs with claims currently pending in MDL 875 . . . ."[2] Plaintiffs' counsel objects to this ruling on the

---

[1] A.R. Wilfley & Sons, Inc.; Accurate Felt & Gasket Co., Inc.; Allied Glove Corporation (sometimes sued as Nationwide Glove Corporation); Amsted Industries, Inc.; Baldor Electric Company; Bondex International, Inc.; CertainTeed Corporation; Chemtura Corporation; Cooper Alloy Corp.; Crossfield Products Corp.; Eastern Safety Equipment Company, Inc. (sometimes sued as Aearo Company); Flexo Products, Inc.; Gardner Denver, Inc.; General Electric Co.; Georgia-Pacific Corporation; The Gorman-Rupp Company; Gulf Coast Marine Supply Company; Pulsafeeder, Inc.; Viking Pump Company; Warren Rupp, Inc.; Illinois Tool Works Inc.; Ingersoll-Rand Company; Lawrence Pumps, Inc.; Magnetrol International Incorporated; Marine Specialty Company, Inc.; Mueller Steam Specialty; National Service Industries, Inc. f/d/b/a North Bros. Company; Owens-Illinois, Inc. d/b/a O-I; Pecora Corporation; Pneumo Abex, LLC; Rogers Corporation; Aurora Pump Company; BIF; DeZurik, Inc.; Layne & Bowler Pump Group; Marsh Instruments; Standard Equipment Company, Inc.; Terex Corporation; Terex Cranes, Inc.; The American Crane Corporation; Turner Supply Company; Union Carbide Corporation; Amchem Products, Inc.; Warren Pumps, LLC; "Yeoman's Chicago Corporation" (also erroneously served for "Chicago Pump Company" and/or "Morris Machine Works/Morris Pumps"); Yuba Heat Transfer.

[2] As more fully set forth in Certain Defendants' Motion for Reconsideration, filed on March 12, 2009, Certain Defendants request the Court to partially lift the limitation on the scope of discovery provided for in its recent order to allow additional materials essential to the evaluation of the methodology, practices, and screening

alleged basis that some of these materials would be protected under the consulting-expert privilege – specifically, any documents that have not been previously "produced or relied on by plaintiffs in MDL 875" because "physicians issuing such reports would, by definition, be characterized as non-testifying experts or experts informally consulted."  Motley Rice LLC Motion for Clarification, filed on Mar. 6, 2009, at ¶ 8-9.  This argument is in error and is inconsistent with prior rulings of this Court.

This Court has ruled repeatedly and consistently that the consulting expert privilege does not apply to screening records and materials – despite Plaintiffs' counsel's most recent attempts to carve out a new exception to the contrary.  Indeed, Defendants submit that the order of the Court should <u>not</u> be further limited, as proposed by Plaintiffs' counsel, but instead should be modified so that it is not in conflict with prior orders of this Court that authorize the production of <u>all</u> documentation, information, materials, and opinions rendered, generated, or allegedly authored by screening doctors in their litigation practice.

Finally, Defendants would submit to the Court that Motley Rice LLC, as a law firm, does not have standing to object to the subpoenas issued and, by extension, does not have standing to request that this Court reconsider its ruling.[3]  Nevertheless, Defendants address the merits of Motley Rice LLC's motion below.

---

litigation work of the doctors at issue in MDL 875.  *See* Certain Defendants' Motion for Reconsideration of the Remedy Granted in the Court's Order to Compel Dr. Segarra, Dr. Rao, and Dr. Bernstein.

[3]  Interestingly, Motley Rice LLC continues to file motions that fail to identify the plaintiffs for whom it allegedly asserts a consulting expert privilege.  Without this information, this law firm lacks standing because a movant is required to identify the specific parties on whose behalf a motion is filed.  Standing is a threshold question that cannot be waived.  *Belitskus v. Pizzingrilli*, 343 F.3d 632, 639 (3rd Cir. 2003) (citations omitted).  In the instant matter, although Motley Rice LLC's motion is styled as "Plaintiffs' Motion for Clarification," it fails to identify any specific individual plaintiff or client on whose behalf it is allegedly brought.  Rather, as with previous motions filed by this firm, the contents of the motion reveal that it is the law firm itself that is the movant.  Motley Rice is not a party to this litigation and has not moved the Court for permission to intervene as mandated by Federal Rule of Civil Procedure 24.  This is a procedurally critical flaw.  *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 499 (3rd Cir. 1982); *In re Beef Ind. Antitrust Litig.*, 589 F.2d 786, 789 (5th Cir. 1979).  Accordingly, Motley Rice has no

# I. INTRODUCTION

In this Response to Motley Rice LLC's motion, Defendants detail below the reasons why Plaintiffs' counsel's proposed additional limitations on this Court's order are improper under the Federal Rules of Civil Procedure and are in direct conflict with prior orders of this Court.  In Defendants' Motion for Reconsideration of the Remedy Granted, filed contemporaneously with this Response, Defendants propose an adjustment to the remedy the Court crafted in response to its finding that the subpoenas at issue were overly broad.   The proposed adjustment minimizes the burden on the subpoenaed doctors while still permitting enough discovery to uncover potential fraud, suspect practices, and flawed methodology to be uncovered.   Defendants respectfully submit that this adjustment will accomplish two valuable goals: first, it will ensure the Court's ruling is consistent with prior rulings of this Court; and second, and most importantly, it will enable the parties and the Court to continue to determine which claims are suspect or fraudulent (and therefore should be dismissed) and which claims are medically legitimate (and therefore merit the resources of the parties and this Court).

In their motion for reconsideration, Plaintiffs' counsel argue that any screening reports, materials, or information (including interpretations and opinions generated by, or in the name of, the doctors at issue), which were not previously produced or relied upon, should be protected

---

standing to challenge the subpoena at issue and, consequently, the firm does not have standing to move for clarification regarding this Court's rulings.

As a general rule, a motion to quash a subpoena *duces tecum* should be made by the person from whom the documents and things are requested rather than a party to the litigation. *Vogue Instrument Corp. v. Lem Instruments Corp.*, 41 F.R.D. 346 (S.D.N.Y. 1967).  A limited exception is made when a party seeks to quash a subpoena based on justified claims of privilege relating to the documents being sought.  *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995); *States v. Nachamie*, 91 F. Supp. 2d 552, 558 (S.D.N.Y. 2000).  However, if the party moving to quash cannot show any personal right or privilege with respect to the materials subpoenaed, it does not have standing to make the motion.  *E.g., Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Vogue Instrument Corp.*, 41 F.R.D.

The burden to demonstrate standing is a threshold issue that is squarely upon Motley Rice LLC.  As with previous motions filed in this Court, the firm has failed to establish or demonstrate any personal right or privilege on behalf of a party to the litigation – nor can they without identifying the specific plaintiffs for whom the firm is filing its motion.  Nevertheless, Defendants address the merits of Motley Rice LLC's motion below.

from disclosure under the "consulting expert privilege" exemption found in Federal Rule of Civil Procedure 26(b)(4). Plaintiffs further argue that Defendants have not met their "heavy burden" of demonstrating "exceptional circumstances" necessary to obtain discovery of these materials. Plaintiffs' arguments, however, are not valid and, therefore, should not provide an avenue to conceal any records, documents, or materials related to the practices and methodology of the screening doctors at issue in MDL 875. To allow for the relief suggested by Plaintiffs' counsel would, in effect, provide a wall of protection for fraudulent or suspect diagnoses, screening doctors, and/or screening companies. A wall which was finally breached in the federal silica MDL No. 1553 and which should not be re-constructed by this Court.

As is by now well known, a significant number of asbestos plaintiffs' claims materialized following the plaintiffs attendance at an asbestos "screening" where individuals were examined for exposure to asbestos and asbestos-related disease for the purpose of generating personal injury litigation claims. These screenings were typically sponsored by law firms and took place at hotels, clinics, union halls, or inside mobile x-ray units or trucks. The standard operating procedure during this process was such that screenees would: (1) provide or confirm background information; (2) complete paperwork acknowledging a lack of physician-patient relationship with the screening doctor; (3) execute a pre-printed statement retaining the law firm sponsoring the screening; and then, (4) proceed through the "diagnosing" process.

Some, but not all, of the "diagnoses" generated during the screening process then become the basis for the filing of complaints alleging personal injury. Indeed, in the limited instance where an individual failed to receive a "diagnosis" of an asbestos-related disease at the initial screening, screening companies would then often "shop" those negative findings to multiple screening doctors including, for example Dr. Jay Segarra, in an effort to find a doctor who would

render a positive diagnosis.   Finally, even in some instances where a positive diagnosis was rendered at the initial screening (but a law firm or screening company was hesitant to use the opinion of that particular screening doctor), those positive diagnoses would be shipped to another screening doctor who would then render a positive diagnostic opinion to be used as the basis for litigation.   Importantly, the opinion of the initial screening doctor (whether negative or positive) on which the subsequent screening physician relied was rarely, if ever, acknowledged or voluntarily produced by plaintiffs.   *In re Silica Prods. Liab. Litig.*, No. MDL 1553, 398 F. Supp. 2d 563, 601 (S.D. Tex.).

Thus, the information, documentation, interpretations, opinions, reports, and/or diagnoses generated at these screenings not only provide the initial diagnosis of asbestos-related disease or injury for the vast majority of asbestos cases, but are also, in reality, the sole basis upon which many plaintiffs pursue their claims – whether disclosed or not, whether admittedly relied upon or not.

It is for these reasons, as well as a host of others outlined in Defendants' Motion for Reconsideration, that this Court has consistently ordered full and complete productions of all documents and materials relating to the litigation work of screening doctors and screening companies.   Indeed, productions have mostly been limited to the extent that only screening records – and not a doctor's actual clinical practice records – are ordered to be produced.   For example, though litigation physician Dr. Alvin Schonfeld produced all categories of documents, including screening financial records, with respect to his screening litigation work, the only limitation placed upon his production by this Court was that of "his [personal] state and federal tax returns."   MDL 875 Production Order Dr. Alvin Schonfeld, at ¶ 1.

Pursuant to the prior discovery orders of this Court, numerous doctors and screeners have produced their entire set of litigation records without regard to whether the records were relied upon by, or even related specifically to, claimants in MDL 875 claims.  This authorization of full discovery of litigation screening materials has been imperative in the exposure of critical documents evidencing the fraudulent patterns and practices responsible for the creation of the majority of the plaintiffs' cases pending in this Court.

Further, this level of discovery is effective because it makes the complete spectrum of litigation records of a doctor or screener available, and thus, the methodologies, patterns and practices, inconsistencies and, in some instances, fraudulent means employed by those physicians and screeners detectable.  The parties and this Court no longer have to rely only on physician testimony and the language stated in a few limited reports to attempt to ascertain whether the methodology employed was reliable, suspect, or at worst, fraudulent.  Individual diagnoses and reports no longer have to be evaluated in isolation on a case-by-case basis.  One report can now be cross referenced with all other reports created that day, all other reports created in conjunction with the same or other doctors and screeners, and prior sworn testimony.

On prior occasions, this Court has correctly determined that screening doctors are, in reality, fact witnesses in this litigation rather than experts.  April 1, 2008 Transcript of Hearing Regarding Emergency Motion to Quash the Deposition of Dr. James P. Krainson before Judge James T. Giles, *In re Asbestos Prods. Liab. Litig (No. VI)*, p. 13, 17 (E.D. Pa.) (stating, "[I]f what he did was screening, he's not really a medical expert" and even if he is a consulting expert, "there are exceptional circumstances" and therefore the deposition, and discovery into litigation physicians, "will go forward").  Thus, in prior opinions, this Court has ruled that the consulting-expert privilege upon which Plaintiffs' counsel now attempts to rely is inapplicable and/or that

the exception to the rule against this type of discovery applies because "Certain Defendants are in substantial need of the materials and are unable without undue hardship to obtain the substantial equivalent of the materials by other means."  MDL 875 Production Order Regarding Dr. Robert Springer, Dr. Harvey M. Richey, and Consultants in Pulmonary & Occupational Medicine, P.A., at ¶ 5.  Put simply, without these materials, it is impossible for this Court or any of the parties to determine whether a screening company or screening doctor's methodology and practice is suspect or valid.

Accordingly, Defendants respectfully request that this Court deny Plaintiffs' counsel's motion for reconsideration, uphold its prior rulings that the consulting-expert privilege is inapplicable to the screening doctors and companies involved in asbestos litigation and/or that the exception to the rule against this type of discovery continues to apply under the circumstances before this Court, and require the production of any and all documents and materials relating to the screening litigation work of these doctors.

## II. ARGUMENT AND AUTHORITIES

**A.**   **Records and Materials from These Screening Doctors Are Discoverable Under the Federal Rules of Civil Procedure.**

**1.**   **All Diagnostic Records and Materials of MDL 875 Plaintiffs Are Discoverable.**

Plaintiffs' counsel argue that the Court's order should be limited to only those positive diagnoses previously produced or admittedly relied upon by MDL 875 plaintiffs.  Such a limitation should not be placed on the discovery in this litigation for three reasons.  First, the Federal Rules of Civil Procedure permit discovery into any matter, not privileged, that is relevant to "any party's claim or defense . . . [and f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be

admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."  Federal Rule of Civil Procedure 26(b)(1).

Second, "[w]here the patient institutes suit to recover for physical injuries, the patient waives the privilege as to all medical treatment and examination as to the injuries of which complaint is made."  *Dennie v. Univ. Pittsburgh School of Med.*, 638 F. Supp. 1005, 1008 (*citing In re Agent Orange Prod. Liab. Litig.*, 91 F.R.D. 616 (E.D.N.Y.1981)).  "In essence, once a plaintiff complains of physical injuries, the world of medical information as to those injuries is the defendant's oyster."  *Id.* at 1009.  This Court has agreed holding, "even if the physician-patient privilege applied, it was has been waived."  Exhibit 1, Feb. 24, 2009 MDL 875 Memorandum Order, at p. 9 (hereinafter "Memorandum Order").

Third, the records that plaintiffs wish to protect from production were not created in the context in which the consulting expert exception actually applies, i.e where consulting experts work with attorneys to authentically evaluate claimants' medical conditions.  To be clear, these records were created as part of the common churning of inventories of plaintiffs by the litigation screening industry, compromised of screening companies and screening doctors, in order to maximize positive diagnoses and, in turn, maximize profits.  The reports and materials that Plaintiffs' counsel seek to protect exist as a result of the screening process and typically serve as the basis of "paper review" diagnoses by other physicians.  Furthermore, the only way to determine whether any individual plaintiff's diagnosis was shuffled in effort to obtain a positive diagnosis is to evaluate all records, reports, and opinions created by litigation physicians and screeners.

Therefore, all screening documents and records of a particular screening doctor or company directly relate to screened asbestos plaintiffs' claims – regardless of "diagnosis" or lack thereof – and are properly discoverable under the Federal Rules of Civil Procedure.

## 2.     Medical Records Are Relevant.

Defendants are entitled to all documents and records that relate to Plaintiffs' claims of asbestos-related disease whether or not Plaintiffs relied upon them.  In their motion, Plaintiffs' counsel assert that the "reasons Plaintiffs may not have relied on or previously produced the reports are numerous but the primary reasons are because the physicians may not have diagnosed an asbestos-related injury or disease or because the disease diagnosed may have been less severe than the diagnosis of another physician."  (Motley Rice LLC Motion, ¶ 8).  This assertion makes the Defendants' point.  The screening records sought are relevant to a variety of issues in these lawsuits, namely: (1) the accuracy of the diagnoses made, (2) the qualifications of the personnel conduction testing; (3) the reliability of the methodologies applied and opinions rendered; (4) the thoroughness and quality of the evaluations and screenings, (5) the reliability of the evaluation and screening procedures and equipment employed; (6) the measurement of the extent of the alleged disease; (7) the progression, if any, of the alleged disease; (8) the accuracy of Plaintiffs' alleged impairment and related issues about prognoses based on pulmonary function testing; (9) the accuracy of alleged damages and disability; (10) whether x-ray films were "shopped" for a positive diagnosis; (11) the pattern and practices of screening and litigation physicians which affects the reliability of any single opinion or diagnosis; and finally, (12) whether or not a given plaintiff's claims were timely filed, depending on the date of the "less severe" diagnosis, if any.

The purpose of the screening or litigation evaluation process is to provide diagnoses of asbestos-related disease, either as the sole supporting evidence of Plaintiffs' alleged injury

claims or as the bases for subsequent diagnoses by testifying experts.  Plaintiffs must produce evidence of an injury in order to have a viable claim.  Without use and/or reliance on the records generated in these litigation evaluations and screenings, Plaintiffs have no way to support their allegations of injuries, and thus would have no legitimate claims.  As noted above, Plaintiffs have waived any privilege with respect to all treatment and examinations concerning the very conditions they have placed at issue.  See *Dennie*, 638 F. Supp. at 1008 (*citing In re Agent Orange Prod. Liab. Litig.*, 91 F.R.D. 616 (E.D.N.Y.1981)).  Thus, the documents and diagnoses sought by Defendants are discoverable.

### 3.     Production of All Records Is Necessary to Assess Reliability, Qualifications and Methodology of the Testing Process, Diagnoses, Personnel and Screening Doctors.

It has been the experience of Defendants, the Silica MDL No. 1553 Court, and this Court, that discovery of all records, including screening test reports, billing records, correspondence, and other documents relating to the alleged injury of the plaintiff is essential in assessing the reliability and accuracy of plaintiffs' "diagnoses" - based in part on the soundness of equipment used, methodology employed, and qualifications of the personnel, and the bias of the screening companies and doctors involved.  Because qualifications of personnel, methodology utilized, and bias affect the reliability of diagnoses used to support plaintiffs' claims of asbestos-related injuries, Defendants are entitled to disclosure of the identities and discovery of information relating to *any* individual, screening doctor, screening personnel, or screening company that participated in any manner in generating information related to plaintiffs' alleged diagnoses through the screening process.  *See, e.g.*, Motion to Exclude Respiratory Testing Services, filed on April 3, 2007; Motion to Exclude Dr. Ray Harron and Dr. James Ballard, filed on June 7, 2006; Motion to Exclude Dr. Jay Segarra, filed on September 7, 2007.

10

**B.**     <u>**Discovery Sought Is Not from Consulting Experts**</u>

This Court correctly ruled in its February 24, 2009 Memorandum Order that Dr. Segarra and Dr. Rao cannot claim the consulting expert privilege since the very bases (admittedly or not) of plaintiffs' claims involve their opinions.  It is patently obvious that these screening doctors were not hired for consultation purposes, but rather to provide positive diagnoses for profit.  As one court stated, "[i]f a medical expert is hired for a purpose other than as a trial consultant, such as for examination and treatment, or for consultation in connection with improving the health of the person, his or her identity and records are not protected from discovery." *Teran v. Longoria*, 703 S.W.2d 300 (Tex.App., Corpus Christi, 1985 orig. proceeding).  Judge James T. Giles previously addressed this question and determined that litigation doctors, including Dr. Harvey Richey, Dr. Robert Springer and Dr. James Krainson, had been hired by "various screening companies and law firms to screen and/or diagnose individuals with pneumoconiosis for litigation rather than medical purposes."  Exhibit 2, Order, *In Re: Asbestos Products Liability Litigation (No. VI)*, MDL Docket No. MDL 875 (E.D. Pa., Feb. 17, 2006 (Dr. Krainson)). Accordingly, such litigation doctors are not subject to a consulting expert privilege.  Exhibit 3, Order for Production by Dr. Robert Springer, Dr. Harvey M. Richey, and screener Consultants in Pulmonary & Occupational Medicine, *In Re: Asbestos Products Liability Litigation (No. VI)*, MDL Docket No. MDL 875 (E.D. Pa., Feb. 12, 2007).

Indeed, even if the rule applies, it is possible to discover the work product and opinions of a consulting expert upon a showing of "exceptional circumstances." A party attempting to make such a showing bears a "heavy" burden. *Hartford Fire v. Pure Air*, 154 F.R.D.202 (N.D.Ind., 1993). Exceptional circumstances are present where the other party lacks the ability to discover equivalent information by other means, *id.* at 208,  and where one party's experts cannot

duplicate a test or an observation by a consulting expert. For example, in *Sanborn v. Kaiser*, 45 F.R.D.465 (E.D.Ky.'68), involving a claim for defective sewer pipe, the plaintiff's experts were present and took photographs when the pipe was removed and replaced. Plaintiff, however, denied access to defendant's experts. Defendant was entitled to plaintiff's consulting experts' reports and photographs because the information could not be obtained by defendant's experts. See also *Delcastor v. Vail*, 108 F.R.D.405 (D.Colo. 1985) (compelling deposition of consulting expert who investigated a mud slide in part because conditions at the site had changed).

Thus, the consulting-expert privilege, which originated from the attorney work product privilege, does not protect experts who acquire factual knowledge and information by virtue of direct involvement in an action in question, in this case, the screening for and diagnosing of a disease.  Thus, this Court's prior finding that screening doctors are indeed fact witnesses rather than experts removes these physicians from the shelter of the consulting-expert privilege. Moreover, "[t]he protections afforded by 26(b)(4)(B) were never intended to shield a witness from full and fair examination.  Rather, the Rule was intended to prevent an advisor from becoming an involuntary witness." *Delcastor, Inc. v. Vail Associates, Inc.,* 108 F.R.D. 405, 408, (D.C.Colo., 1985).

Here, as previously determined by this Court, the screening doctors at issue used information (exposure histories, physical examinations, x-rays, and PFTs) obtained directly from plaintiffs themselves or by screening personnel, in order to make diagnoses of asbestos-related disease  Thus, the diagnosing screening doctors will often have firsthand knowledge about facts essential to the defense of the plaintiffs' claim and, therefore, would fall outside the consulting-only expert privilege.  In other instances, a screening doctor actually issuing a diagnosing report relies upon reports from other screening doctors who performed the full examination of the

plaintiff, looked at Plaintiffs x-ray films from the initial screening and issued a B-read, etc.. Therefore, the prior reports are discoverable, since a party may also obtain access to a consultant's work where a testifying expert relies on it in forming his opinion. *Heitmann v. Concrete Pipe*, 98 F.R.D.740 (E.D.Mo. 1983) (testifying expert relied on consulting expert's report); *Delcastor*, 108 F.R.D. at 408 (testifying expert relied on the report of the consulting expert who had the first opportunity to observe conditions after a mudslide).

Thus, as demonstrated above, the consulting-only expert privilege is simply not applicable in these cases.  See, Brickman, *The Use Of Litigation Screenings In Mass Torts: A Formula For Fraud?* 61 SMU L. REV. 1221, 1315-35 (2008).

### III.   CONCLUSION

Federal Rules and law permit the disclosure and discovery of all records, documents, materials, opinions, and diagnoses involved in the personal injury claims of plaintiffs who have put their medical condition at issue with the filing of a claim for injury as a result of a disease. The attempts of Plaintiffs' counsel to hide this information from Defendants under the guise of "attorney work product" or "consulting expert" privilege should not be tolerated by this Court. Furthermore, prior rulings of this Court recognized that screening doctors, like those at issue in Plaintiffs' counsel's motion, are in effect fact witnesses to this litigation rather than expert witnesses and, thus, fall outside the scope of the consulting-expert privilege.  Finally, even if the privilege were to apply, this Court has previously determined that the exception to the rule against this type of discovery is applicable in these cases and that Defendants have met their burden with respect to that issue.

Indeed, it is only by overruling any consulting-expert objection and allowing full discovery of the litigation work of screening companies and screening doctors at issue that this

Court will be able to separate the suspect or fraudulently screened claims pending before it from the medically legitimate claims that may exist.  This premise was recognized by Judge Weiner when he initially authorized discovery against these types of entities, was supported by Judge Jack's opinion in MDL No. 1553 and subsequent production orders to an asbestos and silica screening company, and, most importantly, specifically addressed in numerous prior rulings of this Court.  To rule inconsistently with Judge Giles' prior rulings on this issue would, in effect, destroy any chance this Court has of riding itself of the mass of fraudulently screened cases pending before it.

WHEREFORE, PREMISES CONSIDERED, Defendants pray that the Court deny Plaintiffs' Counsel's motion for clarification or reconsideration or for such other relief, in law or equity, to which Defendants may show they are justly entitled.

This the 12th day of March, 2009.

/s/ *Marcy B. Croft*_____
Walter G. Watkins, Jr. (MSB# 6988)
Marcy B. Croft (MSB# 10864)
Mary Margaret Gay (MSB# 100672)

OF COUNSEL:

FORMAN PERRY WATKINS KRUTZ & TARDY LLP
200 South Lamar Street
City Centre Building, Suite 100S
Post Office Box 22608
Jackson, Mississippi 39225-2608
Phone:          (601) 960-8600
Fax:             (601) 960-8613

## CERTIFICATE OF SERVICE

I hereby certify that I have electronic filed the foregoing document with this Court on the ALL ACTIONS docket,  served Counsel for Plaintiffs Motley Rice LLC pursuant to the Federal Rules of Civil Procedure, and mailed via United States mail, postage prepaid, a true and correct copy of the foregoing document to counsel for the plaintiff at their usual business address.

THIS, the 12th day of March, 2009.

/s/ *Marcy B. Croft*
Walter G. Watkins, Jr. (MSB# 6988)
Marcy B. Croft (MSB# 10864)
Mary Margaret Gay (MSB# 100672)