UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA


IN RE: ASBESTOS PRODUCTS          )
LIABILITY LITIGATION              )    Consolidated under
                                  )    MDL DOCKET NO. 875
                                  )
                                  )    Philadelphia, PA
                                  )    September 25, 2009
                                  )


TRANSCRIPT OF SCHEDULING CONFERENCE
BEFORE THE HONORABLE THOMAS J. RUETER
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:


For the Plaintiffs:          RICHARD BULLOCK, ESQUIRE
                             Early, Ludwick & Sweeney
                             One Century Tower, 11th Floor
                             265 Church Street, P.O. Box 1866
                             New Haven, Connecticut 06508

For the Buffalo Pumps:       DAVID A. GOLDMAN, ESQUIRE
                             Governo Law Firm
                             260 Franklin Street
                             Boston, Massachusetts 02110

For Westinghouse:            ANTHONY MIRABILE, ESQUIRE
                             McShea, Tecce
                             Bell Atlantic Tower, 28th Floor,
                             1717 Arch Street
                             Philadelphia, Pennsylvania

For Foster Wheeler:          R. BART TOTTEN, ESQUIRE
                             JAMES R. OSWALD, ESQUIRE
                             Adler, Pollock & Sheehan, P.C.
                             One Citizen's Plaza, 8th Floor
                             Providence, Rhode Island 02903

                             DENNIS VEGA, ESQUIRE
                             Sedgwick, Detert, Moran & Arnold
                             3 Gateway Center
                             12th Floor
                             Newark, New Jersey 07102

(Appearances Continue)

For Crane & Company:        ERIC COTTLE, ESQUIRE
                            K&L Gates LLP
                            Henry W. Oliver Bldg.
                            535 Smithfield St.
                            Pittsburgh, Pennsylvania

For Bendix:                 BENJAMIN ROSE, ESQUIRE
                            Rawle & Henderson
                            The Widener Building
                            One South Penn Square
                            Philadelphia, Pennsylvania

For General Electric:       DAN LaBELLE, ESQUIRE
                            Halloran & Sage LLP
                            315 Post Road West
                            Westport, Connecticut

                            JEFFREY THOMEN, ESQUIRE
                            McCarter & English
                            CityPlace I
                            185 Asylum Street
                            Hartford, Connecticut 06103

For McMaster Car            JAMES P. HADDEN, ESQUIRE
Supply Company:             Marks, O'Neill, O'Brien & Courtney
                            1800 John F. Kennedy Boulevard
                            Philadelphia, Pennsylvania 19103

Audio Operator:             Mark Rafferty

Transcribed by:             DIANA DOMAN TRANSCRIBING
                            P.O. Box 129
                            Gibbsboro, New Jersey  08026-129
                            PHONE:  (856)435-7172
                            FAX:    (856) 435-7124
                            E-mail:  Dianadoman@Comcast.net

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

1    (Call to the Order of the Court)

2       THE COURT:  I like to introduce myself.  My name is

3    Judge Reuter.  Many of you have met me already.  I see some

4    familiar faces back there.

5       Let me tell you about our agenda, what I like to do.

6    First of all, I'd like to see who's here today.  That's the

7    first thing.  I'll take a little bit of a roll call.  And

8    then, after that, I'd like to go through each of the

9    individual cases, I've grouped into two, the Rhode Island case

10   and the Connecticut cases.

11      And I'd like to get -- hear the views from counsel on

12   where we are in discovery on those cases.  I don't think

13   there's -- scheduling orders have been entered into any of

14   these cases.  So to the extent we need to enter a scheduling

15   order, I'll do that after hearing the input of counsel.

16      And then I want to meet with the plaintiff's attorney

17   and with each of defense counsel.  Some of you I know have

18   clients that are in multiple cases here and named as

19   defendants.

20      I'll meet privately with both you and the plaintiff's

21   counsel, to see if we can settle of these cases.  Okay?  And

22   if there's any other items, any other issues you want to

23   discuss, we can do that, too.

24      So let me first -- what I did was, I went through all

25   the dockets for each one of these cases.  And I made a list of

1   each of the defendants.

2          Surprisingly, some of these dockets I don't think are

3   correct, because some defendants, I've received some

4   settlement memorandum from some defendants that are not named

5   in the docket.

6          So what I want to do is, I'm going to go through each

7   of these defendants, and if you would, stand up if you

8   represent any of these defendants, and identify yourself.

9   Okay?

10         Let me first ask counsel for plaintiffs to introduce

11  themselves.

12         MR. BULLOCK:   Richard Bullock, Your Honor, with the

13  law firm of Early, Ludwick & Sweeney.

14         THE COURT:   Okay.  And, Mr. Bullock, you represent

15  all the plaintiffs in all the cases, right?

16         MR. BULLOCK:  Yes, sir.

17         THE COURT:   Okay.  Great.  Thank you.  All right.

18  First Asbestos Corporation Limited, named as defendant in the

19  William Koslowski case, from the District of Rhode Island.

20         MR. BULLOCK:  They are not a defendant anymore, Your

21  Honor.

22         THE COURT:  They've been dismissed, or --

23         MR. BULLOCK:  They should have been dismissed, if

24  they were not.

25         THE COURT:  Okay.  Well it looks like they haven't

1    been dismissed, because they're still on the docket.  So --

2                MR. BULLOCK:  I noticed that -- I'm sorry.

3                THE COURT:  Yes.  Go ahead.

4                MR. BULLOCK:  I noticed that, for some strange reason

5    on a lot of these removal cases, the District Court adds in a

6    whole bunch of defendants that weren't named in the original

7    state court complaint.

8                THE COURT:  Oh, really.

9                MR. BULLOCK:  So I think the electronic docket is

10   incorrect.  And if you actually look at the suit that was

11   removed -- now that may not be true for Koslowski, but in a

12   lot of them --

13               THE COURT:  If you look at the docket from the

14   District of Rhode Island, they're not named in the case.

15   Okay.  Well, great.  Thank you.

16               Bell Asbestos Mines.

17               MR. BULLOCK:  Is that Koslowski, again?

18               THE COURT:  Koslowski, also.

19               MR. BULLOCK:  The only defendant left in Koslowski is

20   Bendix Corporation.

21               THE COURT:  Okay.

22               MR. BULLOCK:  And I forgot to ask if somebody from

23   Bendix is here.  Yes.  Okay.

24               THE COURT:  All right.  Where that's -- Bendix is

25   next.  Okay.  And is it Mr. Borgelan (sic)?

1          MR. ROSE:  No, Your Honor.  Benjamin Rose, Rawle &

2     Henderson, from Philadelphia.

3          THE COURT:  Okay.  Thank you very much.  All right.

4     And Borg Warner, also Koslowski, same situation.

5          MR. BULLOCK:  Yes, Your Honor.

6          THE COURT:  They were never named?

7          MR. BULLOCK:  They actually were named, and we

8     resolved with them.

9          THE COURT:  Okay.

10          MR. BULLOCK:  I believe we resolved with them a

11     substantial time ago.  I could give you the exact date.

12          THE COURT:  All right.  Okay.  So to the extent

13     there's not a dismissal, we should dismiss them.

14          MR. BULLOCK:  Yes.

15          THE COURT:  As settled.

16          MR. BULLOCK:  Do you think it would be helpful if we

17     -- is there any way we could just file one document dismissing

18     everybody but Bendix?

19          THE COURT:  Sure.  Yes.

20          MR. BULLOCK:  We'll get that filed as soon as we get

21     back to Connecticut, Your Honor.

22          THE COURT:  Okay.  Great.  Brinco Mining Limited.

23     Also, same -- has that been resolved, or they were never

24     named?  They're also -- formerly known as Cassiar Asbestos

25     Corp.

1          MR. BULLOCK:  I'm sorry, what was that name, again?

2          THE COURT:  Brinco, B-R-I-N-C-O, Mining, also named

3    in Koslowski.

4          MR. BULLOCK:  Yeah, they were originally named.  They

5    should have been dismissed.  I'm not sure if they were ever

6    served.

7          THE COURT:  Okay.  So this is not a settlement, they

8    just -- you want voluntary dismissal?

9          MR. BULLOCK:  Yes.

10          THE COURT:  Okay.

11          MR. BULLOCK:  And if we -- you know, if you -- if the

12    Court would prefer, I can dismiss everybody on the record

13    right now, and just follow it up with the written.

14          THE COURT:  Right.

15          MR. BULLOCK:  Everybody but Bendix.

16          THE COURT:  Okay.

17          MR. BULLOCK:  Buffalo Pumps.

18          MR. GOLDMAN:  Good morning.  David Goldman from the

19    Governo Law Firm in Boston.

20          THE COURT:  Thank you, Mr. Goldman.  Yes, I did

21    receive your submissions.  Thank you.

22          And I have you -- Mr. Goldman, I have Buffalo Pumps

23    named as a defendant in Linda Richards, which is --

24          MR. GOLDMAN:  That's actually, I'm not sure how that

25    happened, because been dismissed before the case was removed

1    to Federal Court.

2            THE COURT:  Okay.  You're dismissed from the Richards

3    case?

4            MR. GOLDMAN:  Yes, Your Honor.

5            THE COURT:  And what, was it voluntary dismissal

6    or --

7            MR. BULLOCK:  Yes, we non-suited them before the case

8    was even removed.  That's one of those things that shouldn't

9    have been forwarded.

10            THE COURT:  Okay.  All right.  Thank you.  All right,

11    Thomas Feeley, are Buffalo Pumps in --

12            MR. GOLDMAN:  I resolved that with Mr. Bullock's firm

13    recently.

14            THE COURT:  Okay.

15            MR. GOLDMAN:  That's correct.

16            THE COURT:  That's been settled, I should say?

17            MR. BULLOCK:  Yes.  Settled.

18            THE COURT:  Vicki Gasiorowski.

19            MR. GOLDMAN:  That is still pending, and Mr. Bullock

20    and I spoke this morning about that case.  So we have a little

21    bit more to go, in terms of discussions.

22            THE COURT:  Okay.  Well we could followup on that

23    later.

24            Olivar Hopkins.

25            MR. BULLOCK:  That's an interesting case, Your Honor.

Page 9

1          THE COURT:  That's the one -- right, that's the one

2     that there's a remand -- the Magistrate Judge recommended

3     remand.

4          MR. BULLOCK:  Yes.  And Judge Smith has the report

5     and recommendation under review right now.  And it should have

6     never been transferred -- well it wasn't ever officially

7     transferred to the MDS.  So we're not even sure how you know

8     about it.

9          THE COURT:  Okay.  Maybe we can touch upon that

10     briefly, maybe with Mr. Goldman later on and see what we may

11     need to do with that.

12          MR. GOLDMAN:  If I may, we resolved that case, as

13     well.

14          THE COURT:  Oh, you did.

15          MR. GOLDMAN:  Yes.

16          THE COURT:  Okay.  It's been settled?

17          MR. GOLDMAN:  Yes.  That was before it was

18     transferred, or if it has been transferred.

19          THE COURT:  All right.  Thank you.

20          Elizabeth Macknick.  I have Buffalo Pumps as a

21     defendant.  That's a Connecticut case.

22          MR. GOLDMAN:  Right.  I spoke with Mr. Bullock about

23     that one.  Discussions are --

24          THE COURT:  You're still in the case.

25          MR. GOLDMAN:  Yes.

1    THE COURT:  Okay.  Leo Dupuis.

2    MR. GOLDMAN:  Same thing.

3    THE COURT:  Richard Carroll?

4    MR. GOLDMAN:  Resolved that last week.

5    THE COURT:  Okay.  Hope Olivar?

6    MR. GOLDMAN:  That's the estate.

7    THE COURT:  That's the executrix.

8    MR. GOLDMAN:  Right.  That's still open, and I've

9    been in discussions with Mr. Bullock.

10    THE COURT:  All right.  Robert Hayford?

11    MR. GOLDMAN:  Same thing.

12    THE COURT:  Okay.  And Laura Contois?

13    MR. GOLDMAN:  Same thing.

14    THE COURT:  All right.  I know -- I believe I'm

15    naming the plaintiffs, and not the decedents.  Okay.  Thank

16    you.  Thank you, Mr. Goldman.

17    MR. GOLDMAN:  Thank you.

18    THE COURT:  All right.  Fairbanks Morse Engine.

19    MR. BULLOCK:  We agreed to dismiss them, Your Honor,

20    without prejudice, and they've accepted it.  And we're in the

21    process of getting the paperwork filed.

22    THE COURT:  Okay.  That's in the Ryman case.

23    MR. BULLOCK:  Yes, sir.

24    THE COURT:  All right.  Ford Motor Company,

25    Koslowski.

1              MR. GOLDMAN:  Resolved.

2              THE COURT:  Okay.  Foster Wheeler.

3              MR. TOTTEN:  Bart Totten.  Good morning.  On behalf

4      of Foster Wheeler.

5              THE COURT:  Bart, what's your last name, again?

6              MR. TOTTEN:  Totten.  T-O-T-T-E-N.

7              THE COURT:  Okay.

8              MR. VEGA:  And Dennis Vega.

9              THE COURT:  Dennis, what's your last name, again?

10             MR. VEGA:  Vega, V-E-G-A.

11             THE COURT:  Okay.  Both of you are in for Foster

12     Wheeler?

13             MR. TOTTEN:  That's right, Your Honor.

14             THE COURT:  All right.  Let me go through your cases,

15     okay?  To see which ones are still viable.  Michael Beamis,

16     Rhode Island.

17             MR. TOTTEN:  I believe we've been dismissed out of

18     that case.

19             MR. BULLOCK:  I believe that's correct, Judge.

20             THE COURT:  Has settled?

21             MR. BULLOCK:  No, we dismissed them without

22     prejudice.  But we did that, I believe, prior to removal.

23             THE COURT:  Prior to what?

24             MR. BULLOCK:  Prior to removal.

25             THE COURT:  Have you filed the appropriate papers?

Page 12

1          MR. BULLOCK:  Yes.  We filed them in the Rhode Island
2    proceeding.
3          THE COURT:  Okay.  And the Judge dismissed it, or
4    entered an order of dismissal?
5          MR. TOTTEN:  Yeah, under Rhode Island, she doesn't
6    have to sign it, if they haven't answered.
7          THE COURT:  Okay.
8          MR. BULLOCK:  So we just filed a stipulation of
9    dismissal without prejudice.
10          THE COURT:  Okay.
11          MR. BULLOCK:  Before they answered.
12          THE COURT:  All right.  Thank you.  Olivar Hopkins?
13          MR. TOTTEN:  That's the one that Mr. Bullock
14    referenced before that's --
15          THE COURT:  Are you still in the case, though?
16          MR. TOTTEN:  I think we're the only defendant in that
17    Federal case -- no, that's not true.  I mis-spoke.  There's
18    some others.
19          MR. BULLOCK:  Pick & Pack are in that case as well,
20    but they have the same position that the case --
21          THE COURT:  All right.  Richard Carroll.
22          MR. TOTTEN:  We believe we're going to be dismissed
23    from that.  We haven't received any settlement demand.  I
24    think we -- I don't know that we have been yet, though.
25          MR. BULLOCK:  According to my records, Your Honor,

1   they were already dismissed.  But if we -- if you were not

2   formally dismissed, if you'll send me a stipulation of

3   dismissal.

4         THE COURT:  So just so it's clear, when you say that

5   they're already dismissed, or you're about to dismiss them,

6   I'm going to notify our Clerk's Office that they're going to

7   be dismissed, or should be dismissed --

8         MR. BULLOCK:  That's correct, Your Honor.

9         THE COURT:  -- from the docket.  Okay.  Fine.

10        MR. BULLOCK:  In preparation for the hearing, we sat

11   down with everybody --

12        THE COURT:  Great.

13        MR. BULLOCK:  -- did as much as we could to try to

14   either dismiss, or settle, so that you just had as little to

15   deal with as possible.

16        THE COURT:  Thank you very much.  I do appreciate

17   that.

18        It doesn't happen that many times.  All right.  Leo

19   Dupuis, again.  Are you in that case?

20        MR. TOTTEN:  That's the same issue, Your Honor.  It

21   should be dismissed.

22        MR. BULLOCK:  They are dismissed, Your Honor.

23        THE COURT:  You can sit down, you don't have to stand

24   up.  I appreciate your respect, but you may be doing that a

25   lot today.

1           All right.  Hope Olivar.

2           MR. TOTTEN:  We are still in that case, Your Honor,

3  and we're having discussions with Mr. Bullock about it for

4  settlement.

5           THE COURT:  Okay.  Elizabeth Macknick.

6           MR. TOTTEN:  That case has been dismissed, I believe.

7  Or should be dismissed.

8           MR. BULLOCK:  Dismissed, Your Honor.

9           THE COURT:  All right.  Laura Contois.

10         MR. TOTTEN:  Same issue.  Dismissed, Your Honor.

11         MR. BULLOCK:  Dismissed.

12         THE COURT:  And Leo Dupuis -- I already said --

13         MR. TOTTEN:  That's right.  That's dismissed.

14         THE COURT:  -- I already talked about that one.

15  Right.  Okay.

16         MR. TOTTEN:  Yes.

17         THE COURT:  Richard Carroll.

18         MR. TOTTEN:  And we did talk about that one, as well.

19  It's also dismissed.

20         THE COURT:  I'm sorry.  All right.  Okay.  I believe

21  any more -- I completed the list.  All right.  Great.  Garlek

22  Ceiling (phonetic).

23         MR. BULLOCK:  I'm not sure which case, Your Honor,

24  but --

25         THE COURT:  I have Thomas Feeley, Rhode Island, and

1    Vicki Gasiorowski, Rhode Island.

2           MR. BULLOCK:  Yes.  Dismissed from both.  In fact,

3    they weren't part -- I'm not sure if they were dismissed prior

4    to removal or not.  But, yeah, they're dismissed.

5           THE COURT:  Okay.  Thank you.  General Electric.

6           MR. LABELLE:  Good morning, Dan LaBelle, Halloran &

7    Sage, for General Electric in Connecticut.

8           THE COURT:  Dan, what's your last name, again?

9           MR. LABELLE:  LaBelle.

10          THE COURT:  Okay.  Thank you.

11          MR. THOMEN:  Good morning, Your Honor, Jeff Thomen on

12   behalf of General Electric for the Rhode Island cases.

13          THE COURT:  Okay.  Great.  So Mr. LaBelle, you're in

14   the Connecticut cases?

15          MR. LABELLE:  Yes, I am.

16          THE COURT:  All right.  Great.  Thank you.  All

17   right, let's go through those, the same as we did with the

18   other defendants.  Michael Beamis.

19          MR. THOMEN:  Yes, Your Honor, we're in it.

20          THE COURT:  You're in that.  Linda Richards.

21          MR. THOMEN:  We're in.

22          THE COURT:  Vickie Gasiorowski.

23          MR. THOMEN:  Also in, Your Honor.

24          THE COURT:  All right.  Dwayne Ryman.

25          MR. THOMEN:  In that case, Your Honor.

1      THE COURT:  All right.  Now the Connecticut cases.

2  Leo Dupuis.

3      MR. LABELLE:  Still active.  And we're in it, Your

4  Honor.

5      THE COURT:  All right.  Thank you.  Richard Carroll.

6      MR. LABELLE:  Same, Your Honor.

7      THE COURT:  Hope Olivar.

8      MR. LABELLE:  Same.

9      THE COURT:  And Robert Hayford, Jr.

10     MR. LABELLE:  Same.

11     THE COURT:  And Laura Contois.

12     MR. LABELLE:  Same.

13     THE COURT:  Okay.  Thank you.

14     MR. BULLOCK:  I think there's six, Your Honor.  I

15  think I only heard Your Honor call five.

16     THE COURT:  Yes.  I named five.  What's the sixth?

17  Let me go over the ones I have.  I have Dupuis, Carroll,

18  Olivar, Hayford, and Contois.

19     MR. BULLOCK:  Matchnick.

20     THE COURT:  What's the other one?

21     MR. BULLOCK:  Matchnick.  You mentioned it before, I

22  think, in connection with Buffalo Pumps, Your Honor.

23     THE COURT:  Okay.  All right.  Thank you very much.

24  Yes, I have that.  That's still active, right, and you're

25  still -- active case, active claim?

1          MR. LABELLE:  Yes, Your Honor.

2          THE COURT:  All right.  General Motors.  And that's

3     the Koslowski case.

4          MR. BULLOCK:  Resolved.

5          THE COURT:  Resolved.

6          MR. BULLOCK:  And, I apologize, I keep jumping up.

7     It's habit.

8          THE COURT:  That's all right.  No problem.  Howden

9     Buffalo.

10         MR. BULLOCK:  They need to be dismissed.  They

11    haven't been formally dismissed.  But we will dismiss them on

12    the record today and file the appropriate pleadings.

13         THE COURT:  All right.  I did get a letter from a

14    Kevin McCafferty from Brooklyn, New York, saying he

15    represented them.  And he gave me a position.  But you're

16    dismissing those?

17         MR. BULLOCK:  I'm dismissing them.

18         THE COURT:  Okay.  All right.  Jaquays Asbestos.

19    Koslowski.  That's also dismissed?

20         MR. BULLOCK:  Dismissed.

21         THE COURT:  All right.  Now Packings & Insulation.  I

22    did get a letter from Marsha Maloney in Rhode Island saying

23    they've been resolved?

24         MR. BULLOCK:  Yes.  We've met in preparation for the

25    hearing, and they provided us deposition testimony and

1    affidavits indicating they didn't provide products.  So we

2    dismissed them.

3             THE COURT:  All right.  Just so the record's clear,

4    so on Beamis, Richards, Feeley and Gasiorowski, they're all

5    dismissed --

6             MR. BULLOCK:  Right.

7             THE COURT:  I mean Packings & Insulation's dismissed

8    from this case.  Okay.

9             Phillip Brothers.  Now that's Koslowski.

10            MR. BULLOCK:  Dismissed.

11            THE COURT:  Dismissed.  And we did get a letter from

12   a Mr. Spunt, who will be happy to hear that you dismissed his

13   case, because he apparently is counsel of record.  But he's

14   now is with a different firm, and can't find the file, and

15   etcetera, etcetera.  So -- I'm sorry.

16            MR. OSWALD:  Your Honor, my name is James Oswald.

17   I'm the person that Mr. Spunt referenced in his letter.  He's

18   an older gentleman who practiced for many, many years in Rhode

19   Island.

20            There's a connection between Mr. Spunt and somebody

21   in my firm.  We don't represent Phillip Brothers.

22            THE COURT:  What's your name?  I'm sorry.

23            MR. OSWALD:  James Oswald.

24            THE COURT:  Okay.

25            MR. OSWALD:  I'm referenced in the letter and --

1          THE COURT:  Okay.

2          MR. OSWALD:  I'm just letting you know.  I'll relay

3     the message to Mr. Spunt.

4          THE COURT:  Okay.  Did you represent anybody else

5     here?

6          MR. OSWALD:  I was here -- I also represent Foster

7     Wheeler, but not for purposes of today.  My partner Bart

8     Totten, who you're already heard from.

9          THE COURT:  All right.  Great.  Thank you, sir.

10    Well, anyway, it's all moot anyway.  So Phillips Brothers has

11    been dismissed.

12         MR. BULLOCK:  Correct.

13         THE COURT:  Okay.  PIC Contractors.  I have a letter

14    from Mark Nugent saying that it's been dismissed.

15         MR. BULLOCK:  Right.

16         THE COURT:  That's Beamis, Richards, BUE, Ryman and

17    Gasiorowski.

18         MR. BULLOCK:  Correct.

19         THE COURT:  Topco -- Taco, Inc.

20         MR. BULLOCK:  They're still in it.

21         THE COURT:  Okay.  They were named in the Feeley,

22    Ryman and Gasiorowski.  Anybody represent Taco, Inc.?  Do you

23    know who represents them?  Have you talked to anybody

24    recently, in your efforts to try to streamline this?

25         MR. BULLOCK:  Our senior partner Jim Early has been

1    talking to national counsel for Taco on resolving all of them.

2    And I'm not 100 percent sure why they didn't come today.

3            But I know that they're in active discussions to

4    resolve it.

5            MR. GOLDMAN:  I'm not with that firm, but I'm pretty

6    sure it's McGivney, Kluger in Boston that represents them.

7            MR. BULLOCK:  And they may have been under the mis-

8    impression that they were resolving actively and that there

9    wasn't any need to appear.

10           THE COURT:  Yes.

11           MR. BULLOCK:  We haven't had a problem with them,

12   Your Honor.  I mean, to the extent we can't resolve it today,

13   I mean, we can report to the Court whether we need a

14   settlement conference.

15           THE COURT:  Right.  Well I know we served notice of

16   the hearing on whoever entered their appearance, and I don't

17   have the docket in front of me, but we can track this down.

18   But -- all right.  Well the only thing I'm concerned about is,

19   I may enter a scheduling order today on -- that may effect

20   them, and they're not here.  But we gave them notice.

21           MR. BULLOCK:  I don't believe any of the Rhode Island

22   cases need a scheduling order.

23           THE COURT:  All right.  Okay.  We'll talk about that.

24   Flintco Company, that's Koslowski, again.

25           MR. BULLOCK:  They're bankrupt.

1          THE COURT:  All right.  You're dismissing them?

2          MR. BULLOCK:  Yes.

3          THE COURT:  Viacom Inc.  They're in the Contois case

4     in Connecticut.

5          MR. BULLOCK:  Correct.  Somebody here for

6     Westinghouse?

7          MR. MIRABILE:  Yes.  Your Honor, Mirabile of McShea,

8     Tecce firm in Philadelphia, here for Michael Everet from

9     Everet, Weathersby in Atlanta.  I believe his firm has sent

10    you a position paper.  I'm here today for CBS, successor to

11    Westinghouse.

12         THE COURT:  Right.  I did get a position paper from -

13    - but Viacom what, is a successor or --

14         MR. MIRABILE:  It's part of the corporate history.

15    It was Westinghouse, then CBS, then Viacom.  Now it's CBS,

16    again.  But --

17         THE COURT:  Okay.  So you're here for them today?

18         MR. MIRABILE:  Yes, sir.

19         THE COURT:  Okay.  Both for Viacom and CBS

20    Westinghouse.

21         MR. MIRABILE:  It's the same thing, Your Honor.

22         THE COURT:  Okay.  Thank you.  All right.  Okay.

23    Viad Corp.  Mr. Hadden.  And I have Viad in the Beamis, Rhode

24    Island case, Richard, Rhode Island, Macknick, Connecticut;

25    Dupuis, in Connecticut, and Carroll.

1        MR. HADDEN:  What was the first one, Your Honor?

2        THE COURT:  Sure.  Michael Beamis.

3        MR. HADDEN:  I don't have that one.  I'll have to

4   look into that.  I'm not sure maybe --

5        MR. BULLOCK:  In all fairness, Your Honor, when I was

6   reviewing the files for Rhode Island, I was under the

7   impression that Viad had been dismissed from the Rhode Island

8   cases.  But I also don't think an order was issued, which is

9   problematic, because they probably should not have been

10  dismissed.  So I'm not real clear myself on Viad's status.

11       I know no formal dismissal's been made.  But I think

12  Viad may have been misled in the position that we were taking,

13  because I think in the position paper, or synopsis, that Viad

14  was not reported as having any product ID.

15       THE COURT:  I'm sorry, what was the last thing you

16  said?

17       MR. BULLOCK:  Was not reported as having any product

18  identification.

19       THE COURT:  Oh.

20       MR. BULLOCK:  So I, you know, if the Court would

21  prefer, because it's our error, we'll dismiss Viad.

22  Otherwise, we'd rather leave Viad in and straighten out the

23  problem and have discussions with Viad on the Rhode Island

24  docket.

25       We are prepared, and they are aware of the

Page 23

1   Connecticut docket.

2         THE COURT:  Okay.  So it's only the Beamis and the

3   Richards cases.  You're saying they were dismissed, but they

4   shouldn't have been dismissed.

5         MR. BULLOCK:  I'm saying that the position paper, I

6   think that we filed with the Court, was representing there was

7   no product identification.

8         THE COURT:  Okay.

9         MR. BULLOCK:  So, consequently, no demand went out to

10  Viad.  So Viad probably is not aware that we were asserting

11  claims against them.

12        When I realized the error, no dismissal had been

13  entered.  But if the Court was going to hold us to the fact

14  that in the position paper that we took that position, I was

15  prepared to dismiss them, but would prefer not to and actually

16  send a demand and discuss with them how to handle the cases.

17        THE COURT:  All right.  Well maybe what we'll do is,

18  Mr. Hadden, we'll discuss this a little bit and see where we

19  go with it.  All right?  For right now I guess technically

20  they're still in the case.

21        MR. BULLOCK:  Technically, they're still in.

22        THE COURT:  All right.  So that's Viad.  All right.

23  Crane & Company.

24        MR. COTTLE:  Good morning, Your Honor.  Eric Cottle,

25  C-O-T-T-L-E.  Crane & Company.

1          THE COURT:  Okay.  And that's only one case, right?

2          MR. COTTLE:  Yes.

3          THE COURT:  The Contois case.  Laura Contois.  Okay.

4    And they're still active cases, right?

5          MR. COTTLE:  I believe so.

6          THE COURT:  All right.  Thank you.  And I believe

7    that's it.  Is anybody here that I haven't called for a

8    defendant?  Okay.

9          All right, let's -- I was going to go through these

10    individually, but if Mr. Bullock's telling me that the Rhode

11    Island cases, there's no need to enter a scheduling order, let

12    me hear from you on that.  What's your position on it?

13          MR. BULLOCK:  Well, Your Honor, in the, I guess

14    there's no reason to list them.  We pretty much have done all

15    the discovery that needs to be done.  The plaintiff has been

16    deposed and ship records that were available have been

17    produced to all the defendants.

18          We routinely provide them, even to the removing

19    defendants.  We tried to engage in corporate discovery of the

20    individual defendants in the MDL, but they have declined,

21    because a scheduling order wasn't issued.

22          So for the -- I guess, technically, a scheduling

23    order, I mis-spoke, should be issued only for the limited

24    purposes of taking the 30(b)(6) of GE, and 30(b)(6) of Foster

25    Wheeler.

1           Those are the two that we're looking for to complete

2      the case.

3           They declined to engage in any discovery without such

4      a scheduling order.  But other than that, the plaintiff's

5      already been deposed, the medical records have been produced,

6      the med link has been produced.  Ship documents where they're

7      applicable.  So there really isn't that much to do.

8           THE COURT:  Prior to the transfer, there never was a

9      scheduling order.

10          MR. BULLOCK:  No.

11          THE COURT:  And, obviously, as far as I know, there's

12     been no scheduling issue by this Court, so --

13          MR. BULLOCK:  Correct.

14          MR. TOTTEN:  Your Honor, Bart Totten, on behalf of

15     Foster Wheeler.  Which cases were you referring to, Mr.

16     Bullock?  I didn't hear the names of the Rhode Island cases.

17          THE COURT:  Well here's what I have.  Here's what I

18     have.  I have Michael Beamis, okay.  Vickie Gasiorowski.

19     Olivar Hopkins.  Linda Richards.  Dwayne Ryman.  Wayne

20     Koslowski, and we only have that -- that's the break case.

21     And Thomas Feeley.

22          MR. TOTTEN:  Right.

23          THE COURT:  Okay.

24          MR. BULLOCK:  And Hopkins, of course, depends on

25     whether the Court wants to --

1          THE COURT:  Right.

2          MR. TOTTEN:  And that was the only case that Foster

3     -- you referenced a 30(b)(6) deposition of Foster Wheeler.

4     The only case Foster Wheeler is in, in Rhode Island, is

5     Hopkins.  So that was my concern is that --

6          THE COURT:  Okay.

7          MR. TOTTEN:  -- we deal with that issue.

8          MR. BULLOCK:  And then we do have Foster Wheeler in

9     one of the Connecticut case that also we'd need a 30(b)(6).

10         THE COURT:  All right.  Well have you gone beyond

11    fact -- we still need a scheduling order because beyond fact

12    discovery, you would need to have time for a designation of

13    expert reports.

14         MR. BULLOCK:  We've already done that.

15         THE COURT:  You've already done that.  Okay.

16         MR. BULLOCK:  I mean --

17         THE COURT:  So if we don't settle, it's ready to try

18    it, or to remand it.

19         MR. BULLOCK:  Well the removing defendants have not

20    participated in the expert depositions, unless they happen to

21    have another client that was in the state court proceeding

22    that was running parallel to that.

23         So as to whether or not they actually need to depose,

24    but, yes, we've exchanged expert reports, in the sense that we

25    have produced all -- any reports that our experts did.

1          Rhode Island, interestingly, doesn't require expert

2     reports.  Now we do have them for our pathologists, our

3     diagnosing pathologists.  And we do provide that routinely to

4     the defendants.

5          But as far as our admiralty expert, he doesn't write

6     a report.  But we make him available for deposition.  And we

7     offer him including notifying the -- defendants.

8          And I guess you're technically correct, to the extent

9     that they -- you're telling them now, it's time, you know, put

10    up or shut up, you want to take their deposition, take their

11    deposition, I guess we do need a scheduling order for that.

12          THE COURT:  All right.  And counsel --

13          MR. TOTTEN:  Your Honor, with respect to Hopkins, and

14    I know that that case has not been transferred to the MDL, we

15    know that.  There has been no -- Foster Wheeler has engaged in

16    no discovery, no fact discovery, no expert discovery.

17          It was -- the case was removed, and there has been

18    parallel state court discovery.  But Foster Wheeler has not

19    participated in that.

20          MR. BULLOCK:  Well that's not exactly correct, Your

21    Honor.

22          MR. TOTTEN:  Well I'm sorry.

23          MR. BULLOCK:  Foster Wheeler did attend the

24    plaintiff's deposition, and did examine.

25          MR. TOTTEN:  That's correct, Your Honor.  That was

1    before removal.  I apologize.  That is correct.

2          THE COURT:  Just so I understand, Mr. Bullock, I

3    understand -- maybe I don't understand the Rhode Island rules

4    in state law, but you're saying they don't require expert

5    reports.  But the Federal Rules do.  So I do think I would

6    need to enter a scheduling order.

7          MR. BULLOCK:  You're correct.

8          THE COURT:  Okay.  So if I -- just to recap, so I

9    understand, and the defense counsel here that, all the fact

10   discovery's been completed, with the, obviously with the

11   exception of the Foster Wheeler, Hopkins case, and that's kind

12   of a aberration right now.

13         But with respect to all of the other cases --

14         MR. ROSE:  Your Honor, the Koslowski case --

15         THE COURT:  I'm sorry, your name, again.

16         MR. ROSE:  Benjamin Rose for Bendix.

17         THE COURT:  Right.

18         MR. ROSE:  There may be some medical related

19   discovery remaining in that case.  Plaintiff has been deposed,

20   and is deceased.  We may need to obtain -- I'm trying to

21   determine if there are any pathology materials that maybe

22   could be reviewed before we can produce our expert witness.

23         MR. BULLOCK:  Your Honor, in regards to Koslowski,

24   that case has been filed since 1992.  And we have been trying

25   to resolve this case with Bendix, and they've taken a no pay

1    position previous.  I don't know if they're coming here today

2    -- but when we met with Mr. Glassman, he specifically told

3    them when they raised this same concern, you have had 15 years

4    to get your medical lined up.

5          The time for discovery is over.  You're wasting the

6    Court's time.  And I suggest to the Court, that they're

7    wasting Court's time today.  I mean, 15 years, and they can't

8    get a pathologist to look at something?

9          I mean, we've been trying to get this case resolved,

10    and had the most difficult time.  We finally resolved with

11    General Motors and Ford, you know, over the course of the last

12    couple of months that we've been dealing with the MDL.

13          They're the last holdout.  It's amazing that

14    everybody else can do everything in Koslowski, except for

15    Bendix.

16          THE COURT:  I mean, you obviously gave them whatever

17    pathology reports you had and --

18          MR. BULLOCK:  Yes.  A long time ago.

19          THE COURT:  All right.  I'm sorry, your name, sir?

20          MR. THOMEN:  Jeff Thomen, Your Honor.  With regard

21    to --

22          THE COURT:  Now who do you represent, again?

23          MR. THOMEN:  General Electric.

24          THE COURT:  Okay.

25          MR. THOMEN:  In the Rhode Island.

1          THE COURT:  Right.

2          MR. THOMEN:  With regard to the Gasiorowski case,

3     just to be clear on that, I believe that there is still some

4     outstanding discovery.  Although I'm confident, Your Honor, at

5     least 3 out of the 4 cases today that -- which General

6     Electric's in, we've made some good progress with plaintiff's

7     counsel before this hearing.  May resolve it, in any event,

8     today.

9          But I just wanted to make it clear that there's been

10    no -- there's additional fact discovery remains in

11    Gasiorowski.  I believe there may be some issues in Beamis and

12    Richards.  But, again, those are also cases that I believe

13    that we can probably make some good progress on today.

14         THE COURT:  All right.  How much -- if we don't

15    resolve it, how much time do you think you need?

16         MR. THOMEN:  In terms of --

17         THE COURT:  Of completing the fact discovery.  You

18    mentioned there's two or three cases you need to finish up

19    some discovery.

20         MR. THOMEN:  Well Gasiorowski, we only have the

21    written discovery response, at this point.  No depositions

22    have taken place.  It's fairly new case that's in the MDL.

23         MR. BULLOCK:  Your Honor, in regard to that

24    particular case, the -- we finally got the case, the client --

25    or the person, who we're suing over, had already passed away.

1    Okay.  So it's impossible to depose him.  And we have not been

2    able to locate any co-workers.  So we're basically recreating

3    and trying to meet our burden of proof with a maritime expert,

4    who will testify as to more probably than not what his job

5    duties were and what his possible exposures were.

6            So in that respect, it's really only the expert.  But

7    I don't disagree, after rethinking it, a scheduling order of

8    say 60 days for any fact discovery that's left, 30 days for

9    experts, I, you know, I would say would be, you know,

10   generally appropriate.

11           THE COURT:  Hold on, just on Gasiorowski?

12           MR. BULLOCK:  I would say on any of them that the

13   defendants claim that they need discovery, with the exception

14   of Koslowski.  I think that waiting 15 years to do something,

15   is too long.

16           THE COURT:  Okay.

17           MR. THOMEN:  Your Honor, I -- I'm not in Koslowski,

18   so I can't speak to that.

19           THE COURT:  Right.

20           MR. THOMEN:  Aside from that, I would think there

21   would be a little bit more of a scheduling order, in terms of

22   we'd like the time for at least two of the cases, Gasiorowski

23   being one of them.  But, again, we can probably discuss that.

24   I think General Electric may be the only defendant left in

25   that case, if I'm correct.

1          So that may obviate the need even to do a scheduling

2     order if we end up resolving that here today.

3          THE COURT:  All right.  Okay.  What I'll do is, when

4     we have our settlement discussions, at the end of that, if we

5     can't resolve it, I'll again revisit this issue of discovery.

6     Where do we go moving the case forward.  But what my purpose

7     is today, if we haven't resolved it, we're going to enter some

8     type of order where we're going to get these things to a point

9     where they're either going to be tried, or remanded back to

10    the state court.

11         Or a position where at least Mr. Bullock can file a

12    motion to remanded it, and get the case back in the state

13    court, if it's not going to be tried here.

14         I'm sorry, Mr. Hadden, did you want to say something?

15         MR. HADDEN:  Your Honor, I was just going to jump in,

16    since it seems unclear, I mean, if counsel's willing to

17    dismiss Viad from the Rhode Island cases, then I won't take a

18    position on it.

19         But it seems -- seems that that's not definite right

20    now.  Then I would just say, out of ignorance, I'm going to

21    have to ask the Court to enter the ususal scheduling order,

22    just to protect my client's interests, until we get a

23    commitment out of counsel.

24         Then you said we would do it afterwards, so I'm fine

25    waiting.

1          THE COURT:  But for the record, you want a -- okay.

2     I understand.

3          MR. HADDEN:  Yeah.  That's fine.  Thank you, Your

4     Honor.

5          THE COURT:  All right.

6          MR. BULLOCK:   And let me suggest, just for the

7     benefit of counsel, if I resolved everybody else here today

8     except for Viad, I'll dismiss Viad, just to get rid of the

9     case.  So before you enter a scheduling order, let's see how

10    far we can get.

11         THE COURT:  All right.  I'm sorry, sir, you wanted to

12    say something?  I know you're only in the one case.

13         MR. COTTLE:  Yeah, I'm only in one case, Your Honor.

14    But if we were going to get into the scheduling order at this

15    point, I was just going to make a suggestion on how it should

16    evolve.

17         And it's just for -- at least Crane Co's position is,

18    discovery, I think we should have a briefing schedule for

19    summary judgment, before we get into the expense of experts,

20    expert reports and retention, to see if those claims are

21    viable, after summary judgment.

22         Then we can get on with the experts.  But I just

23    wanted to have somewhere built in after the fact discovery, at

24    least in our case there's no ID, for Your Honor to make a

25    determination as to whether the plaintiffs have met their

1    burden then, before we go on and hire expert --

2         THE COURT:  What I've done in all the cases is I --

3    the scheduling order is a little bit unusual than the typical

4    civil cases.  I have fact discovery first, then I have a

5    settlement conference.  Which I'll probably do again in these

6    cases, if we can't resolve it today.

7         Not that I'm trying to delay settlement discussions,

8    I want to get them resolved today, but -- so that, if someone

9    says, like a lot of the defendants say, I can't resolve it, I

10   haven't had enough discovery.

11        I say, fine, we'll have fact discovery, then you'll

12   come back and see me again.  And then, it sounds like, just

13   meeting Mr. Bullock, that if he doesn't have the evidence on

14   your client I think he's either going to dismiss it or -- I'm

15   not sure it's even necessary to have the expert.  But what I

16   do after that point, then if we can't resolve it after the

17   second conference, we'll have expert -- exchange of expert

18   reports, then we have the summary judgment briefing schedule.

19        But let's see where we are at the end of the day.

20   Okay?

21        MR. COTTLE:  Okay.

22        THE COURT:  All right.  Does that complete, at least,

23   discussion on the scheduling -- on the Rhode Island cases?

24   What about the Connecticut cases, Mr. Bullock?  Give me a

25   general overview of where we are on the discovery in those

1      cases.

2              MR. BULLOCK:  In the Olivar case, a scheduling order

3      has to be entered.  Discovery is not complete.  That one I

4      think we can all agree on.  And, in fact, unfortunately, Your

5      Honor, meaningful talks with Foster Wheeler, and General

6      Electric, and Buffalo Pumps have not been able to go forward,

7      because discovery is not complete.

8              So I think the best thing to do is -- I'm not even

9      sure a settlement a conference today would be helpful, just an

10     entry of a scheduling order, so we can get discovery

11     completed.

12             THE COURT:  On Olivar?

13             MR. BULLOCK:  On Olivar, yes.

14             THE COURT:  All right.  And how about the other ones?

15             MR. BULLOCK:  The position of the plaintiffs in the

16     other cases is that all fact discovery has been completed.

17     I'm sure the defendants will disagree.

18             THE COURT:  Okay.  Just very briefly, how much time

19     do you think we need for Olivar, for fact discovery?

20             MR. BULLOCK:  I would ask for 120 days of fact

21     discovery.

22             THE COURT:  All right.  And let me hear from counsel,

23     anybody want to be heard on the Connecticut cases, on

24     potential scheduling order on fact discovery?  We can start

25     with Olivar, first.

1         MR. LABELLE:  Dan LaBelle for General Electric, Your

2     Honor.  I'd respectfully suggest that we use our standard

3     scheduling order for 120 days for fact discovery on all the

4     cases.

5         I agree with Mr. Bullock that, in some of the cases,

6     there has been substantial discovery taken, but just to cover

7     the base and protect my client, I'd ask for that, a hundred --

8     these cases are not old.

9         They're not -- some are from '07, but some of them

10    are very recent, and I don't think 120 days to complete fact

11    discovery on both sides is unreasonable.

12        MR. BULLOCK:  There are a couple of cases, Your

13    Honor, that I would ask the Court to deviate from the standard

14    scheduling order, and it's something that I would feel more

15    comfortable in private settlement negotiation discussions.

16        THE COURT:  All right.  Okay.  Maybe what we'll do

17    is, we'll turn to our settlement discussions, and maybe, it

18    sounds like we should start with Rhode Island first, because

19    you're further along, it sounds like.

20        In fact, I'd like Mr. Bullock, in the settlement

21    discussions with the Rhode Island cases.

22        MR. BULLOCK:  Yes, sir.  That's great.

23        THE COURT:  All right.  Then what we'll do is, those

24    cases remaining, that are not settled, or we haven't resolved

25    them, either by settlement or voluntary dismissal, we could

1    figure out where to go ahead with the scheduling order.

2         But what I want to do, and, Mr. Bullock, I hope this

3    approach is okay with you, is I thought what I would do is

4    just call you back with counsel for one defendant at a time.

5    Because it sounds like you've been talking to them already.

6         Okay?  Would you want to start with anybody in

7    particular?  How about we -- the Koslowski case, maybe we can

8    see if we can knock that one out, since that's only one

9    defendant and you've already settled with a lot of other

10   defendants.  Okay?  All right.  Is that okay with counsel?

11   All right.  That's what I thought we'd do.

12        I'll try to move this as quickly as possible, all

13   right, so I, you know, we'll see where we are.  All right?

14   Okay.  So let's go off.

15        (Court adjourned)

16                         *  *  *  *  *

17

1                    C E R T I F I C A T I O N

2     I, Josette Jones, court approved transcriber, certify that the

3     foregoing is a correct transcript from the official electronic

4     sound recording of the proceedings in the above-entitled

5     matter.

6     --------------------------------          --------------------

7     JOSETTE JONES                              DATE

8     DIANA DOMAN TRANSCRIBING