UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS ) <br> LIABILITY LITIGATION (No. VI) ) <br> ) | MDL DOCKET NO.: MDL 875 |
| ) <br> THIS DOCUMENT RELATES TO ) <br> CERTAIN PLAINTIFFS IN ) <br> THE FOLLOWING CASES ) <br> IN THE UNITED STATES DISTRICT ) <br> COURT FOR THE SOUTHERN ) <br> DISTRICT OF MISSISSIPPI: ) <br> ) | |
| RAY ALSWORTH, ET AL., ) <br>     Plaintiffs, ) <br> ) | |
| vs. ) <br> ) | Cause No. 1:05CV41 |
| SCAPA, ET AL., ) <br>     Defendants. ) <br> ) | |
| HILRY A. ANDERSON, ET AL., ) <br>     Plaintiffs, ) <br> ) | |
| vs. ) <br> ) | Cause No. 1:05CV40 |
| THE FLINTKOTE COMPANY, ET AL., ) <br>     Defendants. ) <br> ) | |
| CHESTER BANKS, ET AL., ) <br>     Plaintiffs, ) <br> ) | |
| vs. ) <br> ) | Cause No. 1:05CV39 |
| OWENS-ILLINOIS, INC., ET AL., ) <br>     Defendants. ) <br> ) | |
| HENRY BRIGGS, ET AL., ) <br>     Plaintiffs, ) <br> ) | |
| vs. ) <br> ) | Cause No. 1:05CV107 |
| NATIONAL SERVICE ) <br> INDUSTRIES, INC., ET AL., ) <br>     Defendants. ) | |

|  |  |  |
|---|---|---|
| ROBERT WALKER, ET AL., <br> Plaintiffs, <br><br> vs. <br><br> SCAPA, ET AL., <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | State Cause No. 2002-633 |
| MARGIE MAE WILLIAMS, ET AL., <br> Plaintiffs, <br><br> vs. <br><br> NATIONAL SERVICE <br> INDUSTRIES, INC., ET AL., <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Cause No. 1:05CV42 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
RENEWED JOINT MOTION TO ENFORCE
SETTLEMENT AGREEMENTS ENTERED INTO WITH
DEFENDANT, NATIONAL SERVICE INDUSTRIES, INC.**

## FACTUAL BACKGROUND

Several plaintiffs,[1] including those involved in this dispute, filed suit in Mississippi state court to recover for their injuries as a result of being exposed to asbestos through North Brothers' conduct. These injuries include: asbestosis, lung cancer, other asbestos-related cancers and mesothelioma. Before trial, Plaintiffs and North Brothers agreed to settle the cases. The initial settlement agreement was entered into during November of 2001. Exhibit "B", 2001 Settlement agreement.[2] The 2001 settlement agreement included as Appendix "A" a list of Plaintiffs to

---

[1] Due to the large number of Plaintiffs involved, the individual Plaintiffs and, when applicable, individual case numbers are listed in Exhibit "A".
[2] Certain Exhibits, such as Exhibit "B", the 2001 Settlement Agreement; Exhibit "F", the affidavit of Jill Bailey and exhibits thereto; Exhibit "G", list of Plaintiffs; Exhibit "L", disc containing releases; Exhibit "M", list of Plaintiffs; contain sensitive information and will be provided to counsel for North Brothers and the Court under separate cover.

2

whom the settlement agreement expressly applied. Exhibit "B". Subsequent to the initial agreement but during the time many of the original Appendix "A" Plaintiffs were having their claims processed, the parties agreed to resolve many additional claims under the terms of the 2001 agreement.

Essentially, the agreements provided for Plaintiffs to submit administratively a claim to North Brothers' agent, Navigant (and later PACE), for evaluation. Plaintiffs submitted claim forms which contained medical and exposure information, together with supporting documents, and the claims would be processed. It is noteworthy that, according to senior claims administrator Marc Strigel, North Brothers claims would not even be processed unless counsel for North Brothers instructed the claims facility to do so. Exhibit "C", 2/18/09 Depo. of M. Strigel at pp. 33, 36. This testimony is consistent with an email sent from Mr. Strigel to counsel for North Brothers on September 28th, 2004 seeking claimant names, disease types and dollar amounts **prior** to the processing of "futures" cases under the 2001 agreement. Exhibit "D", 9/28/04 Email of Marc Strigel, attached hereto.

If a claim met certain requirements it would be approved for payment. Following approval, North Brothers' agent, Navigant/PACE would prepare and forward a release to Plaintiff for execution. No release would be generated unless and until an allocation of funds for the claim had been made. Exhibit "C", Depo. of M. Strigel at pp. 36-38, 41-42, 70, 82-83. This testimony is consistent with statements made in an email written by another Navigant/PACE claims processor who stated with respect to releases generated by Navigant/PACE, "whatever comes from us is good for payment." Exhibit "E", 7/15/05 email of Margaret Podstawa attached hereto. From the inception of the original agreement, North Brothers has paid specific amounts for an approved mesothelioma claim, an approved lung cancer claim, an approved other cancer

3

claim, an approved asbestosis claim, and an approved non-malignant disease claim with a non-qualifying exposure site. Exhibit "F", Affidavit of J. Bailey.

After Plaintiffs returned the executed releases to Navigant/PACE, North Brothers would then forward the agreed-upon payment to counsel for distribution to individual plaintiffs. North Brothers used this procedure to settle not only the cases which were included in the original agreement, but also hundreds of claims which were processed as "futures" claims under the provisions of the original agreement. The attached spreadsheets list cases which were settled and paid pursuant to the 2001 agreement which were not originally included in that agreement. *See* Exhibit "G", spreadsheets of settled claimants' cases. Indeed, Mr. Strigel admitted that an additional two million dollars was paid under the North Brothers settlement agreement in excess of the amount originally contemplated in 2001. Exhibit "C", Depo. of M. Strigel at p. 57.

The easiest way to address these Plaintiffs' claims is to separate the 2001 Appendix "A" Plaintiffs from those Plaintiffs whose claims were settled as "futures" claims pursuant to the 2001 agreement. While the posture of Appendix "A" Plaintiffs' claims varies, all have satisfied the criteria for payment. Certain Appendix "A" Plaintiffs have submitted information to North Brothers' agent and have not been listed on any deficiency sheet—indicating that they have satisfied the settlement criteria for payment. These Plaintiffs have not, however, been provided with a release to execute and return. Other Appendix "A" Plaintiffs were sent releases that contained inaccurate information and could not be executed. North Brothers' agent has failed to send corrected releases to counsel. Finally, several Appendix "A" Plaintiffs have returned executed releases to North Brothers' agent. These Plaintiffs, like the "futures Plaintiffs", have performed their obligations under the agreement fully and, given the generation of the releases or the lack of deficiencies, satisfy the criteria for payment. These individuals include Roland

Foeckler, John Kindrick, Donald Larson, Branson Moore, Dewey Sellers, Willie Wells, Jr., Timothy Woulfe, Alfred Letarte, Leo Lozier, Jacob Shiver, Jr., Herbert Talmud, Eugene Moore, Jessie Wright, Howard Porter, Julius Crim, Junior Keeton, and William Smith.

Remarkably, the status of the "futures" Plaintiffs claims are more advanced than many of those Plaintiffs listed in the 2001 agreement. The history of the futures cases is relatively straightforward. In a letter dated October 21, 2002, counsel for North Brothers stated with respect to Plaintiffs involved in various Mississippi cases: "Please be advised that you are correct to the extent that the settlement agreements entered into in the *Anderson, Chambers*, and *Williams* cases on behalf of the above-referenced defendants [National Service Industries, Inc.] **do contain administrative provisions under which you would be allowed to submit the claims currently pending in the above-referenced matters.**" Exhibit "H", 10/21/02 correspondence, attached hereto and incorporated herein (emphasis added). Later in this letter, counsel for NSI stated, "Please follow the procedures outlined in the various settlement agreements in order to move forward with the **settlement of the administrative claims.**" Exhibit "H" (emphasis added).

On February 24, 2003, counsel for North Brothers wrote with respect to Plaintiffs involved in the Banks, Hamberlin, Alsworth, Walker and Beazley cases: "Please allow this correspondence to confirm that the claims of the plaintiffs currently pending in the above-referenced causes of action **do fall under the futures provisions of your settlement agreement with … National Service Industries, Inc.…..**" Exhibit "I", 2/24/03 correspondence, attached hereto (emphasis added).

Following the receipt of this correspondence, several emails were exchanged between North Brothers' agents and counsel and Plaintiffs' counsel. Jill Bailey, a paralegal with counsel

5

for certain Plaintiffs emailed Mr. Strigel concerning the processing of the *Alsworth, Banks* and *Hamblerin* Plaintiffs in accord with the earlier settlement and attached copies of the letters from North Brothers' counsel quoted from above. Exhibit "J", email chain attached hereto. Ms. Summerlin, counsel for North Brothers, replied to both Ms. Bailey and Mr. Strigel and asked Mr. Strigel whether he was "generating the releases on these claims" and inquired whether there was "anything [she] could do to speed up the process, such as send a form release?" Exhibit "J". For his part, Mr. Strigel replied to the email of Ms. Bailey and attached deficiency reports "for this settlement." Exhibit "K", 11/15/05 email of M. Strigel with attachment, attached hereto. The cases evaluated included those of the futures claimants referred to in Ms. Bailey's email of November 3, 2005. *See* Exhibit "J".

These "futures" Plaintiffs accepted North Brothers offer to resolve their claims under the agreement and submitted their claims and accompanying documentation to Navigant/PACE. As the earlier statements indicated, North Brothers must have acceded to processing Plaintiffs' claims under the agreement; otherwise, Navigant/PACE would not have addressed the submissions, much less approved the claims for payment and generated a release. As North Brothers' agent provided the releases, an allocation of funds was made for these Plaintiffs' claims. *See* Exhibit "C", 2/18/09 Depo. of M. Strigel at pp. 33, 36. Plaintiffs executed and returned their releases to Navigant/PACE, thereby fulfilling their obligations under the agreement. *See* Exhibit "L", discs containing copies of Plaintiffs' executed releases.[3] While North Brothers has partially performed after the initial offer, by evaluating and approving the

---

[3] The releases contained on this disc are redacted copies of the releases generated, submitted to, and still retained by North Brothers and/or North Brothers' agent, Navigant/PACE. Despite diligent efforts, Plaintiffs have been unable to locate copies of the releases for Roland Foeckler, Donald Larson, and Herbert Talmud. Plaintiffs submit that North Brothers and/or North Brothers' agent, Navigant/PACE, possesses the original releases for these individuals currently.

claims for payment, it has not completed its performance under the agreement as none of these Plaintiffs' claims have been paid.

North Brothers' chief argument against paying the "futures" cases is that they never agreed to a settlement and that the only cases that have been paid that weren't covered by the 2001 agreement are cases that have been substituted for non-qualifying Appendix "A" Plaintiffs. A comparison of these "futures" paid claims with those claimants who are unpaid demonstrates that the paid cases are not and could not have been substitutions for non-qualifying plaintiffs included in the 2001 agreement. Plaintiffs counsel has determined that North Brothers has paid the claims of at least five hundred and seventy-one (571) claimants who were not included in Appendix "A" to the 2001 agreement. Exhibit "G", spreadsheets. When this number is compared with the number of unpaid claimants included in Appendix "A" of the 2001 agreement, one hundred and fifty-three (153), Exhibit "M", spreadsheets, it is apparent that the vast majority of claimants were necessarily paid as "futures" and not as substitutions. The number of substitutions is actually even lower as the one hundred and fifty-three (153) referred to above includes Plaintiffs in Appendix "A" whose claims remain unpaid even if the claimants have met the criteria for payment—including approximately eighty-five (85) Plaintiffs moving to enforce the settlement agreement by way of the current Motion. Despite its protestations to the contrary (and consistent with the above-referenced correspondence and emails), North Brothers routinely paid plaintiffs cases under the "futures" provision of the 2001 agreement.

## PROCEDURAL BACKGROUND

A large majority of Plaintiffs filed their Joint Motion to Enforce on April 18th, 2007. Since that time, North Brothers filed a response to which Plaintiffs replied. Plaintiffs later

7

served subpoenas on two agents of North Brothers for depositions and production of documents. North Brothers filed motions to quash and Plaintiffs responded. While the two witnesses, Robert Capritti and Marc Strigel were eventually deposed in February of this year, North Brothers frequently invoked the attorney-client privilege and work product protection and these objections also hindered a meaningful response to Plaintiffs' document requests. Nevertheless, Plaintiffs renew their Joint Motion to Enforce their Settlements with North Brothers.

Since the filing of the initial Joint Motion to Enforce, additional Plaintiffs have been identified who were listed in Appendix "A" of the 2001 agreement and who qualify for payment but whose claims have not been paid. These additional Plaintiffs have joined in this Renewed Joint Motion to Enforce Settlement of their claims against North Brothers. Exhibit "H".

## ARGUMENT AND CITATION OF AUTHORITIES

### I. North Brothers Entered Into an Enforceable Settlement Agreements to Resolve These Cases.

"Settlements are contracts, which are enforceable according to their terms." *Parmley v. 84 Lumber Co.*, 911 So.2d 569, 572 (Miss.App. 2005) (citing *McManus v. Howard*, 569 So.2d 1213, 1215 (Miss. 1990)). "In order to have a valid settlement agreement, there must be consideration and a meeting of the minds between competent contracting parties." *Ammons v. Cordova Floors, Inc.*, 904 So.2d 185, 190 (Miss.App. 2005) (citing *Viverette v. State Highway Comm'n of Miss.*, 656 So.2d 102, 103 (Miss. 1995) (other citations omitted)). An agreement "may be established by the actions of the parties, or that of their respective agents." *Parmley*, 911 So.2d at 572 (citing *Hastings v. Guillot*, 825 So.2d 20 (¶ 12) (Miss. 2002)). Acceptance, and thus a meeting of the minds, "can occur in a number of different ways and may be inferred from the conduct of the parties." *Ammons*, 904 So.2d at 190 (citing *In re Estate of Davis*, 832 So.2d 534, 537 (Miss.App. 2001)).

As the party claiming the benefit of the settlements, Plaintiffs need only "demonstrate by a preponderance of the evidence that there was a meeting of the minds." *Vaughn v. Rettig*, 912 So.2d 795, 799 (Miss. 2005) (quoting *Viverette*, 656 So.2d at 103.). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Parmley*, 911 So.2d at 573 (Miss.App. 2005) (quoting *D.H. Overmyer Co. v. Loflin*, 440 F.2d 1213, 1215 (5th Cir. 1971)).

In these cases it is unquestioned that consideration exists—the foregoing of claims for personal injury or death against North Brothers in exchange for monetary compensation. The only issue to be determined is whether there is a preponderance of evidence that the parties reached a meeting of the minds such that the settlement agreements may be enforced. The evidence is that North Brothers made an offer to Plaintiffs to resolve their claims pursuant to the administrative process that had been used in hundreds of cases previously. Plaintiffs accepted the offer, did not pursue litigation against North Brothers, and instead submitted claims and documentation to North Brothers' agent. North Brothers instructed its agent to evaluate the claims and allocated certain sums for the payment of these claims. North Brothers then took the additional and ultimate step evincing its acquiescence to the settlement agreement and dismissed all of these Plaintiffs claims against it in Mississippi state court. Additional facts applicable to the several Plaintiffs groups will be discussed below.

### A. 2001 Appendix "A" Plaintiffs.

There can be no dispute that there was a meeting of the minds concerning Plaintiffs included in the 2001 agreement. Indeed, counsel for North Brothers has conceded that there was

an agreement to settle the claims of those Plaintiffs listed in Appendix "A". A letter dated January 3, 2008 from counsel for North Brothers indicates that, at least at the time the letter was written, North Brothers does not dispute that the claims of the Appendix "A" Plaintiffs are settled. See Exhibit "N", 1/3/08 correspondence attached hereto.[4] Should North Brothers change its position and insist that the claims of Appendix "A" Plaintiffs were not settled, Plaintiffs will provide further evidence which will support a finding of settlement. There should not be a dispute concerning the Appendix "A" Plaintiffs; nor should there be a dispute that there was a meeting of the minds concerning the "futures" cases.

### B. "Futures" Plaintiffs.

Plaintiffs have already presented evidence that North Brothers expressly stated, in emails and correspondence, that these "futures" Plaintiffs' claims were settled under the terms of the 2001 agreement. Exhibits "H", "I", and "J". In addition, the "futures" Plaintiffs ceased litigation of their claims against North Brothers, satisfied the criteria for payment, had their claims approved for payment by North Brothers and executed and returned the releases that North Brothers had provided to them. Thus, Plaintiffs had performed their obligations under the agreement fully. The conduct of the parties is sufficient to demonstrate that there was a meeting of the minds concerning settlement of these cases.

The Mississippi Supreme Court's decision in *Hastings v. Guillot* supports enforcing the settlement agreements at issue here. In *Hastings*, the court upheld the enforcement of a settlement agreement even though the opponent had produced an affidavit in which he averred that there was no meeting of the minds and had refused to sign the settlement agreement. 825

---

[4] Plaintiffs note that, notwithstanding the representations made in the letter, the claims of Roland Foeckler, Donald Larson, John Kindrick and Branson Moore were not and are not deficient as releases were generated and executed for the claims of these individuals. The generation of the releases would not have occurred if the claims had been deficient as claimed in the letter dated January 3, 2008.

So.2d 20, 23 (Miss. 2002). The evidence in favor of the settlement included testimony from Guillot's, the settlement proponent, attorneys that a settlement had been successfully negotiated and the fact that the court reporter at the deposition of the opponent, Hastings, had been released—presumably following settlement. Also, "a release and settlement statement were prepared and sent to counsel for Hastings." *Id*. The court reasoned that "[h]ad there been no meetings of the minds, there would have been no such documentation prepared. Without a meeting of the minds, the attorneys would have proceeded with the case, not prepared settlement documents." *Id*.; *see also, Ammons v. Cordova Floors, Inc.*, 904 So.2d 185, 190-91 (Miss.App. 2005)(conduct of parties evinced a meeting of the minds as the parties exchanged construction materials for a check).

In these "futures" cases, not only had North Brothers, as opposed to Plaintiffs, prepared a release and other settlement documents, Plaintiffs had already been presented with the releases, executed them and returned them to North Brothers' agent. Additionally, these parties had gone much further than the simple release of a court reporter before the conclusion of depositions—Plaintiffs in these cases have foregone trial for years.

The totality of the evidence, including North Brothers' and its agent's conduct, shows that these claims have been settled. North Brothers' claim that it did not settle these cases but only agreed to entertain the possibility of settlement cannot, at this advanced state of the proceedings, be given any credence. If one were to accept North Brothers' reasoning then no settlement agreement would ever be enforceable so long as one party had not paid the agreed upon compensation. Moreover, North Brothers' conduct does not support such a position.

With respect to the "futures" cases, it was North Brothers who extended the offer to settle these Plaintiffs' claims pursuant to the agreement—not Plaintiffs. Plaintiffs accepted this offer

11

and submitted documentation to North Brothers' agent. The only question was whether Plaintiffs qualified under the agreement for payment at the agreed amounts. At that point, Plaintiffs were obligated to submit their information to Navigant/PACE and, if approved for payment, Plaintiffs were obligated to execute the release of their claims against North Brothers and accept the historical settlement value for their claims. Once Plaintiffs' claims were approved for payment, as demonstrated by the generation of the release, and Plaintiffs had fully performed, as shown by the execution and return of the releases, North Brothers was obligated to uphold its part of the bargain by paying Plaintiffs the agreed compensation. North Brothers has not and will not uphold its portion of the bargain.

Both the 2001 Appendix "A" Plaintiffs and the "futures" Plaintiffs have demonstrated by a preponderance of evidence that the parties had entered into settlement agreements. "The law favors the settlement of disputes by agreement of the parties and, ordinarily, will enforce the agreement which the parties have made, absent any fraud, mistake, or overreaching." *McManus v. Howard*, 569 So.2d 1213, 1215 (Miss. 1990). There is no evidence of fraud, mistake or overreaching in the present matter. This Court should enforce those agreements.

Plaintiffs further note that they are entitled to Special Contractual Damages pursuant to paragraph number nine (9) of the initial Settlement Agreement. *See* Exhibit "B". North Brothers and Plaintiffs agreed that a court may assess a reasonable penalty against North Brothers for failure to make timely payments pursuant to the agreement. As North Brothers has failed for several years to make any payment on these Plaintiffs' cases, through no fault of Plaintiffs, this conduct triggers the damage clause contained in paragraph nine and this Court should assess a reasonable penalty against North Brothers for the unwarranted delay.

### II. North Brothers is Estopped From Denying the Existence of a Settlement Agreement with These Plaintiffs.

In the alternative, North Brothers should be estopped to deny the existence of the settlement agreements in these cases as Plaintiffs have relied on North Brothers' settlement offers to their detriment. Promissory estoppel arises if "it would be substantially unfair to allow a person to deny what he has previously induced another to believe and take action on." *Koval v. Koval*, 576 So.2d 134, 138 (Miss. 1991). Promissory estoppel works to "forbid one to speak against his own act, representations, or commitments to the injury of one to whom they were directed and who reasonably relied thereon." *Id.* at 137.

Plaintiffs would all be harmed irreparably if North Brothers is allowed to avoid its earlier obligations as Plaintiffs relied on North Brothers' promises to settle their cases in good faith and did not proceed to trial. As North Brothers has continued to refuse payment, Plaintiffs have been deprived of funds promised to them for years, while North Brothers, already in receipt of the releases of Plaintiffs' claims, has been able to avoid responsibility for injuries it inflicted on over one hundred and fifty individuals. Meanwhile, the memories of witnesses who would support Plaintiffs' claims dim, evidence is lost or destroyed and the prosecution of these cases becomes even more difficult—if not impossible. Plaintiffs have been unfairly prejudiced by their reliance on North Brothers' promises to meet its obligations under the agreements. North Brothers should be estopped from denying the validity of these agreements and, consequently, its obligations under these same agreements.

### CONCLUSION

North Brothers agreed to settle Plaintiffs' claims. As demonstrated by the foregoing discussion and the other filings of Plaintiffs' in this matter, there was a meeting of the minds of

the parties and North Brothers' refusal to honor its obligations is inexcusable. Therefore, this Court should enter a Judgment enforcing the settlement agreements that govern these Plaintiffs' claims against North Brothers. This Court should also, given the recalcitrant conduct of the Defendant, award Plaintiffs interest, special contractual damages, costs and attorney fees incurred in procuring the resolution of Plaintiffs' claims.

This 16th day of November, 2009.

RESPECTFULLY SUBMITTED,


/s/ John E. Herrick
JOHN E. HERRICK
MOTLEY RICE, LLC
28 BRIDGESIDE BLVD.
P.O. BOX 1792
MT. PLEASANT, SC 29465
Tel. (843) 216-9000
Fax. (843) 216-9440

AND


THOMAS B. SCOTT, III
SCOTT & SCOTT
5 OLD RIVER PLACE, SUITE 204
P.O. BOX 2009
JACKSON, MS 39215-2009
Tel. (601) 353-9522
Fax. (601) 353-9527

AND


STEPHEN L. SHACKELFORD
LAW OFFICES OF STEPHEN SHACKELFORD
3010 LAKELAND COVE, SUITE P
FLOWOOD, MS 39232
Tel. (601) 936-9939
Fax. (601) 936-9934

AND

JEFFREY A. VARAS
LAW OFFICE OF JEFFREY A. VARAS
119 CALDWELL DRIVE
P.O. BOX 886
HAZELHURST, MS 39083
Tel. (601) 894-4088
Fax. (601) 894-2563

ATTORNEYS FOR PLAINTIFFS