IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| IN RE: | ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | ) ) ) | CIVIL ACTION NO. MDL 875 |
| This Document Relates to: ALL FELA ACTIONS | | ) ) ) ) | |

---

## DEFENDANT GRIFFIN WHEEL COMPANY'S
## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

---

FOLIART, HUFF, OTTAWAY & BOTTOM
Larry D. Ottaway, Oklahoma Bar No. 6816
Monty B. Bottom, Oklahoma Bar No. 987
210 Robert S. Kerr Avenue, 12th Floor
Oklahoma City, Oklahoma 73102
Telephone: (405) 232-4633
Facsimile: (405) 232-3462

ATTORNEYS FOR DEFENDANT
GRIFFIN WHEEL COMPANY, a division of
Amsted Industries Incorporated

March, 2010

# INDEX

Page

**MOTION**.................................................................................................1

**BRIEF IN SUPPORT**............................................................................1

    INTRODUCTION................................................................................1

**STATEMENT OF UNDISPUTED FACTS**..........................................2

**ARGUMENTS AND AUTHORITIES**.................................................4

    PLAINTIFF'S CLAIMS  ARE BARRED BY THE
    DOCTRINE OF FEDERAL PREEMPTION.......................................4

**I.**    **The History of BIA and SAA Field Preemption**.........................4

    A.    The General Concepts..........................................................4

**II.**    **Plaintiffs' Anticipated Arguments Are Without Merit**.............17

    A.    The Federal Railroad Safety Act of 1970...........................17

    B.    The 2007 Clarification to the FRSA....................................21

    C.    Norfolk & Western Ry. Co. v. Pennsylvania Public Utility Comm'n.............25

    D.    State v. Chicago, Milwaukee, St. Paul & Pacific R. Co.............27

    E.    The "In-use/off line" Distinction.......................................28

    F.    OSHA.................................................................................30

    G.    Wyeth v. Levine..................................................................32

**CONCLUSION**...................................................................................33

# TABLE OF AUTHORITIES

Page

Abbott v. A-Best Products Company,
  549 U.S. 823 (2006). …………………………………………………………...13, 16

Angell v. Chesapeake & O. Ry. Co.,
  618 F.2d 260, 262 (4th Cir. 1980)……………………………………………………….29

Atchison, Topeka and Santa Fe Railway Co. v. Illinois Commerce Comm'n,
  453 F.Supp. 920, 926 (N.D. Ill. 1977) …………………………………….………………27

Atwell v. John Crane, Inc.,
  Pa. Ct. of Common Pleas, Philadelphia County, Civil Div., May Term, No. 1366
  (Nov. 19, 2008); 986 A.2d 888 (Pa. Super. 2009); and Harris v. A.W. Chesterton, Inc.,
  et al., Pa. Super. No. 3505 EDA 2008 (March 5, 2010)…………………………………26

Carrillo v. ACF Industries, Inc.,
  980 P.2d 386, 389, 392-93 (Cal. 1999)……………………………...…………………*passim*

Central of Georgia R. Co. v. Markert,
  200 Ga. App. 851, 410 S.E.2d 437, <u>cert.</u> <u>denied</u>, 200 Ga. App. 895 (1991)……………15

Consolidated Rail Corp. v. Pennsylvania Pub. Util. Comm'n,
  536 F. Supp. 653, 655-657 (E.D. Pa. 1982),
  aff'd, 696 F.2d 981 (3d Cir. 1982), aff'd, 461 U.S. 912 (1983)……………………*passim*

Crabbe v. Consolidated Rail Corp.,
  No. 06-12622, 2007 WL 3227584, at *5 (E.D. Mich. Nov. 1, 2007)………………..22, 24

Crockett v. Long Island R.R.,
  65 F.3d 274, 277 (2d Cir. 1995)……………………………………………………….29

D'Amico v. Garlock Sealing Tech., LLC,
  Civ. 92-5544, 2007 WL 2702774, at *6 (E.D. Pa. Sept. 13, 2007)…………...2, 16, 17, 23

Darby v. A-Best Products Co.,
  2002 WL 31839197 (Ohio Ct. App. 2002), aff'd, 811 N.E.2d 1117 (Ohio 2004),
  cert. denied,  543 U.S. 1146, 125 S. Ct. 1297 (2005)……………………………14, 16, 29

David Waters v. Griffin Wheel Co., et al.,
  Case No. 2:95cv32, transferred from the United States District Court
  for the Eastern District of Virginia…………………………………………..…………3

Davis v. Manry,
 266 U.S. 401 (1925)…………………………………………………………..12

Defrancisco v. Owens Corning, Inc., et al.,
 Superior Court of New Jersey, Camden County, Docket No. L-1127-05………………24

Dillon v. Chicago Southshore & South Bend R. Co.,
 683 N.E.2d 591 (Ind.), cert. denied sub nom.,…………...………………………………15

Dillon v. Northern Indiana Commuter Transp. Dist.,
 522 U.S. 914 (1997)……………………………..………………………………………15

Fidelity Fed. Sav. & Loan Assn. v. De La Questa,
 458 U.S. 141, 153 (1982)………………………………………………………………5

Finley v. United States,
 (1989) 490 U.S. 545, 554-555, 109 S.Ct. 2003, 104 L.Ed. 593)………..………………10

First Security Bank v. Union Pacific R. Co.,
 152 F.3d 877 (8th Cir. 1998) ………………………………………...………15, 16

Forrester v. Am. Dieselelectric, Inc.,
 255 F.3d 1205, 1210 (9th Cir. 2001)……………………………….……………14, 16, 20

Frastaci v. Vapor Corp.,
 158 Cal. App. 4th 1389, 1399-1403 (2007)……………………….……… ……………*passim*

Furlong v. Union Pacific R. Co.,
 766 So. 2d 751, 761-62 (La. App. 2000), writ denied, 781 So. 2d 556 (2001)………......15

General Motors v. Kilgore,
 853 So.2d 171 (Ala. 2002)…………………………………………………..14, 16, 20

Gilvary v. Cuyahoga Valley Ry. Co.,
 292 U.S. 57, 60-61 (1934)………………….……………………………………12

Harris v. A.W. Chesterton, Inc., et al.,
 Pa. Ct. of Common Pleas, Philadelphia County, Civil Div., July Term, 2005,
 No. 000783 (Jan. 30, 2009)…………………………………...………………………26

Hicks v. Miranda,
 422 U.S. 332, 344-345 (1975) ………………………………………………..………26

In Re: Train Collision at Gary, Indiana,
 670 N.E. 2d 902 (Ind. App. 1996), appeal denied sub nom….…………………………15

In Re: West Virginia Asbestos Litigation,
    592 S.E.2d 818, 822 (W. Va. 2003)……………………………………...…13, 14, 16

Jones v. Rath Packing Co.,
    430 U.S. 519, 525 (1977)……………..……………………………………...5

Jordan v. Southern Ry. Co.,
    970 F.2d 1350, 1352 (4th Cir. 1992)………………………………….………11

Keene Corp. v. United States,
    (1993) 508 U.S. 200, 212, 113 S.Ct. 2035, 124 L.Ed.2d 118)…………..………………..10

Key v. Norfolk Southern Ry. Co.,
    228 Ga. App. 305, 491 S.E.2d 511 (1997)……………………………………15

King v. Southern Pacific Transp. Co.,
    855 F.2d 1485, 1489 n.2 (10th Cir. 1988)……………………………………15

Krentz v. Consolidated Rail Corp.,
    910 A.2d 20, 33, n. 15 (Pa. 2006)……………………………….……………....26

Kurns v. A.W. Chesterton,
    2009 WL 249769 (E.D. Pa., February 3, 2009)………………………………2, 16, 17, 23

Law v. General Motors Corp.,
    114 F.3d 908, , 910-911, 913 n.4 (9th Cir. 1997)……………………………...……passim

Lechmere, Inc. v. NLRB,
    502 U.S. 527, 536-37 (1992)…………………………………………….………30

Lundeen v. Canadian Pacific Railway,
    507 F. Supp. 2d 1006 (D. Minn. 2007) ……………………………………...22, 23

M'Culloch v. Maryland,
    17 U.S. 316, 427 (1819)……………………………...………………………4

Malone v. White Motor Corp.,
    435 U.S. 497, 504 (1978)…………………………………..……………..……5

Mandel v. Bradley,
    432 U.S. 173, 176, 97 S. Ct. 2238, 53 L.Ed.2d 199 (1977) ……………..…………….26

Marshall v. Burlington Northern, Inc.,
    720 F.2d 1149, 1152-53 (9th Cir. 1983)……………………..……….…..…passim

Maryland v. Louisiana,
    451 U.S. 725, 746 (1981)……………………………...………………………………..4

Mastrocola v. SEPTA,
    941 A.2d 81, 89, n.12 (Pa. Commw. Ct. 2008)………………………………………23

Mehl v. Canadian Pacific Railway,
    417 F. Supp. 2d 1104 (D.N.D. 2006)…………………………………………….. 22, 23

Missouri Pacific R. Co. v. Railroad Comm'n of Texas,
    833 F.2d 570 (5th Cir. 1987)……………………….………………………..…14, 16, 28

Napier v. Atlantic Coast Line R.R. Co.,
    272 U.S. 605, 611-613 (1926)……..…….………………………………………*passim*

Norfolk & Western Ry. Co. v. Pennsylvania Public Utility Comm'n,
    413 A.2d 1037 (Pa. 1980)……………………………………………...…25, 26, 28

Norfolk S. Ry. Co. v. Bogle,
    166 App. 3d 449, 850 N.E.2d 1281, 1286, (Ohio Ct. App. 2006)
    (reversed on other grounds) 115 Ohio St.3d 455, 875 N.E.2d 919, 2007-Ohio-5248
    (Ohio Oct 10, 2007)(NO. 2006-1025, 3376)……………………………………..…….28

Norfolk Southern Ry. Co. v. Denson,
    774 So. 2d 549, 553-55 (Ala. 2000)……………………………………………..….…15

Oglesby v. Delaware & Hudson Railway Co.,
    180 F.3d 458 (2nd Cir. 1999), cert. denied 528 U.S. 1004 (1999)……………….…..14, 16

Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n.,
    461 U.S. 190, 204 (1983)………………………….………………………………….5

Penna. R.R. Co. v. Public Service Comm.,
    250 U.S. 566, 569 (1919)……………………………………...…………….....23

Purple Orchid, Inc. v. Pa. State Police,
    813 A.2d 801, 806 (Pa. 2002)……………………………………………………...26

R.J. Corman R. Co. v. Palmore,
    999 F.2d 149, 152 (6th Cir. 1993)……………………………………………………...8

Ransford, et al v. Griffin Wheel Company, Inc.,
    San Francisco County Sup. Ct. No. CGC-07-274342, No. A121620………….…….15

Rice v. Santa Fe Elevator Corp.,
    331 U.S. 218, 230 (1947)………………………………………….………………4, 5

Riegel v. Medtronic, Inc.,
    552 U.S. 312, 128 S.Ct. 999 (2008)…………………………………….……….33

Scheiding v. General Motor Corp.,
    993 P. 2d 996 (Cal. 2000), cert. den., 531 U.S. 958, 121 S. Ct. 383 (2000)……….passim

Seaman v. A.P. Green Industries, Inc.,
    707 N.Y.S.2d 299, 300-02 (N.Y. Sup. Ct. 2000)………………………………12, 14, 28

Secretary of Labor v. Consol. Rail Corp.,
    1982 O.S.H.D. (CCH) ¶ 26,044, 1982 WL 22612, *4 (O.S.H.R.C. Apr. 30, 1982)…….31

Springston v. Consolidated Rail Corp.,
    130 F.3d 241, 245 (6th Cir. 1997), cert. denied,, 523 U.S. 1094 (1998)…….……..passim

State v. Chicago, Milwaukee, St. Paul & Pacific R. Co.,
    484 P.2d 1146, 1148-1149 (Wash. 1971)……………………………………27, 28

Southern Pac. Transp. Co. v. Usery,
  539 F.2d 386, 392 (5th Cir. 1976)……………………………………………31,32

Southern Ry. Co. v. R.R. Comm., Indiana,
    236 U.S. 439, 446-47 (1915)…………………………..……………………..passim

U.S. v. Locke,
    529 U.S. 89, 108 (2000)…………………………………………………….... 19

United Transp. Union v. Foster,
    205 F.3d 851, 860-61 (5th Cir. 2000) ……………………………….……...…14, 15, 16

United Transp. Union v. Long Island R. Co.,
    455 U.S. 678, 687 (1982)), cert. denied, 528 U.S. 1077 (2000) ……………...……….8

Wright v. General Elec. Co.,
    242 S.W.3d 674 (Ky. App. 2007)……………………………………….…………23

Wyeth v. Levine,
    555 U.S. __, 129 S.Ct. 1187, 1192 (2009)……………………………………...32, 33

**Statutes and Other Authorities:**

Rule 56 Fed. R. Civ. Proc……………………………………………………………………….1

29 C.F.R. § 1926.1011(c), (h)……………………………………………………………... 30

49 C.F.R. §§231-233………………………………………………………………………..8

Dep't of Transp., Fed. R.R. Admin. <u>Railroad Occupational Safety and Health Standards;
Termination</u>, 43 Fed. Reg. 10583, 10587, 10589 (March 14, 1978)………..……………….…....31

Federal Employers' Liability Act,
    45 U.S.C. § 51, <u>et. seq.</u> ("FELA")…………………………………..…………22, 25, 28, 29

Federal Food, Drug and Cosmetic Act ("FDCA")……………….……………………………32

Federal Rail Safety Act of 1970 ("FRSA")…………………………………….........*passim*

Federal Railroad Association ("FRA")……………………………………………….*passim*

Food and Drug Administration ("FDA")……………………………………………...32

H.R. Rep. No. 91-1194 (1970),
    <u>reprinted in</u> 1970 U.S.C.C.A.N. 4104, 4105, 4108……………………………………19

H.R. Rep. No. 103-180, at 3, 5 (1994),
    <u>reprinted in</u> 1994 U.S.C.C.A.N. 818, 820, 822…………………………….……………19

H. Rep. No. 110-336, Background and Need for Legislation, pp. 27-28…………………………19

Locomotive Boiler Inspection Act ("BIA"),
    49 U.S.C.A., Subtitle V, Part A, Ch. 207, §§ 20701-20703 <u>et. seq</u>…………………*passim*

Occupational Safety and Health Administration ("OSHA")……………….…….…..…………..30, 31

Revision of Title 49, Transportation,
    U.S. Cod. Pub. L. No. 103-272 §§ 1(a), 6(a), 108, Stat. 745, 1378 (1994)……………...19

Safety Appliances Act ("SAA"),
    49 U.S.C.A., §§ 20101-20144, Subtitle V, Part A, Ch. 203,  20301-20304…………*passim*

**Exhibits:**

1. Case List
2. <u>Kurns, et al. v. A.W. Chesterton, et al.</u> – Opinion
3. <u>D'Amico v. Garlock Sealing Technologies, LLC, et al.</u> – Opinion
4. Affidavit of Dale Christie
5. <u>David Waters v. Griffin Wheel Co., et al.</u>, Case No. 2:95cv32 – Complaint
6. FRA, U.S. Dept. of Transportation, Rep. to Congress, Locomotive Crashworthiness and Cab Working Conditions (Sept. 1996), pp. 10-10 - 10-12, 12-9
7. <u>Ransford et al. v. Griffin Wheel Company, Inc.,</u> No. A121620 – Plaintiff's Appeal
8. Denial of Petition for Review
9. Correspondence from the Supreme Court of the United States, Office of the Clerk, dated March 1, 2010
10. <u>Crabbe v. Consolidated Rail Corporation, et al.</u> – Opinion
11. H. Rep. No. 110-336, Background and Need for Legislation, pp. 27-30
12. Order Vacating Prior Order and Opinion Granting Summary Judgment
13. <u>Secretary of Labor v. Consol. Rail Corp.,</u> 1982 O.S.H.D. (CCH) ¶ 26,044, 1982 WL 22612, *4 (O.S.H.R.C. Apr. 30, 1982)

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| IN RE: | ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | ) ) ) ) ) ) | CIVIL ACTION NO. MDL 875 |
| This Document Relates to: ALL FELA ACTIONS | | | |

**DEFENDANT GRIFFIN WHEEL COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

## MOTION

Defendant, Griffin Wheel Company ("GWC"), pursuant to Rule 56, Fed. R. Civ. Proc., hereby moves for summary judgment on the grounds that there is no genuine issue as to any material fact entitling GWC to judgment in its favor as a matter of law.

This motion seeks summary judgment on the grounds of federal preemption, and thus relates to all GWC's cases on MDL 875's FELA docket on this same issue. The specific individual cases to which GWC is a party are listed on Exhibit "1." GWC submits the following brief in support of its motion for summary judgment.

## BRIEF IN SUPPORT

### INTRODUCTION

All claims asserted against GWC by Plaintiff are barred by the field preemptive effect of the Locomotive Boiler Inspection Act, 49 U.S.C.A., Subtitle V, Part A, Ch. 207, §§ 20701, et. seq. (the "BIA") and the Safety Appliances Act, 49 U.S.C.A., Subtitle V, Part A, Ch. 203, §§ 20301, et. seq. (the "SAA"). The United States Supreme Court's holdings in Napier v. Atlantic Coast Line R.R. Co., 272 U.S. 605 (1926) and Southern Ry. Co. v. R.R. Comm., Indiana, 236 U.S. 439 (1915) – that the BIA and SAA must be given a broad field preemptive effect – remain the law today. Indeed, this very Court has recently ruled in favor of summary judgment on

federal preemption grounds in the context of claimed asbestos-related injury to railroad workers in two cases. See, Kurns v. A.W. Chesterton, 2009 WL 249769 (E.D. Pa., February 3, 2009) (currently on appeal in the Third Circuit Court of Appeals) (a copy of the Kurns opinion is attached hereto as Exhibit "2"); and D'Amico v. Garlock Sealing Tech., LLC, Civ. 92-5544, 2007 WL 2702774, at *6 (E.D. Pa. Sept. 13, 2007) (a copy of which is attached hereto as Exhibit "3").

Prior to 1994, GWC sold and/or manufactured and sold brake shoes exclusively for use on railroad locomotives and railcars.  Those brake shoes were the only products made and/or sold by GWC which for a limited time contained a small percentage volume of encapsulated chrysotile asbestos.  No other railroad product manufactured and/or sold by GWC contained asbestos at any time.

Each of the plaintiffs making claims against GWC are or were employees of a railroad company(ies), or are the spouses of such employees.   Thus, given that GWC made no other products and the nature of Plaintiffs' work, if Plaintiffs used or were physically around brake shoes made or sold by GWC,[1] then they used or were physically around them solely in connection with and by reason of their job with the railroad companies.

These material facts are undisputed, and they establish that Plaintiff's claims are entirely preempted.  Accordingly, GWC is entitled to judgment in its favor as a matter of law.

---

[1]GWC will not concede at trial, should this motion be denied, that any plaintiff used GWC brake shoes or was exposed to asbestos by reason of using GWC brake shoes.  Those facts, however, are not material or relevant in the context of this motion.  Regardless of whether Plaintiffs used GWC brake shoes or were exposed to asbestos by such use, Plaintiffs' claims against GWC are preempted.  Plaintiffs, therefore, cannot rely upon any existing factual dispute as to product identification or exposure to defeat this motion.

## STATEMENT OF UNDISPUTED FACTS

1.      Prior to 1994, GWC sold and/or manufactured brake shoes for use on railroad locomotives and railcars. See, Affidavit of Dale Christie, attached hereto as Exhibit "4."

2.      Those brake shoes were the only products manufactured and or sold by GWC which for a time, contained a small percentage of encapsulated chrysotile asbestos. See, Exhibit 4.

3.      No other railroad product manufactured and/or sold by GWC ever contained asbestos. See, Exhibit 4.

4.      Any use of GWC brake shoes by Plaintiffs or exposure to asbestos by reason of such use was solely in connection with, and in the course and scope of, Plaintiffs' employment by a railroad company(ies) whereby Plaintiffs were required to handle or be physically around locomotive and/or railcar brake shoes, or by reason of being the spouses of such employees. See, Petitions and Complaints in cases listed in Exhibit 1. (The Complaint in David Waters v. Griffin Wheel Co., et al., Case No. 2:95cv32, transferred from the United States District Court for the Eastern District of Virginia, is attached as an example and marked as Exhibit "5." Schedule I, p. 12, of that Complaint identifies the plaintiff as a laborer, fire knocker, brakeman, carman, helper, and assistant foreman for the CSX railroad company.)

**ARGUMENT AND AUTHORITIES**

PLAINTIFF'S CLAIMS[2] ARE BARRED BY THE
DOCTRINE OF FEDERAL PREEMPTION

I.   **The History of BIA and SAA Field Preemption**

A.   The General Concepts

Article VI, Clause 2, of the United States Constitution (the "Supremacy Clause") states:

> "This Constitution, and the Laws of the United States which shall
> be made in Pursuance thereof; and all Treaties made, or which
> shall be made, under the authority of the United States, shall be the
> Supreme law of the Land; and the Judges in every State shall be
> bound thereby, any Thing in the Constitution or Laws of any State
> to the Contrary notwithstanding."

The Supremacy Clause invalidates state laws which interfere with or are contrary to the laws of

Congress and provides the underlying rationale for the doctrine of federal preemption. Since the

United States Supreme Court's early decision in M'Culloch v. Maryland, 17 U.S. 316, 427

(1819), it has been settled that any state law that conflicts with federal law is "without effect."

Maryland v. Louisiana, 451 U.S. 725, 746 (1981). The United States Constitution at the same

time reserves police powers to the states, and it is thus held that consideration of issues under the

Supremacy Clause "start[s] with the assumption that the historic police powers of the states [are]

not to be superceded by . . . Federal Act unless that [is] the clear and manifest purpose of

Congress." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). In making the necessary

---

[2] There are or may be cross-claims against GWC either by affirmative pleading or by operation
of applicable master, standing, administrative, pretrial, and/or case management orders.
Because plaintiffs' claims against GWC are preempted, all such cross-claims by co-defendants
against GWC likewise fail as a matter of law. See, Order for Pleadings in Cases in Which
Contain Asbestos Related Personal Injury Claims in the Federal District Court for the Eastern
District of Pennsylvania, entered August 20, 1986, ¶3(f).

determinations, "[t]he purpose of Congress is the ultimate touchstone" of preemption analysis. <u>Malone v. White Motor Corp.</u>, 435 U.S. 497, 504 (1978).

Congressional intent to preempt may be "explicitly stated in the statute's language [called 'express preemption'] or implicitly contained in the federal law's structure and purpose [called 'implied preemption']." <u>Jones v. Rath Packing Co.</u>, 430 U.S. 519, 525 (1977) (explanations added). Even in the absence of an express statement of preemptive intent, state law is nonetheless preempted if that law actually conflicts with federal law. <u>Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n.</u>, 461 U.S. 190, 204 (1983). Moreover, state law is preempted, even without an express statement of preemption in the federal law, where the federal law so thoroughly occupies a subject area "'as to make reasonable the inference that Congress left no room for the States to supplement it.'" <u>Fidelity Fed. Sav. & Loan Assn. v. De La Questa</u>, 458 U.S. 141, 153 (1982) (quoting <u>Rice</u>, <u>supra</u>, at 230). This latter form of preemption is called "field preemption."

B.      <u>The Federal Statutes and Regulations</u>

Title 49 of the United States Code contains the federal statutes "of a general and permanent nature relating to Transportation . . ." 49 U.S.C.A., explanation at p. V. "The nation's economy and society in general are heavily dependent upon transportation. The need for federal government regulation of such a vital and far reaching industry was recognized by the framers of the United States Constitution in granting Congress the power to regulate commerce. Since that time [Congress] has attempted to provide the citizens of this country with safe, economical, and nondiscriminatory means of transportation." <u>Id</u>. Title 49 is divided into ten (10) subtitles, including subtitles governing the Department of Transportation and other agencies, intermodal programs, interstate transportation, motor vehicle and driver programs, and aviation and space

programs.  Subtitle V of Title 49 contains the federal laws governing railroad programs. Subtitle V is itself divided into five (5) parts: safety, assistance, passenger transportation, high-speed rail, and miscellaneous. Each part of Subtitle V is further broken down into chapters, subchapters, and sections. This motion is founded on the _field_ preemptive effect of the comprehensive national regime of railroad regulation set forth in these numerous statutes and the exhaustive regulations adopted pursuant to authority granted in these statutes.

Specifically, among the numerous acts contained in Title 49 are the Locomotive Boiler Inspection Act, 49 U.S.C.A., Subtitle V, Part A, Ch. 207, §§ 20701, et. seq. (the "BIA"); and the Safety Appliances Act, 49 U.S.C.A., Subtitle V, Part A, Ch. 203, §§ 20301, et. seq. (the "SAA").

The BIA provides in pertinent part:

> **Requirements for use**
> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line _only_ when the locomotive or tender and its parts and appurtenances–
>
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
> (3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C.A. § 20701. (emphasis added). Further, Section 20702 of the BIA obligates the Secretary of Transportation to inspect every locomotive "and its parts" to ensure they are in safe operating condition.

6

The SAA provides as follows:

"**General requirements**

(a) **General**.–Except as provided in subsection (c) of this section and section 20303 of this title, a railroad carrier may use or allow to be used on any of its railroad lines–

(1) a vehicle only if it is equipped with–

\* \* \*

(B) secure sill steps and efficient hand <u>brakes;</u> and

\* \* \*

(4) a locomotive <u>only if it is equipped with a power-driving wheel brake and appliances for operating the train-brake system;</u> and

(5) a train <u>only if</u> –

(A) <u>enough of the vehicles in the train are equipped with power or train brakes so that the engineer on the locomotive hauling the train can control the train's speed without the necessity of brake operators using the common hand brakes for that purpose;</u> and

(B) <u>at least 50 percent of the vehicles in the train are equipped with power or train brakes</u> and the engineer is using the power or train brakes on those vehicles and on all other vehicles equipped with them that are associated with those vehicles in the train."

49 U.S.C.A. § 20302 (emphasis added).

Pursuant to authority granted in the BIA, the SAA, and generally in 49 U.S.C.A. § 20103, the Secretary of Transportation has adopted a comprehensive array of detailed federal regulations governing the operation and safety of the railroads and the necessary equipment, including locomotives, railcars, and their brakes. Those regulations are set forth in Chapter II of Title 49 of the Code of Federal Regulations. Chapter II is divided into thirty-eight (38) parts, addressing

7

in excruciating detail matters from "Informal Rules of Practice" to "Magnetic Levitation Technology" and all manner of topics in between.

Title 49 C.F.R., Part 232, specifically governs "Railroad Power Brakes and Drawbars." These regulations are exhaustive, precise, and detailed.   They set forth, for example, the percentage of railcars that must have brakes (§232.1), the minimum brake shoe clearance (§232.10(h)(1)), the proper brake shoe alignment (§232.10(i)(1)), minimum brake cylinder piston travel (§232.12(f)(2)), brake tests (232.13), and brake equipment testing (§232.14).   The regulations address brake shoes, power brakes, brake valves, equalizing reservoirs, brake piping, operating valves, and brake pressures (App. B to Part 232).

C.     The Case Law

Railroads have been "subject to comprehensive federal regulation for nearly a century." Carrillo v. ACF Industries, Inc., 980 P.2d 386, 389 (Cal. 1999) (quoting United Transp. Union v. Long Island R. Co., 455 U.S. 678, 687 (1982)), cert. denied, 528 U.S. 1077 (2000).   Congress "inten[ds] that railroads should be regulated primarily on a national level through an integrated network of federal law," and has regulated "almost all aspects of the railroad industry, including rates, safety, labor relations, and worker conditions." R.J. Corman R. Co. v. Palmore, 999 F.2d 149, 152 (6th Cir. 1993).

Over 80 years ago, the United States Supreme Court established the field preemptive effect of the BIA by holding that it "extends to the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." Napier v. Atlantic Coast Line R.R. Co., 272 U.S. 605, 611 (1926).   Napier further expressly held as follows:

> ".  .  . [T]he Boiler Inspection Act, as we construe it, was intended to occupy the field.   The broad scope of the authority

8

> conferred upon the Commission[3] leads to that conclusion.  Because
> the standard set by the Commission must prevail, **requirements by
> the States are precluded, however commendable or however
> different their purpose.**"

Id. at 613 (emphasis added). Napier's holding that the BIA must be given field preemptive effect

remains the law today.

In Scheiding v. General Motors Corp., 993 P.2d 996 (Cal. 2000), cert. denied, 531 U.S.

958 (2000), the  California Supreme Court addressed the precise issue presented here: the BIA's

preemptive effect on state law tort claims by railroad workers and their spouses based upon

alleged exposure to asbestos-containing products while on the job.  The Court held that such

claims are preempted:

> "We conclude Napier continues to articulate the preemptive scope
> of the BIA and thus forecloses state law causes of action . . . ."

Id., at 997.  Scheiding recognizes Napier as the seminal case on the issue, and further holds:

> "'It has long been settled that Congress intended federal law to
> occupy the field of locomotive safety, particularly as it relates to
> injuries suffered by railroad workers in the course of their
> employment.'"

Id., at 998 (citing Law v. General Motors Corp., 114 F.3d 908, 910 (9th Cir. 1997)).

Congressional intent being the "ultimate touchstone," the Scheiding Court took great

pains to delineate the legislative history which supports giving the BIA field preemptive effect:

> We also have evidence of legislative intent to this effect. As the
> court in Consolidated Rail, supra, 536 F.Supp. at pages 656-657,
> observed, when Congress enacted the Federal Railroad Safety Act

---

[3] "Commission" refers to the Interstate Commerce Commission which at the time Napier was
decided had the controlling authority over the railroads.  That authority was transferred to the
Department of Transportation in 1966 by the Department of Transportation Act.  See, Springston
v. Consolidated Rail Corp., 130 F.3d 241, 244 (6th Cir. 1997), cert. denied 523 U.S. 1094 (1998).

in 1970, it specifically identified the BIA as among the 'particular laws' governing railroad safety that 'have served well,' so well that the Committee on Interstate and Foreign Commerce reviewing the matter 'chose to continue them without change.' (H.R. Rep. No. 91-1194, 2nd Sess. (1970), reprinted in 1970 U.S. Code Cong. & Admin. News, p. 4105.)  In discussing the role of the states in this area, <u>the committee noted that '[a]t the present time where the Federal Government has authority [e.g., under the BIA], with respect to rail safety, it preempts the field.'</u>  (Id., 1970 U.S. Code Cong. & Admin. News at p. 4108.)  Additionally, when Congress recodified the BIA in 1994, the House report stated 'this bill makes no substantive change' and disclaimed any intent to 'impair the precedent value of earlier judicial decisions. . . .' (H.R. Rep. No. 103-180, 1st Sess. (1993), reprinted in 1994 U.S. Code Cong. & Admin. News, p. 822; see <u>Finley v. United States</u> (1989) 490 U.S. 545, 554-555, 109 S.Ct. 2003, 104 L.Ed. 593.)  In light of this explicit statement, we may 'apply the presumption that Congress was aware of . . . earlier judicial interpretations [including <u>Napier</u>] and, in effect, adopted them. [Citations.]' <u>Keene Corp. v. United States</u> (1993) 508 U.S. 200, 212, 113 S.Ct. 2035, 124 L.Ed.2d 118).

<u>Id.</u>, at 1000 (emphasis added).

<u>Scheiding</u> further holds that the Secretary of Transportation has unquestioned authority to regulate the design of locomotive equipment and could, should the Secretary deem it necessary and appropriate, "order the elimination of asbestos in locomotive components." <u>Id.</u>, at 999.  The Secretary, however, has not done so.  Indeed, the Federal Railroad Administration (the "FRA") in its 1996 report to Congress found, <u>inter alia</u>, "no evidence of asbestos being a health problem for crews of older locomotive," and "recommend[ed] no action be taken on the issue of asbestos. . . ." <u>Id.</u>, at 999, n. 2 (quoting FRA, U.S. Dept. of Transportation, Rep. to Congress, Locomotive Crashworthiness and Cab Working Conditions (Sept. 1996), pp. 10-10 - 10-12, 12-9 attached as

Exhibit "6".)[4]  But as held long ago in Napier, because the decision whether to do so came within the scope of authority delegated to the D.O.T., (then the I.C.C.), "The fact that the Commission [now the D.O.T.] has not seen fit to exercise its authority to the full extent conferred has no bearing upon the construction of the act delegating the power."  Napier, 272 U.S. at 613.  Thus, stated another way, Congress via the BIA intended to and did preempt the entire field, even as to matters which are not the direct subject of detailed regulations.

Accordingly, with respect to those plaintiffs whose claims are based upon alleged exposure to GWC brake shoes while working on locomotives, those claims are preempted by the BIA and GWC is entitled to judgment in its favor as a matter of law.

With respect to those plaintiffs whose claims are based upon alleged exposure to GWC brake shoes while working on, in, or around rail cars, the analysis and the result are the same. Any such claim is preempted by the SAA, which applies to "train[s]" and "vehicles," which terms are defined to include railcars.  The SAA dates from the "heyday" of American steam railroads and "contains a strikingly specific laundry list of equipment a railroad must have on each type of car: ladders, brakes, . . ., etc."  Jordan v. Southern Ry. Co., 970 F.2d 1350, 1352 (4th Cir. 1992) (emphasis added).  In addition, just as is done under the BIA, "the statute gives the Secretary of Transportation (formerly the Interstate Commerce Commission) the power to prescribe standards for the various listed appliances. [citation omitted].  The current regulations, at 49 C.F.R. Parts 231-233, standardize, in great detail, each item on Congress' laundry list." Jordan, 970 F.2d at 1352.  The SAA is "a sister statute" to the BIA and has been given the same

_____

[4] The Scheiding Court granted the parties' request to take judicial notice of the pertinent findings in the FRA report.  Scheiding, at 999, n. 2.  GWC hereby makes the same request of this Court.  Rule 201, Fed. R. Evid.

broad field preemptive effect.  See, Seaman v. A.P. Green Industries, Inc, 707 N.Y.S.2d 299, 302

(N.Y. Sup. Ct., 2000).

Ninety-five (95) years ago, the United States Supreme Court established the field

preemptive effect of the SAA in Southern Ry. Co. v. R.R. Comm., Indiana, 236 U.S. 439 (1915),

where it held as follows:

> "[T]he exclusive effect of the Safety Appliance Act did not relate
> merely to details of the statute and the penalties it imposed, but
> extended to the whole subject of equipping cars with appliances
> intended for the protection of employees. The States thereafter
> could not legislate so as to require greater or less or different
> equipment.
>
> * * *
>
> [I]t is sufficient here to say the Congress has so far occupied the
> field of legislation relating to the equipment of freight cars with
> safety appliances as to supercede existing and prevent further
> legislation on that subject."

Id., at 446-47.   The holding of Southern Ry. Co. was reaffirmed four years later in Pennsylvania

R. Co. v. Pub. Service Comm., 250 U.S. 566, 569 (1919) (via the S.A. A. the United States has

exercised its exclusive power in the field, and thus "the states no more can supplement its

requirements than they can annul them"); and six years after that in Davis v. Manry, 266 U.S.

401 (1925); and again nine years after that in Gilvary v. Cuyahoga Valley Ry. Co., 292 U.S. 57,

60-61 (1934)("So far as the safety equipment of such vehicles is concerned, [the Safety

Appliance Act] operates to exclude state regulation whether consistent, complementary,

additional or otherwise.").  Southern Railway Co. remains the law today.

The California Supreme Court also had occasion to rule on the SAA's preemptive effect

in Carrillo v. ACF Industries, Inc., 980 P.2d 386, (Cal. 1999), cert. denied,   528 U.S. 1077

12

(2000).  Holding that the plaintiff's state law products liability and failure to warn claims were preempted by the SAA, Carrillo states as follows:

> As interpreted by the United States Supreme Court, the statutes [the SAA] and their implementing regulations reflect a congressional intent to occupy the field regulating railroad safety appliances, thus precluding any state law directed to the same matter, including common law tort claims predicated on design defects.

Id., at 387 (explanation added).

It is thus clear that based upon Southern Ry. Co. and its progeny, including Carrillo, the claims of plaintiffs alleging exposure to GWC brake shoes while working on, in, or around rail cars are preempted by the SAA, and GWC is entitled to judgment in its favor as a matter of law.

Napier, Southern Ry. Co., and their progeny remain the law today, as evidenced by an "avalanche" of authority holding that the BIA and SAA must continue to be given a broad field preemptive effect. Frastaci v. Vapor Corp., 158 Cal. App. 4th 1389, 1403 (2007) (stating that its finding of preemption was "consistent with an avalanche of state and federal court decisions holding firm to the Napier principle that the BIA preempts state tort actions"); In Re: West Virginia Asbestos Litigation, 592 S.E.2d 818, 822 (W. Va. 2003) ("an overwhelming body of case law" persuaded the court that Congress, through the BIA had occupied the field such that the plaintiff's asbestos claims were preempted and that any other decision was "blocked by an avalanche of adverse authority"), cert. denied sub nom., Abbott v. A-Best Products Company, 549 U.S. 823 (2006).  Support for this proposition is virtually universal.  See, e.g., Scheiding, supra (upholding the BIA's preemptive effect on state law tort claims by railroad workers and their spouses based upon alleged exposure to asbestos-containing products while on the job and stating, "We conclude Napier continues to articulate the preemptive scope of the BIA and thus

13

forecloses state law causes of action . . ."); <u>Carrillo</u>, <u>supra</u> (holding that the appellants' state law products liability and failure to warn claims were preempted by the SAA); <u>In re: West Virginia Asbestos Litigation</u>, <u>supra</u>, (holding that state law tort claims against manufacturers of parts of railroad locomotives are preempted by federal law under the BIA); <u>Consolidated Rail Corp. v. Pennsylvania Pub. Util. Comm'n</u>, 536 F. Supp. 653 (E.D. Pa. 1982) (holding that <u>Napier</u> and BIA field preemption exist without impairment after enactment of the Federal Rail Safety Act of 1970), <u>affirmed sub nom.</u>, 696 F.2d 981 (3d Cir. 1982), <u>affirmed sub nom.</u>, 461 U.S. 912 (1983); <u>Springston v. Consolidated Rail Corp.</u>, 130 F.3d 241 (6th Cir. 1997) (BIA preempted common law negligence claim for failure to install certain safety devices), <u>cert.</u> <u>denied</u>, 523 U.S. 1094 (1998); <u>Seaman v. A.P. Green Industries, Inc.</u>, 707 N.Y.S.2d 299 (N.Y. Sup. Ct., 2000) (holding that BIA preempts railroad workers' asbestos personal injury tort claims); <u>General Motors v. Kilgore</u>, 853 So.2d 171 (Ala. 2002) (holding that BIA preempts plaintiff's mesothelioma claims grounded in state tort law); <u>Darby v. A-Best Products Company</u>,811 N.E.2d 1117 (Ohio 2004) (holding that BIA preempts railroad workers' state tort claims for asbestos related disease from exposure to defendant's locomotive component parts), <u>cert.</u> <u>denied</u>, 543 U.S. 1146 (2005); <u>Forrester v. American Dieselectric, Inc.</u>, 255 F.3d 1205, 1210 (9th Cir. 1999) ("We think first that the force of the sweeping preemption rule under <u>Napier</u> remains unimpaired."); <u>Law v. General Motors Corp.</u>, 114 F.3d 908 (9th Cir. 1997) (holding that the BIA preempts state common law remedies against railroad manufacturers for injuries allegedly caused by design defects in trains); <u>Oglesby v. Delaware & Hudson Railway Co.</u>, 180 F.3d 458 (2nd Cir. 1999) (holding that the BIA preempts common law remedies relating to locomotive equipment safety, including product defect and failure to warn claims), <u>cert.</u> <u>denied</u> 528 U.S. 1004 (1999); <u>see</u> <u>also</u>, <u>Missouri Pacific R. Co. v. Railroad Comm'n of Texas</u>, 833 F.2d 570 (5th Cir. 1987); <u>United</u>

14

Transp. Union v. Foster, 205 F.3d 851, 860-61 (5th Cir. 2000); First Security Bank v. Union Pacific R. Co., 152 F.3d 877 (8th Cir. 1998); Marshall v. Burlington Northern, Inc., 720 F.2d 1149, 1152 (9th Cir. 1983); King v. Southern Pacific Transp. Co., 855 F.2d 1485, 1489 n.2 (10th Cir. 1988); Norfolk Southern Ry. Co. v. Denson, 774 So. 2d 549, 553-55 (Ala. 2000); Central of Georgia R. Co. v. Markert, 200 Ga. App. 851, 410 S.E.2d 437, cert. denied, 200 Ga. App. 895 (1991); Key v. Norfolk Southern Ry. Co., 228 Ga. App. 305, 491 S.E.2d 511 (1997); In re Train Collision at Gary, Indiana, 670 N.E. 2d 902 (Ind. App. 1996), appeal denied sub nom., Dillon v. Chicago Southshore & South Bend R. Co., 683 N.E.2d 591 (Ind.), cert. denied sub nom., Dillon v. Northern Indiana Commuter Transp. Dist., 522 U.S. 914 (1997); Furlong v. Union Pacific R. Co., 766 So. 2d 751, 761-62 (La. App. 2000), writ denied, 781 So. 2d 556 (2001).

California courts have recently reiterated the holdings in Scheiding and Carrillo, thus again finding that Napier and Southern Ry. Co. remain the law of the land. In Ransford, et al v. Griffin Wheel Company, Inc., San Francisco County Sup. Ct. No. CGC-07-274342, a case on all fours with the cases to which GWC's motion for summary judgment applies, the trial court granted GWC summary judgment on preemption grounds. Plaintiff appealed and the California Court of Appeals issued an opinion affirming the summary judgment. See, Ransford, et al. v. Griffin Wheel Company, Inc., No. A121620, a copy of which is attached as Exhibit "7." The California Supreme Court declined to review that decision. See, Denial of Petition for Review, attached hereto as Exhibit "8." The plaintiff in Ransford then petitioned the United States Supreme Court for a writ of certiorari, which was likewise denied. See, Correspondence from the Supreme Court of the United States, Office of the Clerk, dated March 1, 2010, attached hereto as Exhibit "9."

15

Overall, four state supreme courts have issued opinions directly contrary to Plaintiffs' position here: **(1) California** - <u>Scheiding v. General Motors Corp.</u>, 993 P.2d 996 (Cal. 2000), <u>cert. denied</u> 531 U.S. 958, 121 S. Ct. 383 (2000), and <u>Carrillo v. ACF Industries, Inc.</u>, 980 P.2d 386 (Cal. 1999), <u>cert. denied</u>, 528 U.S. 1077 (2000); **(2) Alabama** - <u>General Motors v. Kilgore</u>, 853 So.2d 171 (Ala. 2002); **(3) Ohio** - <u>Darby v. A-Best Products Company</u>,811 N.E.2d 1117 (Ohio 2004), <u>cert. denied</u>, 543 U.S. 1146 (2005); and **(4) West Virginia** - <u>In Re: West Virginia Asbestos Litigation</u>, 592 S.E.2d 818 (W. Va. 2003), <u>cert. denied sub nom.</u>, <u>Abbott v. A-Best Products Company</u>, 549 U.S. 823 (2006).  These four states are joined by five federal circuits to hold the same: **(1) Second** - <u>Oglesby v. Delaware & Hudson Railway Co.</u>, 180 F.3d 458 (2nd Cir. 1999), <u>cert. denied</u> 528 U.S. 1004 (1999); **(2) Fifth** - <u>Missouri Pacific R. Co. v. Railroad Comm'n of Texas</u>, 833 F.2d 570 (5th Cir. 1987); <u>United Transp. Union v. Foster</u>, 205 F.3d 851, 860-61 (5th Cir. 2000); **(3) Sixth** - <u>Springston v. Consolidated Rail Corp.</u>, 130 F.3d 241, 245 (6th Cir. 1997), <u>cert. denied</u>, 523 U.W. 1094 (1998); **(4) Eighth** - <u>First Security Bank v. Union Pacific R. Co.</u>, 152 F.3d 877 (8th Cir. 1998); and **(5) Ninth** - <u>Marshall v. Burlington Northern, Inc.</u>, 720 F.2d 1149, 1152 (9th Cir. 1983); <u>Law v. General Motors Corp.</u>, 114 F.3d 908 (9th Cir. 1997); <u>Forrester v. American Dieselectric, Inc.</u>, 255 F.3d 1205, 1210 (9th Cir. 1999).

Indeed, in the last few years, this very Court has twice ruled in favor of summary judgment on federal preemption grounds in the context of claimed asbestos-related injury to railroad workers. As recently as February 3, 2009, this Court granted summary judgment on federal preemption grounds in favor of railroad defendants. See, <u>Kurns v. A.W. Chesterton</u>, 2009 WL 249769 (E.D. Pa., February 3, 2009) (currently on appeal in the Third Circuit Court of Appeals) (attached hereto as Exhibit "2").  This Court also upheld preemption in <u>D'Amico v. Garlock Sealing Tech., LLC</u>, Civ. 92-5544, 2007 WL 2702774, at *6 (E.D. Pa. Sept. 13, 2007)

(attached hereto as Exhibit "3").  In both <u>Kurns</u> and <u>D'Amico</u>, this Court recognized the field preemptive effect of the BIA and SAA and granted summary judgment on that basis.  The field preemptive effect of the BIA and SAA was also upheld by this Court in <u>Consolidated Rail Corp. v. Pennsylvania Pub. Util. Comm'n</u>, 536 F. Supp. 653 (E.D. Pa. 1982).  As discussed below, that decision was summarily affirmed by the Third Circuit, <u>Consolidated Rail</u>, 696 F.2d 981 (3d Cir. 1982), as well as the U.S. Supreme Court, <u>Consolidated Rail</u>, 461 U.S. 912 (1983).

The BIA and SAA are part of a comprehensive scheme of federal regulation over locomotive safety and equipment and preempt all state law in those fields, just as they have since the U.S. Supreme Court definitively determined their preemptive scope in <u>Napier</u> and <u>Southern Ry. Co</u>.  As shown by the overwhelming avalanche of case law cited above, these decisions have never been overruled, and as such, the broad field preemptive effect of the BIA and SAA remains viable today.  Therefore, Plaintiffs' claims here are preempted.

## II.     Plaintiffs' Anticipated Arguments Are Without Merit

### A.     The Federal Railroad Safety Act of 1970

In 1970, Congress enacted the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. §§ 20101-20144 (1994).  The FRSA is not limited to locomotives and authorizes the Secretary of Transportation to issue supplemental regulations in the area of railroad safety generally.  The FRSA contains express preemption and savings clauses that severely restrict the power of states to regulate any aspect of railroad safety. 49 U.S.C. § 20106.  The FRSA also explicitly underscores the importance of uniform laws relating to railroad safety: "[l]aws, regulations, and orders related to railroad safety shall be **nationally uniform** to the extent practicable." 49 U.S.C. § 20106 (emphasis added).  Significantly, the FRSA purposefully left the BIA "intact, including its preemptive effect." <u>Marshall v. Burlington Northern, Inc.</u>, 720 F.2d 1149, 1152-53 (9th Cir.

1983); Springston v.  Consolidated Rail Corp., 130 F.3d 241, 245 (6th Cir. 1997), cert. denied,

523 U.S. 1094 (1998).

It is anticipated, however, that Plaintiffs will argue that Congress changed its intent with

respect to field preemption under the BIA and SAA through enactment of the FRSA in 1970.

This position is erroneous.  The legislative history of the FRSA, along with the regulations

promulgated under it make perfectly clear that the field preemptive effect of the BIA and SAA

remains the law today, as Congress intended when it enacted them.

First, it should be made clear that the BIA, SAA, and FRSA are each separate, distinct

federal statutes.  Each requires its own separate, independent preemption analysis.  The BIA and

SAA, as discussed in GWC's original summary judgment brief, are given broad field preemptive

effect, while the FRSA contains a narrow express preemption provision.  See, 49 U.S.C.A. §

20106.  The FRSA is not limited to locomotives, railcars, or brakes, but instead gives the

Secretary of Transportation (via the Federal Railroad Administration (the "FRA") expansive

authority to regulate railroad safety generally and the Secretary of Homeland Security to regulate

railroad security generally.  The FRSA's express preemption provision only preempts when the

FRA has issued a regulation on the subject, and then only where the state rule conflicts with the

federal rule.

GWC does not seek preemption pursuant to the narrow express preemption provision in

the FRSA.  Rather, GWC is entitled to judgment on Plaintiffs' claims by reason of the broad

field preemptive effect given the BIA and SAA.

Express preemption analysis is the reverse of field preemption analysis.  Express

preemption provisions are to be construed as narrowly as possible and carry a presumption

against preemption.  Field preemption analysis, on the other hand, requires the subject

18

statutes/regulations to be construed broadly to give effect to their intended purpose. State law within the field is preempted even as to points on which there is no express federal regulation. There is no presumption against preemption in field preemption analysis. U.S. v. Locke, 529 U.S. 89, 108 (2000). In field preemption analysis, the federal determination that regulation is unwarranted preempts state law even in the absence of an express regulation. "[R]equirements by the states are precluded, however commendable or however different their purpose." Napier, 272 U.S. at 613.

The legislative history of the FRSA establishes that its enactment did not alter the broad field preemptive effect of the BIA and SAA. Indeed, the opposite is true. When Congress enacted the FRSA in 1970, it easily could have repealed the BIA and SAA with one short sentence. However, not only did Congress not mention the those statutes in the FRSA, the legislative history explicitly states that the BIA and five other named statutes "have served well," and Congress "chose to continue them without change," and under them, "where the federal government has the authority, with respect to rail safety, it preempts the field." H.R. Rep. No. 91-1194 (1970), reprinted in 1970 U.S.C.C.A.N. 4104, 4105, 4108. Further, when Congress reenacted and recodified the BIA and various other transportation laws without substantive change, it explicitly maintained "the precedential value of earlier judicial decisions." Revision of Title 49, Transportation, U.S. Cod. Pub. L. No. 103-272 §§ 1(a), 6(a), 108, Stat. 745, 1378 (1994); and H.R. Rep. No. 103-180, at 3, 5 (1994), reprinted in 1994 U.S.C.C.A.N. 818, 820, 822.

The continuing vitality of field preemption under the BIA and SAA is apparent from express regulations adopted under the FRSA itself. These regulations completely destroy any argument that enactment of the FRSA somehow limited field preemption under the BIA and

19

SAA. Title 49 C.F.R. § 232.13(a) reiterates the FRSA's narrow express preemption language. Section 232.13(b), however, goes further as follows to make clear that **in addition to and as a matter separate from** express preemption under the FRSA:

> Preemption should **also** be considered pursuant to the Locomotive Boiler Inspection Act (now codified at 49 U.S.C. 20701-20703), the Safety Appliances Acts (now codified at 49 U.S.C. 20301-20304), and the Commerce Clause **based on the relevant case law** pertaining to preemption under those provisions.

(Emphasis added). The regulation thus expressly clarifies that broad field preemption under the BIA and SAA is alive and well despite enactment of the FRSA. The regulation cannot be read any other way, and its existence cannot be reconciled with any argument to the contrary.

The great weight of case law authority on this issue likewise holds that enactment of the FRSA did **nothing** to affect the broad field preemptive effect given the BIA and SAA. See, e.g., Consolidated Rail Corp. v. Pennsylvania Pub. Util. Comm'n, 536 F. Supp. 653, 655-657 (E.D. Pa. 1982), aff'd, 696 F.2d 981 (3d Cir. 1982), aff'd, 461 U.S. 912 (1983) (citing legislative history and holding that the FRSA left the BIA unchanged, "including its total occupation of the locomotive-equipment field."); see also, Law v. General Motors Corp., 114 F.3d 908, 913 n.4 (9th Cir. 1997) ("FRSA has no effect on the BIA's [now LIA's] preemptive scope"); Springston v. Consolidated Rail Corp., 130 F.3d 241, 245 (6th Cir. 1997), cert. denied,, 523 U.S. 1094 (1998); Forrester v. Am. Dieselelectric, Inc., 255 F.3d 1205, 1210 (9th Cir. 2001) (the "sweeping preemption rule under Napier remains unimpaired"); General Motors Corp. v. Kilgore, supra, ("We disagree" that enactment of the FRSA altered the field preemptive effective of the BIA); Scheiding v. General Motors Corp., supra, (enactment of the FRSA did not affect the BIA's preemptive scope).

20

B.     The 2007 Clarification to the FRSA

Plaintiffs may also assert that even if the 1970 enactment of the FRSA did not itself limit the broad field preemptive effect of the BIA and SAA, changes made in 2007 to the FRSA's express preemption provision (49 U.S.C.A. § 20106) did.  This argument is without merit.

First, it is factually undisputed that the FRSA's express preemption provision does not apply by its very terms.  Congress made plain on the face of § 20106 that the "Clarification" it was adding to this statute at subsection (b) would not apply to any cases in which the operative facts occurred before January 18, 2002.  Specifically, § 20106(b)(2) states: "This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002."  Plaintiffs' claims here arose from events or activities – their alleged handling of asbestos-containing railroad brake shoes during employment with the railroad – that **necessarily** occurred long before 2002: All asbestos was removed from GWC railroad brake shoes by the early 1980s.  Thus, even if the FRSA was otherwise the relevant statute being considered, it would not aid plaintiffs in avoiding preemption here.

The effective date itself - January 18, 2002 - is proof that Congress had a purpose other than to abrogate the BIA and SAA's field preemptive effect. Congress imposed this effective date because that is the date of a train derailment at Minot, North Dakota.  Congress's specific and narrow goal in adding § 20106(b) was to reverse court rulings holding that § 20106 preempted certain claims in the lawsuits arising from that derailment. The plaintiffs in those suits were bystanders living near the derailment site claiming injury from exposure to the anhydrous ammonia that escaped from tank cars breached by the forces of the derailment. Their claims asserted violations of FRSA-based federal regulations concerning track construction, maintenance, and inspection, the training of track inspectors and maintenance workers, and the

21

speed of the train that derailed. See, Lundeen v. Canadian Pacific Railway, 507 F. Supp. 2d 1006 (D. Minn. 2007); Mehl v. Canadian Pacific Railway, 417 F. Supp. 2d 1104 (D.N.D. 2006). The courts in those two cases held that § 20106 preempted the plaintiffs' claims even though the claims alleged violations of FRSA regulations. Id.

The Mehl and Lundeen decisions, not a desire to abrogate field preemption under the BIA and SAA, were the impetus for Congress's Clarifications of § 20106.  As the legislative history reveals, Congress acted to clarify that the FRSA did not preempt claims asserting violations of FRSA-approved standards and back-dated the effective date of this Clarification to the date of the Minot derailment to revive the Minot cases. See, H. Rep. No. 110-336, Background and Need for Legislation, pp. 27-28 (citing Lundeen and Mehl as reasons for enacting the "Clarification"). The United States District Court for the Eastern District of Michigan has recognized that Congress had this limited goal for the Clarification: "this subsection (b) was enacted to 'rectify' the Federal court decisions in Mehl and Lundeen." Crabbe v. Consolidated Rail Corp., No. 06-12622, 2007 WL 3227584, at *5 (E.D. Mich. Nov. 1, 2007) (citations omitted). A copy of the Crabbe opinion is attached hereto as Exhibit "10." Section 20106(b)(2)'s explicit adoption of the January 18, 2002 limitation date only makes this more clear: Congress's only goal in amending the FRSA was to reverse specific court interpretation of § 20106 and restore the Minot litigation.  Notably, Congress's Clarification was limited to the FRSA, and the nature of the underlying Minot lawsuits makes clear why.  Unlike the case before this Court, the lawsuits arising from the Minot derailment did not involve locomotives or railcar safety appliances or claims by railroad employees.  Consequently, nothing in those suits implicated the BIA or SAA or FELA; the decisions that led to the Clarification never even mentioned those statutes. See, Lundeen and Mehl. Congress's response was strictly

22

tailored to revive the Minot lawsuits, and Congress had no need to address BIA and SAA field preemption to do so - and it did not.  <u>See</u>, H. Rep. No. 110-336, Background and Need for Legislation, pp. 27-30 (<u>citing</u> <u>Lundeen</u> and <u>Mehl</u> as reasons for enacting the "Clarification"), attached hereto as Exhibit "11."

In fact, Congress did not even change the scope of FRSA preemption with § 20106(b), which it took the unusual step of labeling a "Clarification regarding state law causes of action." <u>Id.</u>  The Pennsylvania Commonwealth Court recently recognized that fact in <u>Mastrocola v. SEPTA</u>, 941 A.2d 81, 89, n.12 (Pa. Commw. Ct. 2008).  After reviewing the legislative history of the "Clarification" and the Minot cases, the <u>Mastrocola</u> Court held: "We agree with SEPTA that the amendment, by its own title, is merely a clarification of what is not preempted by FRSA, and does not alter the substance of the federal preemption analysis provided for in 49 U.S.C. § 20106(a)." <u>Id.</u>

Given that Congress did not even intend to alter FRSA preemption with its limited Clarification of § 20106, the notion that it intended to change the scope of field preemption under the BIA and SAA - established for almost a century now - is utterly unjustified. This is particularly true because Congress did not have to and did not address those statutes to achieve its goal of reviving the Minot cases.

In fact, several courts have addressed field preemption under the BIA and SAA since the Clarification of § 20106 in 2007. In each of these cases, the courts (including this Court twice) have upheld the scope and breadth of field preemption as it has been historically applied since <u>Napier</u>. <u>See</u>, <u>e.g.</u>, <u>Frastaci v. Vapor Corp.</u>, 158 Cal.App.4th 1389 (Cal. Ct. App. 2007); <u>Wright v. General Elec. Co.</u>, 242 S.W.3d 674 (Ky. App. 2007); <u>Kurns v. A.W. Chesterton</u>, 2009 WL 249769 (E.D. Pa., February 3, 2009) (attached hereto as Exhibit "2"); and <u>D'Amico v. Garlock</u>

<u>Sealing Tech., LLC</u>, Civ. 92-5544, 2007 WL 2702774, at *6 (E.D. Pa. Sept. 13, 2007) (attached hereto as Exhibit "3").

Congress's addition to § 20106 simply clarified that the very specific type of claim that the plaintiffs raised in the Minot cases, i.e., claims alleging that a defendant failed to comply with federal regulations are not preempted by FRSA. <u>Id.</u> The court in <u>Crabbe</u> recently agreed, holding that the Clarification only is relevant when a plaintiff "is alleging that Defendant **failed to comply** with a Federal regulation." <u>Crabbe</u>, 2007 WL 3227584, at *5 (court's emphasis). Here, however, Plaintiffs have not made - and cannot make - any such allegation. As a result, the Clarification of § 20106 is irrelevant.

Judge Robert Millenky, a trial court judge in New Jersey, addressed the 2007 FRSA amendment issue in <u>Defrancisco v. Owens Corning, Inc., et al.</u>, Superior Court of New Jersey, Camden County, Docket No. L-1127-05. There, Judge Millenky initially denied a preemption summary judgment motion, but subsequently reversed himself and granted the motion, and his opinion is instructive. <u>See</u>, Order Vacating Prior Order and Opinion Granting Summary Judgment, attached hereto as Exhibit "12."

Judge Millenky's first order rested primarily on the 2007 amendments to the FRSA. Upon reconsideration, however, he stated, "This Court is now convinced it erred in its reasoning because it failed to take account of the 2002 effective date of the September 2007 amendment and the fact that the Plaintiff's claims arose from exposure that ended in 1958." <u>Id</u>. Judge Millenky also reversed himself because he had previously disregarded the field preemptive effect of the BIA and SAA. He then held, "The <u>Napier</u> preemption has come to be widely understood to extend to bar claims by employees who have suffered injury connected with exposure to

24

products including asbestos...." <u>Id.</u> (citing <u>Scheiding</u>, <u>supra</u>; <u>Consolidated Rail</u>, <u>supra</u>; and <u>Frastaci</u>, <u>supra</u>).

It should also be noted that the 2007 Clarification of the FRSA does not limit the ability of injured railroad employees to recover for legitimate asbestos related injury.  It has always been the case that railroad employee plaintiffs have ample recourse against their employers for their alleged injuries **through the provisions of FELA**.  It is their state common law tort claims that are preempted by the BIA and SAA.  As discussed, the FRSA and its recent amendments do nothing to affect that premise.

C.      <u>Norfolk & Western Ry. Co. v. Pennsylvania Public Utility Comm'n</u>

Plaintiffs will likely also cite <u>Norfolk & Western Ry. Co. v. Pennsylvania Public Utility Comm'n</u>, 413 A.2d 1037 (Pa. 1980), to argue against BIA and SAA field preemption.  That case, however, has been impliedly overruled.  Two years after it was decided, this Court decided <u>Consolidated Rail</u>, <u>supra</u>, and dealt expressly, and disagreed, with the earlier decided <u>Norfolk & Western</u> case:

> I, however, disagree with the states' argument (relying on <u>Norfolk & Western</u>) for two reasons.  First, the legislative history of the Railroad Safety Act shows that Congress intended no change to the Locomotive Inspection Act.  Second, elimination of the total-preemption test for locomotive equipment runs contrary to the purpose of the Railroad Safety Act.
>
> In passing the Railroad Safety Act, Congress could have repealed the Locomotive Inspection Act, or recodified or subsumed it within the comprehensive Railroad Safety Act.  Instead, Congress concluded that the Locomotive Inspection Act was working well, and specifically determined to keep it independently in force "without change."  These decisions negate implied modification of any part of the Locomotive Inspection Act, including its total occupation of the locomotive-equipment field.

Consolidated Rail, 536 F. Supp. at 656. This Court's decision in Consolidated Rail was appealed to the United States Supreme Court, was summarily affirmed, and thereby became the law of the land. The decision was first affirmed by the Third Circuit Court of Appeals. Consolidated Rail, 696 F.2d 981 (3d Cir. 1982). The Supreme Court then granted certiorari and likewise summarily affirmed. Consolidated Rail, 461 U.S. 912 (1983). The summary affirmance by the U.S. Supreme Court constitutes binding precedent on all lower courts, state and federal. Hicks v. Miranda, 422 U.S. 332, 344-345 (1975) ("lower courts are bound by summary decisions by this Court until such time as the Court informs them that they are not"); Mandel v. Bradley, 432 U.S. 173, 176, 97 S. Ct. 2238, 53 L.Ed.2d 199 (1977) (Summary affirmance "should...be understood as...applying principles established by prior decisions to the particular facts involved."). Indeed, the very Pennsylvania Supreme Court that decided Norfolk & Western recognizes that "the decisions of the United States Supreme Court interpreting federal statutes are binding on this Court." Krentz v. Consolidated Rail Corp., 910 A.2d 20, 33, n. 15 (Pa. 2006); see also, Purple Orchid, Inc. v. Pa. State Police, 813 A.2d 801, 806 (Pa. 2002). There is simply no question but that the issue of the field preemptive effect to be given the BIA and SAA, clearly federal statutes, by reason of the Supremacy Clause of the U.S. Constitution is one of federal law. Thus, Consolidated Rail impliedly overruled Norfolk & Western on the very grounds for which Plaintiffs may attempt to cite it.[5]

---

[5] In Atwell v. John Crane, Inc., Pa. Ct. of Common Pleas, Philadelphia County, Civil Div., May Term, No. 1366 (Nov. 19, 2008); and Harris v. A.W. Chesterton, Inc., et al., Pa. Ct. of Common Pleas, Philadelphia County, Civil Div., July Term, 2005, No. 000783 (Jan. 30, 2009), the plaintiffs relied on Norfolk & Western to argue against preemption. The trial courts denied the defendants' preemption summary judgment motions. Those rulings were affirmed by the Pennsylvania Superior Court. Atwell v. John Crane, Inc., 986 A.2d 888 (Pa. Super. 2009); and Harris v. A.W. Chesterton, Inc., et al., Pa. Super. No. 3505 EDA 2008 (March 5, 2010). Review is currently being sought in the Pennsylvania Supreme Court in both cases.

D.    State v. Chicago, Milwaukee, St. Paul & Pacific R. Co.

Plaintiffs may also assert that State v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 484 P.2d 1146 (Wash. 1971), supports their position.  It does not.  In Chicago Milwaukee, a railroad company was convicted of violating a state criminal statute requiring trains operating in proximity to brush or grass to be equipped with spark arresters.  On appeal, the railroad company argued that the state statute was preempted by the BIA.  The prosecution, in turn, argued that the BIA was designed to protect the safety of persons, not property and that preemption was not viable where the Interstate Commerce Commission had yet to regulate specifically as to a part or appurtenance of a locomotive.  Id. at 1148.

The Court, in holding against preemption, rested its decision largely on the fact that "states, in the exercise of their police power, may prescribe regulations applicable to interstate commerce for the protection of their citizens' property."  Id. at 1149.  Such reasoning makes clear that despite its passing reference to the BIA and SAA, Chicago Milwaukee was decided using express preemption analysis under the FRSA.  This is evident because of the Court's reliance on the fact that preventing forest fires is an "essentially local safety hazard."  This reasoning is taken directly from the language of FRSA and its narrow express preemption clause, and is irrelevant to the BIA and SAA's broad field preemption.  Indeed, Chicago Milwaukee has been expressly treated as an FRSA case.  See, e.g., Atchison, Topeka and Santa Fe Railway Co. v. Illinois Commerce Comm'n, 453 F.Supp. 920, 926 (N.D. Ill. 1977) (explaining that in Chicago Milwaukee, "the Supreme Court of Washington found that the state's regulation concerning fires alongside railroad tracks was not preempted **by the Railroad Safety Act**."(emphasis added)).

Chicago Milwaukee, despite its confusing references to the BIA, was clearly decided as an express preemption case under the FRSA and cannot be legitimately read as a BIA

27

preemption case.  Thus, the FRSA express preemption analysis set forth in <u>Chicago Milwaukee</u> has no bearing on the issues before this Court.  In any event, to the extent <u>Chicago Milwaukee</u> addresses the BIA, it is no longer viable precedent at all, as it too was decided before <u>Consolidated Rail</u>, <u>supra</u>.  It is therefore no surprise that both <u>Norfolk & Western</u> and <u>Chicago Milwaukee</u> have been described as "unpersuasive and contrary to federal policy." <u>Missouri Pacific Railroad Co. v. Railroad Comm'n of Texas</u>, 833 F.2d 570, 576, n.7 (5th Cir. 1987).

 E. The "In-use/off line" Distinction

 It is anticipated that Plaintiffs may also attempt to argue that preemption should not apply because the locomotives and railcars from which they were allegedly exposed to asbestos were not "in use."  This position, however, is erroneous.

 If Plaintiffs assert this argument, the only cases they could cite in support thereof deal with the definition of "in use" in the context of claims brought under the Federal Employers' Liability Act, 45 U.S.C. § 51, <u>et. seq.</u> ("FELA").  Whether a locomotive is "off-line" when the plaintiff was exposed to asbestos was "irrelevant" to BIA field preemption analysis because a locomotive's design, construction, parts and materials are the same whether or not the locomotive is in use. <u>Seaman v. A.P. Green Industries, Inc.</u>, 707 N.Y.S.2d 299, 300-02 (N.Y. Sup. Ct. 2000).

 More recent case law enforces the position that the "in use/off line" distinction in the context presented here is **"immaterial to our field preemption analysis."** <u>Frastaci v. Vapor Corp.</u>, 158 Cal. App. 4th 1389, 1399-1400 (2007) (emphasis added); <u>see</u> <u>also</u>, <u>Norfolk S. Ry. Co. v. Bogle</u>, 166 App. 3d 449, 850 N.E.2d 1281, 1286, (Ohio Ct. App. 2006) (reversed on other grounds) 115 Ohio St.3d 455, 875 N.E.2d 919, 2007-Ohio-5248 (Ohio Oct 10, 2007)(NO. 2006-

28

1025, 3376); Darby v. A-Best Products Co., 2002 WL 31839197 (Ohio Ct. App. 2002), aff'd,

811 N.E.2d 1117 (Ohio 2004), cert. denied, 543 U.S. 1146, 125 S. Ct. 1297 (2005).

The "in use/off line" distinction is perfectly understandable in cases involving claims

under FELA:  The threshold issue in FELA cases is determining when a railroad employer

becomes absolutely liable for injuries caused by defective equipment under the BIA or SAA.

Frastaci, 158 Cal. App. 4th at 1400-01 (quoting, Angell v. Chesapeake & O. Ry. Co., 618 F.2d

260, 262 (4th Cir. 1980)); see also, Crockett v. Long Island R.R., 65 F.3d 274, 277 (2d Cir.

1995).  It simply would not make sense to hold employers strictly liable under FELA for injuries

caused by defective parts or appliances during the repair or reconditioning of those very parts.

However, for purposes of field preemption analysis, Congress's goal of uniform federal

railroad regulation would be severely undermined if such a distinction were made. The broad

field preemptive scope of the BIA "extends to the design, the construction, and the material of

every part of the locomotive and tender and of all appurtenances." Napier, 272 U.S. at 611. This

preemptive scope cannot be circumscribed by the mere location of the equipment.  Rather, the

preemptive scope of the BIA "is directed at the **subject** of the locomotive, which is peculiarly

one that calls for uniform law." Frastaci, 158 Cal. App. 4th at 1402 (emphasis in original,

internal quotes omitted) (quoting, Penna. R.R. Co. v. Public Service Comm., 250 U.S. 566, 569

(1919), and Napier, 272 U.S. at 612).

The fact remains that the BIA occupies the field of the design, construction and materials

of locomotives.  Therefore, any state regulation (which includes common law tort claims, see,

Law v. General Motors, 114 F.3d 908, 910-11 (9th Cir. 1997); and Carrillo v. ACF Industries,

Inc., 980 P.2d 386, 392-93 (Cal. 1999) (discussing the SAA)) in this area infringes on the

authority of the FRA and disrupts the uniformity of the contemplated federal regulation system,

29

and is thus preempted.  It is of no consequence whether a train is in use or whether a part is physically attached to the train at the time of an alleged injury when the issue, as it is here, is federal field preemption.

F.    OSHA

Another argument that Plaintiffs may try to assert is that, because the FRA allows the Occupational Safety and Health Administration ("OSHA") to regulate working conditions in railroad repair shops, field preemption under the BIA and SAA does not apply.  This argument also fails.

OSHA regulates airborne asbestos concentrations and respiratory gear in the workshop, emphasizing that workers are protected from asbestos.  See, 29 C.F.R. § 1926.1011(c), (h) (OSHA regulates permissible exposure levels, respirator requirements and specifications).  But Plaintiffs sue GWC over railroad equipment design, not repair shop conditions.  GWC does not run the railroad's repair shops.  Further, Plaintiffs sue under state law, not OSHA.  The issue here is whether the BIA and SAA preempt state law respecting railroad equipment design, construction and materials.  Napier unequivocally holds that they do. (The BIA continues to preempt all state law within the scope of the Secretary's authority, including all law respecting "the design, the construction and the material of every part of the locomotive." Napier, 272 U.S. at 611-13), and OSHA does not change that.

The FRA does not even have the power to change Napier's controlling interpretation of the scope of BIA preemption.  Lechmere, Inc. v. NLRB, 502 U.S. 527, 536-37 (1992) (reversing an agency's interpretation of statute at odds with previous Supreme Court interpretation; "Once we have determined a statute's clear meaning, we adhere to our ruling under the doctrine of stare decisis, and we assess an agency's later interpretation of the statute against [that settled law].")

30

Thus, even if the FRA had ceded power over railroad equipment to OSHA (which it has not), the FRA did not, and could not, empower the states to make law respecting railroad equipment design.

In any event, design of locomotive parts remains within FRA's authority and no one else's. The FRA and OSHA have specifically addressed the intersection between the FRA's authority and OSHA's. They emphasized that "equipment" – including brake shoes – is one of the "three regulatory fields presently occupied by the FRA" and beyond OSHA's power, and that "regulation of individual hazards in any of the three regulatory fields by any other agency of government would be disruptive and contrary to the public interest." Dep't of Transp., Fed. R.R. Admin. Railroad Occupational Safety and Health Standards; Termination, 43 Fed. Reg. 10583, 10589 (March 14, 1978).

The FRA and OSHA explicitly stated that OSHA regulations do **not** apply to railroad equipment or its design. While walking-working surfaces are within OSHA's purview, OSHA regulations "**would not apply with respect to the design of locomotives and other rolling equipment used on a railroad** . . . 43 Fed. Reg. at 10587 (emphasis added). While materials handling is within OSHA's purview, "Locomotive cranes" are subject to the requirements of the Locomotive Inspection Act" and not OSHA regulations. Id. at 10589. The Occupational Safety and Health Review Commission, which hears OSHA-related appeals, thus held that "the FRA can displace OSHA regulations by articulating a formal position . . . that certain regulations – and no others – should apply to a defined subject" and that the FRA did "precisely" that in its 1978 ruling. Secretary of Labor v. Consol. Rail Corp., 1982 O.S.H.D. (CCH) ¶ 26,044, 1982 WL 22612, *4 (O.S.H.R.C. Apr. 30, 1982) (quoting Southern Pac. Transp. Co. v. Usery, 539

31

F.2d 386, 392 (5th Cir. 1976)), a copy of which is attached hereto as Exhibit "13." It is crystal clear that the FRA alone regulates railroad equipment design.

Further, Plaintiffs do not seek OSHA regulation of railroad equipment. They seek state common-law regulation of railroad equipment. No case endorses the proposition that state law can regulate equipment design, construction, or materials. Indeed, Napier holds it cannot. The central point remains that the BIA occupies the field, precluding all state law, concerning design, construction and materials of railroad equipment. Plaintiff's claims fall squarely within that field, and as such, they are preempted.

G.    Wyeth v. Levine

It is further anticipated that Plaintiffs may claim that the United States Supreme Court's recent opinion in Wyeth v. Levine, 555 U.S. __, 129 S.Ct. 1187 (2009), somehow affects the BIA and SAA field preemption analysis presented here. As shown below, however, it does not.

While in the most general sense it may be said that the issue in Wyeth, as in these cases, was whether a state law tort claim was preempted by federal law, such broad generality is where the similarities with the present case begin and end. Wyeth involved only the Federal Food, Drug and Cosmetic Act ("FDCA") and presented only the question of whether the Food and Drug Administration's drug labeling decisions preempt state law products liability claims premised on a theory that different labeling was necessary. Wyeth was clearly a **conflict** preemption case, i.e., whether the jury's determination of what label was necessary conflicted with the determination made by the FDA.

Here, however, Plaintiffs' claims are barred by **field** preemption under the BIA and SAA – a concept that was not even discussed by the Supreme Court in Wyeth. Indeed, the Supreme Court expressly noted that the field preemption defense had been abandoned. Id. at 1192 ("The

32

(trial) court found no merit in…Wyeth's field pre-emption argument, which it has since abandoned"). <u>Wyeth</u> did not, as Plaintiffs may attempt to argue, signal a new and less expansive view of federal preemption.  The <u>Wyeth</u> court's view of federal preemption was neither new nor was it less expansive than it had been in the past. Using Plaintiffs' purported rationale, GWC could argue that the U.S. Supreme Court's recent opinion in <u>Riegel v. Medtronic, Inc.</u>, 552 U.S. 312, 128 S.Ct. 999 (2008), which held that certain state law tort claims were preempted by the express preemption provision of the Medical Device Act, signals that the Supreme Court has taken a **more** expansive view of federal preemption.  <u>Riegel</u>, however, is just as inapplicable as <u>Wyeth</u> on the question of BIA/SAA field preemption.  As such, GWC does not rely on <u>Riegel</u> to support its preemption argument, but rather to point out the fallacy of Plaintiffs' assertion that <u>Wyeth</u> has any bearing on the issue before this Court.

Congress and its commission (the FRA) have clearly exercised their exclusive jurisdiction over railroad equipment design.  The effect is preemption of the field, which bars Plaintiffs' claims here.  The conflict preemption reasoning in <u>Wyeth</u> is inapplicable and does not change the appropriate field preemption analysis.  <u>Wyeth</u> simply is not a field preemption case at all.

## CONCLUSION

WHEREFORE, based on the above arguments and authorities, GWC respectfully requests that this Court grant its Motion for Summary Judgment and grant all other relief to which GWC is entitled.

FOLIART, HUFF, OTTAWAY & BOTTOM

By____*s/Larry D. Ottaway*_____
Larry D. Ottaway, Oklahoma Bar No. 6816
Monty B. Bottom, Oklahoma Bar No. 987
210 Robert S. Kerr Avenue, 12th Floor
Oklahoma City, Oklahoma 73102
Telephone: (405) 232-4633
Facsimile: (405) 232-3462

ATTORNEYS FOR DEFENDANT
GRIFFIN WHEEL COMPANY

## CERTIFICATE OF SERVICE

This is to certify that on this 26th day of March, 2010, a true and correct copy of the foregoing instrument was electronically transmitted to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the proper ECF registrants. In addition, the foregoing instrument was also mailed to the Joint Plaintiffs'/Defendants' Steering Committee appointed pursuant to Administrative Order No. 10 entered by this Court on July 10, 2006, as follows:

Peter Angelos
100 North Charles Street
Baltimore, MD 21201-3804
Telephone: 800/556-5522

Kevin Jordan
Baker Botts, LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995
Telephone: 713/229-1322

Janet Ward Black
Donaldson & Black
208 West Wendover Avenue
Greensboro, NC 27401
Telephone: 504/581-9065

William Mahoney, Esq.
Segal, McCambridge, Singer & Mahoney
1 IBM Plaza, Suite 200
Chicago, IL 60611
Telephone: 312/645-7806

Roger Lane
1601 Reynolds Street
Brunswick, GA 31520
Telephone: 912/264-8296

W.G. Watkins
Forman, Perry, Watkins, Krutz & Tardy
City Centre, Suite 100
200 South Lamar Street
Jackson, MS 39201
Telephone: 601/960-8600

34

John Cooney
Cooney & Cooney
Suite 3000
120 North LaSalle Street
Chicago, IL  60602
Telephone:  312/236-6166

Steven Kazan
Kazan, McClain, Abrams, Fernandez, Lyons,
  Farrise & Greenwood
171 Twelfth Street, 3rd Floor
Oakland, CA  94607
Telephone:  510/302-1000

Peter Kraus
Waters & Kraus
3219 McKinney Avenue
Dallas, TX  75204
Telephone:  214/357-6244

Joseph Rice
Motley Rice
28 Bridgeside Boulevard
Mount Pleasant, SC  29464
Telephone:  843/216-9156

Russell Budd
Baron & Budd
The Centrum, Suite 1100
3102 Oak Lawn Avenue
Dallas, TX  75219
Telephone:  214/521-3605

Michael Thornton
Thornton & Naumes
30th Floor
100 Summer Street
Boston, MA  02110
Telephone:  617/720-2445

David Landon
Hunton & Williams
951 East Byrd Street
P.O. Box 1535
Richmond, VA  23218-1535
Telephone:  804/788-8387

John McShea
McShea & Tecce
Bell Atlantic Tower
28th Floor
1717 Arch Street
Philadelphia, PA  19103

Thomas Packer
Gordon & Rees
Embarcadero Center West, Suite 2000
275 Battery Street
San Francisco, CA  94111
Telephone:  415/875-3110

Philip McWeeny
Owens-Illinois, Inc.
Legal Department, 8-OSG
One Seagate
Toledo, OH  43666
Telephone:  419/247-1004

Robert Malaby
Malaby, Carlisle & Bradley
Suite 600
150 Broadway
New York City, NY  10038
Telephone:  212/791-0285

Paul Kalish
Crowell & Moring
1001 Pennsylvania Avenue NW
Washington, DC  20004-2595
Telephone:  202/624-2644

*s/Larry D. Ottaway*