IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KURNS, et al.,                          :      **CIVIL ACTION**
                                        :      **NO. 08-2216**
        **Plaintiffs,**             :
                                        :
                                        :
   **v.**                                  :
                                        :
                                        :
**A.W. CHESTERTON, et al.,**             :
                                        :
        **Defendants.**             :


**O P I N I O N**

GOLDBERG, J.                                              February 3, 2009

      This case involves state law tort claims brought by plaintiffs, George Corson, and

his wife, Freda Jung Corson, alleging that Mr. Corson had been exposed to asbestos

products over the course of his twenty-eight year career as a machinist/welder for the

Milwaukee Road Railroad.[1]   The lawsuit asserts that Mr. Corson, who passed away

subsequent to the filing of the complaint, contracted mesothelioma through exposure to

defendants' products.

      Presently before the Court are defendants' Motions for Summary Judgment, which

assert that plaintiff's claims for products liability and negligence are preempted by federal

---

[1] Mr. Corson was employed with Milwaukee Road Railroad (now Canadian Pacific Railroad) from
January 1, 1947 - February 1, 1974. At all times he worked as a machinist/welder and was stationed in
various cities within the state of Montana. (Pl.'s Complaint, p. 9).

1

EXHIBIT

2

law.[2]  Plaintiff contends that preemption does not apply and further argues that this Court

is bound by a Pennsylvania state court's previous denial of summary judgment in this case.

For the reasons stated herein, defendants' motions will be granted.

1. <u>PROCEDURAL HISTORY</u>

On June 13, 2007, plaintiffs initiated suit in the Philadelphia County Court of

Common Pleas against fifty-nine defendants.  On January 29, 2008, Mr. Corson died from

mesothelioma, a cancer that his expert attributed to his lifelong occupational exposure to

asbestos and asbestos-containing products.  On May 13, 2008, the case was removed to

this Court.  As the remaining plaintiff, Mrs. Corson seeks in excess of $50,000 in

compensatory and punitive damages.[3]

Presently, the only remaining defendants are Railroad Friction Products Corporation

[hereinafter "RFPC"] and Viad Corporation [hereinafter "Viad"].  Plaintiff alleges that RFPC

manufactured/sold brake pads containing asbestos that were installed by plaintiff.  Plaintiff

further alleges that Viad was a successor in interest to Baldwin Locomotive, which

manufactured/sold engine valves, also installed by plaintiff.  The locomotive products

plaintiff allegedly came in contact with - brake pads and engine valves, and the work

plaintiff performed as a machinist/welder, are important factors in resolving the pending

motions.

---

[2] Both defendants claim that plaintiff cannot identify their products as having been the source of asbestos exposure which contributed to plaintiff contracting mesothelioma.  However, neither defendant included this argument in their Motions for Summary Judgment other than to preserve the issue.

[3] Punitive damages in asbestos cases consolidated under MDL 875 in this District, have been bifurcated, and are not subject to adjudication at this time.

II.    STANDARD OF REVIEW

This court must view the evidence presented by the parties in the light most favorable to the plaintiff, the non-moving party in this instance. Big Apple BMW, Inc. v. BMW of N. Am., Inc. 974 F.2d 1358, 1363 (3d Cir. 1992). If, after examining "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court finds there is "no genuine issue as to any material fact," then "the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving parties must carry the burden of showing that there is no genuine issue of material fact, entitling the defendants to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the defendants are able to meet their burden, the plaintiffs must go beyond the pleadings to set forth "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

A motion for summary judgment must be granted against a party that fails to establish the existence of an element essential to that party's case, because such a failure as to an essential element necessarily renders all other facts immaterial. Celotex Corp., 477 U.S. at 322-23. If there is only one reasonable conclusion from the record regarding the potential verdict under the governing law, summary judgment must be awarded to the moving party. Id.

III. DISCUSSION

A. Federal Preemption

Federal preemption is premised upon the Supremacy Clause of the United States Constitution, which states, "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under

the Authority of the United States, shall be the supreme Law of the Land...any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. U.S. Const. art. VI, cl. 2. The Supreme Court has interpreted the Supremacy Clause as invalidating all state laws that interfere with, or are contrary to, federal law. Hillsborough County v. Automated Med. Labs., 471 U.S. 707, 712 (1985) (quoting Gibbons v. Ogden, 22 U.S. 1 (9 Wheat. 1, 211), (1824)).   As a result, a federal preemption analysis always starts with a question of congressional intent, and then proceeds to a discussion of state law interaction with the federal law or regulation. English v. Gen. Elec. Co., 496 U.S. 72, 78-79 (1990). See also Medtronic v. Lohr, 518 U.S. 470, 485 (1996) ('[t]he purpose of Congress is the ultimate touchstone' in every preemption case).

Defendants RFPC and Viad maintain that they are entitled to summary judgment because Congress intended to occupy the field of regulation regarding locomotives and locomotive parts and equipment.   Both defendants rely on the Boiler Inspection Act, 49 U.S.C. § 20701, (now known as the Locomotive Inspection Act, but historically referred to as the "BIA") as the statute that Congress intended to preempt all state law regulating locomotives and locomotive parts used in interstate commerce. (Defs. RFPC and Viad's Memo. of Law in Support of Mot. for Sum. J., pp. 2, 11).

In pertinent part, the BIA states: "A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances - (1) are in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701 (1994).  The Supreme Court has held that

4

the BIA (along with the "Safety Appliance Act"[4], or "SAA") was enacted to serve the congressional purpose of protecting "employees and others by requiring the use of safe equipment" in conjunction with the operation of railroads.  Urie v. Thompson, 337 U.S. 163, at n.20 (1949).

In Napier v. Atlantic Coast Line R.R. Co., 272 U.S. 605, 613 (1926), the Supreme Court considered several state statutes regulating firebox doors and cab curtains in locomotive engines.  The Court found that the state laws were preempted by federal law because Congress intended that the BIA would regulate "the equipment of locomotives." Id. at 612.  The Supreme Court struck down the state law, reasoning that:

> [T]he power delegated to the [Interstate Commerce] Commission by the Boiler Inspection Act as amended is a general one.  It extends to the design, the construction and the material of every part of the locomotive and tender and of all appurtenances....  We hold that state legislation is precluded because the Boiler Inspection Act, as we construe it, was intended to occupy the field.

Id. at 611-13.  Here, because plaintiff alleges that Mr. Corson contracted mesothelioma through his contact with locomotive equipment, the reasoning and holding of Napier plainly applies.

Napier has been cited and relied upon by Judges in this District facing the same issue.  For instance, in D'Amico v. Garlock, No. 92-5544, 2007 U.S. Dist. LEXIS 67664 at *2 (E.D. Pa. Sept. 13, 2007) (O'Neill, J), the plaintiff brought state common-law tort claims alleging that he contracted mesothelioma while working as a welder.  Plaintiff contended that preemption was inapplicable, and argued that the BIA applied only to railroad carriers

---

[4] Codified at 49 U.S.C. §§ 20301 et seq, the SAA regulates all rail cars, locomotives, tenders or similar vehicles. 49 U.S.C. § 20301(a) (1996).

and not manufacturers. In reasoning that the preempted field extended to railroad manufacturers, the Court cited to <u>Napier</u> as preempting any state action that affects "the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." <u>Id.</u> at *15 <u>quoting</u> <u>Napier</u>, 272 U.S. at 611.[5] The holding of <u>D'Amico</u> applies to the instant case, where the brake pads and engine valves at issue are "material" and/or "appurtenances" of a locomotive.

<u>Napier</u> was also relied upon in <u>Consolidated Rail Corporation v. Pennsylvania Public Utility Commission</u>, 536 F. Supp. 653, 655 (E.D. Pa. 1982) (Giles, J.)[6] where a railroad sued the Pennsylvania Public Utility Commission seeking a declaration that a state statute regulating speed recorders and indicators in locomotives was preempted by the BIA and the Federal Railroad Safety Act. The state argued, as plaintiff does here, that federal laws passed after the BIA, such as the Railroad Safety Act, "redistributed railroad regulatory authority so that the total preemption test of the Locomotive Inspection Act [BIA] is no longer valid." <u>Id.</u> at 654. In interpreting <u>Napier</u>, the court rejected this argument and stated that "Congress intended the Locomotive Boiler Inspection Act to occupy <u>totally</u> the field of locomotive equipment." <u>Id.</u> at 655 (emphasis added). The court further stressed that validating the state regulation would be "contrary to Congress's purpose in passing the Railroad Safety Act." <u>Id.</u> at 657.

---

[5] The <u>D'Amico</u> decision also rejected the argument that the BIA only applies to locomotives which were "in use" and not "in the shop." <u>D'Amico</u>, 2007 U.S. Dist. LEXIS 67664 at *18-*19, (discussed <u>infra</u> at p. 8).

[6] <u>Consolidated</u> was summarily affirmed by both the Third Circuit, 696 F.2d 981 (3d Cir. 1982), and the Supreme Court, 461 U.S. 912 (1983).

In an effort to deflect the holding in Napier, and precedent referenced above, plaintiff raises three arguments:  1) The Supreme Court case of Terminal Railroad v. Brotherhood of Railroad Trainmen, 318 U.S. 1, 2 (1943), which involved railroad working conditions and decided after Napier, precludes preemption; 2) Because the BIA exclusively regulates locomotives "in use" and not in repair, preemption is not applicable; and 3) The Federal Railroad Safety Act, 49 U.S.C. §§ 20101-20144, (hereinafter "FRSA"),  effectively repealed or restricted the BIA.  These arguments are unpersuasive and addressed below.

First, plaintiff's reliance on Terminal Railroad, is misplaced because the state statute at issue there involved working conditions and not, as in this case, "parts" or "appurtenances."  Specifically, in Terminal Railroad , an Illinois law required cabooses so that rear switchmen were not forced to ride the tops, sides or draw-bars of the rear cars. Id.  The Court ruled that the Illinois law was a valid regulation, not subject to preemption as it involved the field of regulating working conditions.  Id. at 8.  These circumstances are much different than the facts before this Court which involve claims emanating from work with the material of locomotive parts,  an area clearly preempted by Congress through the BIA.  See also,  Urie v. Thompson, 337 U.S. 163, 193 (1949) (applicable standard of care under the Federal Employer's Liability Act ("FELA"), which creates a statutory remedy for workers harmed from working on locomotives, is determined under the BIA).

Plaintiff next argues that the BIA applies only to locomotives "in use," and not as in plaintiff's case, to locomotives or locomotive parts that are being repaired or prepared for use.  (Pl.'s Answer to RFPC's Mot. for Sum. J., p. 3).  The Honorable Thomas O'Neill, of this Court, addressed this issue in D'Amico, 2007 U.S. Dist. LEXIS 67664 at *1, noting that cases which define when a locomotive is "in use" stem from lawsuits brought under the

7

BIA.  Id., quoting Crockett v. Long Island R.R., 65 F.3d 274, 277 (2d Cir. 1995).  In

D'Amico, the "in use" distinction was found to be inapplicable to a preemption analysis

because the plaintiff was seeking relief under state law, and not the BIA.   Thus, Judge

O'Neill properly concluded that "because the BIA preempts the entire field of locomotive

equipment, the question of whether decedent was exposed to asbestos from locomotives

in use or not in use is irrelevant."  D'Amico, 2007 U.S. Dist. Lexis 67664 at *19.  In fact, all

of the cases cited by plaintiff in support of the "in use" argument deal not with state law

claims but rather allegations brought against railroad companies under the BIA.  (Pl.'s

Answer to RFPC's Mot. for Sum. J., p. 3).   As plaintiff is seeking relief pursuant to state

law tort claims and not the BIA, the issue of whether the locomotive was "in use" or not is

inapplicable.

Finally, plaintiff argues that the state law claims are not preempted because the

Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20109 (2007), overruled the Napier/BIA

preemption test, and allowed state law to govern railroads and locomotives.  (Pl.'s Answer

to Viad's Mot. for Sum. J., p. 4).  Additionally, plaintiff argues that the 2007 amendments

to the FRSA[7] apply to this case, further chipping away at the field preempted by the BIA.

(Pl.'s Answer to RFPC's Mot. for Sum. J.,  p. 4).

Plaintiff correctly notes that  in undertaking to expand the field for federal regulation

regarding railroad safety, the FRSA announced a narrower rule governing preemption of

---

[7]Federal Railroad Safety Act, 49 U.S.C. §20106 (2007) (Amendments effective in September
2007, specifically deemed retroactive from January 18, 2002).

state law.[8] <u>Consol. Rail Corp.</u>, 536 F. Supp. 653, 657 (1982).  However, this rule stressed that a state may adopt certain regulations relating to railroad safety <u>as long as these regulations are "not incompatible with any Federal law."</u>  45 U.S.C. § 434 (emphasis added).  This preemption language also emphasized that the "standards relating to railroad safety shall be nationally uniform to the extent possible."  <u>Id.</u>  Thus, while the FRSA did open the door to permit certain, discrete state railroad regulations, it did not, as plaintiff claims, overrule <u>Napier</u> or negate the basic principles of preemption that apply here.

In an attempt to bolster their argument that the FRSA precludes preemption, plaintiff relies heavily upon <u>Norfolk & Western Ry. Co. v. Pa. Pub. Util. Comm'n</u>, 413 A.2d 1037, 1039 (Pa. 1980), where the Pennsylvania Supreme Court ruled that the BIA did not preempt a state law regulating sanitary disposal devices on locomotives.  Plaintiff's reliance on <u>Norfolk & Western</u> is misplaced for several reasons.

First, <u>Norfolk & Western</u> involved the state's Public Utility Commission's ability to regulate a railroad's practice of discharging human waste on railroad tracks.  <u>Id.</u> at 1039-40.  This type of regulation has no relation to the case at hand, where plaintiff worked on locomotive brake pads and valves, both of which are "parts" falling squarely within the language of the BIA.  <u>See</u> <u>D'Amico</u>, 2007 U.S. Dist. Lexis 67664 at *17-18.

------

[8] The preemption section states:

The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable.  A State may adopt or continue in force any law, rule, regulation, order or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the same subject matter of such State requirement.  A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standards, and when not creating an undue burden on interstate commerce.  45 U.S.C § 434.

Second, although the Norfolk & Western Court notes that the FRSA did narrow Congressional intent to preempt the field of railroad safety, the legislative history of the FRSA reflects that Congress did not intend to abrogate entirely the preemption doctrine under the BIA. Indeed, instead of repealing, recodifying, or subsuming the BIA when it passed the FRSA, Congress specifically determined that the BIA was working well and should remain in force without any changes.[9] Consolidated Rail Corporation, 536 F. Supp. at 656 (legislative history of FRSA reflects that Congress intended no change to the BIA). Consequently, despite the holding in Norfolk & Western, the FRSA does not affect the scope of preemption announced in Napier.

Lastly, plaintiff is mistaken in asserting that the 2007 amendments to FRSA apply to this case. See H.R. Rep. No. 110-336, at 28 (2007), reprinted at 2007 WL 2745328 at *28. Plaintiff relies on the language in the amendments stating that FRSA "does not preempt State law causes of action where a party has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation." See Id. This isolated reference ignores, however, the fact that the amendments clearly were directed at the Minot, North Dakota, train derailment occurring on January 18, 2002.[10] In fact, the statute explicitly sets the effective date of the amendments as retroactive to January 18, 2002. Id. Because plaintiff's injuries were a result of "activities or events"

---

[9] "Over the years there have been several enactments of legislation dealing with certain phases of railroad safety. These include, among others ... (the) Locomotive Inspection Act .... These particular laws have served well. In fact the committee chose to continue them without change." H.R. Rep. No. 91-114, 91st Cong., 2d Sess. 11, reprinted in 1970 U.S. Code Cong. & Ad. News 4104, 4108.

[10] The amendments clarify that the FRSA (U.S.C. § 20106), as amended, applies to all pending state law causes of action arising from activities or events occurring on or after January 18, 2002, the date of the Minot, North Dakota, derailment.

occurring prior to January 18, 2002, the 2007 FRSA amendments are inapplicable to this case.[11]

B. Coordinate Jurisdiction and Law of the Case

Plaintiff also argues that defendant Viad's Motion for Summary Judgment should be denied because Viad previously raised the preemption issue in a motion for summary judgment, which was denied, before removal to federal court, by the Honorable Alan L. Tereshko of the Philadelphia County Court of Common Pleas.[12]   Judge Tereshko's ruling was delivered through a single sentence order, which simply denied the motion without any analysis or explanation regarding the basis of the ruling.   (See, Pl.'s Answer to Viad's Mot. for Sum. J., Exhibit D).   Plaintiff argues that, pursuant to the doctrine of coordinate jurisdiction, this Court must defer to Judge Tereshko's ruling because it is the prior holding of a coordinate court in the same case.   Id. at 3.

Generally, plaintiff claims that the coordinate jurisdiction doctrine applies to coequal courts and stands for the proposition that "a court in the later phases of a litigated matter should not reopen questions decided by another judge of that same court ... in the earlier phases of that matter."   (Pl.'s Answer to Viad's Mot. for Sum. J., p. 3); citing,

---

[11] In furtherance of the FRSA Amendment argument, plaintiff also relies on DeFrancisco v. Owens-Illinois, Docket No. CAM-L-1127-05 (N.J. Super. Ct., Camden Cty., June 2, 2008).  There, the New Jersey Superior Court initially adopted the FRSA amendment argument plaintiff raises here.  However, that same court subsequently reversed its decision, admitting it had erred because it failed to take into account the 2002 effective date of the September 2007 amendment and the fact that the plaintiff's claims arose from exposure that ended in 1958.  The court eventually held that the 2007 amendments to FRSA do not apply to injuries from exposure occurring before January 18,2002.

[12] While Defendant RFPC also filed a Motion for Summary Judgment before Judge Tereshko, that motion pertained to product identification and the issue of preemption was never raised.  Thus, even if this Court were bound by Judge Tereshko's ruling, the "law of the case" would only apply to Viad and not RFPC.

Commonwealth v. Starr, 664 A.2d 1326, 1331 (Pa. 1995).  Therefore, plaintiff contends that

because this Court's jurisdiction arises from the diversity of the parties, we are bound by the

coordinate jurisdiction doctrine to follow Judge Tereshko's ruling.  Id.  Citing, Erie v.

Tompkins, 304 U.S. 64, 78-80 (1938).  In short, the crux of plaintiff's coordinate jurisdiction

argument is that this Court must act as a Pennsylvania court and refrain from disturbing the

state court's ruling.  Id.  Plaintiff's argument is flawed for several reasons.

     First, the denial of a motion for summary judgment is an interlocutory order.  Bines

v. Kulaylat, 215 F.3d 381, 384 (3d Cir. 2000).  Thus, if a district court has proper jurisdiction

over the case, "it possesses inherent power over interlocutory orders, and can reconsider

them when it is consonant with justice to do so."  United States v. Jerry, 487 F.2d 600, 605

(3d Cir. 1973).  Indeed, a federal district court, at any time prior to a final decree, may

modify, open or set aside an interlocutory order of the state court.  See General Invest. Co.

v. Lake Shore & M.S.R. Co., 260 U.S. 261, 267 (1922); Bon Air Hotel Inc., v. Time Inc., 426

F.2d 858, 862 (5th Cir. 1970); Wolk v. Teledyne Indust. Inc., 475 F. Supp.2d 491, 507-8

(E.D. Pa. 2007).   In order for a federal district court to set aside the order of a state court

and rule in the opposite, the court must have cogent and articulable reasons for doing so.

Preaseau v. Prudential Ins. Co. of America, 591 F.2d 74, 79 (9th Cir. 1979).  For reasons

expressed infra, cogent and articulable reasons to rule differently than Judge Tereshko

exist.

     We note that Judge Tereshko, as a Pennsylvania trial court judge, is bound by

Pennsylvania Supreme Court precedent.  As such, his ruling presumably afforded great

weight to Norfolk & Western  Ry. Co. v. Pennsylvania Pub. Util. Comm'n, 413 A.2d 1037

(Pa. 1980), discussed above.  This decision does not, however, constitute binding authority

on this Court.  In fact, two opinions from this Court decided after Norfolk & Western have applied preemption based on the BIA.  See D'Amico, 2007 U.S. Dist. LEXIS at *20; Consol. Rail Corp., 536 F. Supp. at 658.  This Court's interpretation of the BIA, a federal law, and compelling federal court precedent necessitates the application of preemption. While Judge Tereshko's ruling was afforded great respect, the facts of this case nonetheless, fall squarely within the field preempted by the BIA.

Moreover, this Court is not bound by Judge Tereshko's ruling because a federal preemption analysis is governed by federal, not state law.  Grantham v. Avondale Industries, Inc., 964 F.2d 471, 473 (5th Cir. 1992).  Plaintiff's assertion that the Erie doctrine mandates that we adopt Judge Tereshko's ruling is incorrect because the Erie doctrine "does not apply ... in matters governed by the federal Constitution or by acts of Congress." Id.  Indeed, federal courts "are not bound by a state court's interpretation of federal law regardless of whether our jurisdiction is based on diversity of citizenship or a federal question."  Id.  As the issue before this Court does not pertain to state law, but rather, hinges on a question of federal preemption, we are free to independently adjudicate defendants' motions.

Finally, Judge Tereshko's ruling provides no basis or explanation for denying Viad's motion, or even the slightest hint as to the facts or law that were relied upon.  Nonetheless, plaintiff asks us to discern Judge Tereshko's reasoning through application of a separate and distinct case, Atwell v. Chesterton, Philadelphia Court of Common Pleas, May Term, 2004, No. 1366, where Judge Tereshko denied summary judgment with an accompanying "FINDINGS and ORDER."  Plaintiff argues that "it is likely" that Judge Tereshko's reasoning in the case before this Court is the same as Atwell.  (Pl.'s Memo. of Law, p. 2).  Following

13

this logic would require a federal court, in applying federal law, to be barred by a state court ruling in a completely separate and distinct lawsuit.  Given the clear guidance expressed in Napier and subsequent opinions from Judges of this Court applying preemption in similar situations, we are unwilling to take this far a leap.  See Core v. Southwestern Bell Tel., 673 F. Supp. 974, 979 (W.D. Ark. 1987)(federal court unwilling to reconsider state court ruling where state court provided absolutely no basis for its decision to deny the motion). Federal Deposit Ins. Corp. v. First Mortg. Inv., 485 F. Supp. 445, 450 (E.D. WI. 1980) (federal court reconsidered state court's denial of motion for summary judgment based on the preliminary and scantily reasoned determination ... by the state trial court).

IV. CONCLUSION

   For the foregoing reasons, I grant both Viad and RFPC's Motions for Summary Judgment. Plaintiff's common law tort claims are preempted by the BIA, a federal law enacted to occupy the field of regulating locomotives, their parts and appurtenances. Furthermore, this Court, exercising its authority to reexamine Judge Tereshko's denial of summary judgment in state court, respectfully declines to follow Judge Tereshko's ruling. An  appropriate order follows.

                    BY THE COURT:


                    _____
                    MITCHELL S. GOLDBERG, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KURNS, et al., | : | CIVIL ACTION |
| | : | NO. 08-2216 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| A.W. CHESTERTON, et al., | : | |
| | : | |
| Defendants. | : | |

## O R D E R

AND NOW, this **3rd** day of **February 2009**, it is hereby **ORDERED** that the Summary Judgment Motions of defendants Viad Corporation and Railroad Friction Products Corp., respectively, are **GRANTED**.

BY THE COURT:

_____

**MITCHELL S. GOLDBERG, J.**

15