BY THE COURT

CATHERINE DEFRANCISCO,
EXECUTRIX OF THE ESTATE
OF PASQUALE DEFRANCISCO
IN HER OWN RIGHT
        Plaintiff,
      vs.

OWENS ILLINOIS, ET AL.
        Defendants.

FILED 2008
JUN 0 2 REC'D
ROBERT G. MILLENKY, J.S.C.

:    NEW JERSEY
      SUPERIOR COURT OF
:    CAMDEN COUNTY
      DOCKET NO.: L-1127-05

**ORDER VACATING
ORDER DATED 2-21-08**

The above matter having been brought before the Court on Motion of Defendant Pneumo

Abex, for Reconsideration of the Court's order dated February 21, 2008, and the Court

having thus considered all of the foregoing submissions carefully as well as the reasons

set forth in the letter opinion dated June 2, 2008 and for good cause having been shown;

    It is on this day, the 2nd of June, 2008 ORDERED that,

1) The order dated February 21, 2008 denying Defendant Pneumo Abex's motion for

    summary judgment is hereby vacated.

2) The Court grants summary judgment in favor of Pneumo Abex.

ROBERT G. MILLENKY, J.S.C.

**EXHIBIT
12**

*Superior Court of New Jersey*



<table>
<tr><td>Chambers of<br>ROBERT G. MILLENKY<br>Judge</td><td>CAMDEN COUNTY</td><td>CAMDEN COUNTY HALL OF JUSTICE<br>101 SOUTH FIFTH STREET<br>CAMDEN, NJ 08103-4001</td></tr>
</table>

June 2, 2008

Edward Abbot, Esquire
Smith Abbot, LLP
48 Wall Street, Suite 1100
New York, New York 10005

Michael Galpern, Esquire
Locks Law Firm LLC
457 Haddonfield Road, Suite 500
Cherry Hill, New Jersey 08002

RE:     **DeFrancisco v. Ownes-Illinois, Inc., et al.**
        Docket No.:   CAM-L-1127-05

Dear Mr. Abbot and Mr. Galpern:

On February 21, 2008 this Court denied defendant Pneumo Abex's motion for
Summary Judgment on plaintiff's claim for injuries related to exposure to asbestos dust
and fibers contained in railroad brake shoes. Pneumo Abex had argued that various
federal statutes occupied the entire field, thus precluding state claims for those asbestos
related injuries related to the railroad industry. For the reasons set forth below, the Court
now vacates the prior decision and grants summary judgment in favor of Pneumo Abex.

The underlying facts are simple and straightforward. The plaintiff alleges that
Pneumo manufactured and/or supplied brake shoes that contained asbestos for use in
locomotives and/or rolling stock. Plaintiff alleges that these brakes caused Pasquale
DeFrancesco's asbestos related disease and death because he was exposed to the shoes'
asbestos fibers and dust when he worked for the Pennsylvania Railroad as a laborer and
engine repairman between 1947 and 1958.

This Court held that various federal acts, which pertain to railroad safety, did not
bar plaintiff's claims because those acts did not preempt the field of state products
liability claims brought by individuals against manufacturers or suppliers of asbestos
containing products in connection with their work in maintaining railroad locomotives or
rolling stock. The Court's reasoning rested primarily on the September, 2007 amendment
to the Federal Rail Safety Act (FRSA) 42 USC § 20106, which had a retroactive effective
date of January 18, 2002. That Act, the Court found, served as an umbrella statute as to
related railroad safety acts – the Boiler Inspection Act (BIA) and the Safety Appliance
Act (SAA). This court concluded that because state products claims could now proceed

1

directly under the FRSA, such claims had to be likewise permitted under the related BIA and SAA, because the amendment appeared to allow State court actions based upon, inter alia, State law that was not incompatible with federal law.

This Court is now convinced that it erred in its reasoning because it failed to take account of the 2002 effective date of the September 2007 amendment and the fact that the plaintiff's claims arose from exposure that ended in 1958. Therefore, preemption issues must be interpreted solely upon applicable preemption analysis that controlled prior to the 2002 effective date as to federal railroad safety acts. That analysis, as outlined below, demonstrates that the BIA, the SAA, and the FRSA each have a preemptive effect and bar the plaintiff's state claim.

This Court's analysis proceeds from the premise that "...pre-emption is not to be lightly presumed and that the historic police powers of the States are not to be superseded by federal law unless that was the clear and manifest purpose of Congress." [Citations omitted], Village of Ridgefield Park v. New York Susquehanna & Western Railway Corp, 163 N.J. 446 (2000). The preemptive statute and the statutory framework surrounding it evidence Congress'intent. Id. at 454, citing Medtronic, Inc. v Lohr 518 U.S. 470, 484-85 (1996). New Jersey courts have not dealt with this preemption issue, and therefore this court looks to cases outside of New Jersey for guidance in understanding Congressional intent.

## The Federal Acts

Two federal acts established the original regulatory framework for safety and other issues pertaining to railroads. With numerous amendments, these two acts remain in full force and effect. The Safety Appliance Act (SAA) enacted in 1883 established standards for enumerated safety appliances, including railroad brakes. 49 U.S.C §20302, et seq. The Boiler Inspection Act (BIA) (also known as the "Locomotive Boiler Inspection Act" or the "Locomotive Inspection Act"), enacted in 1911 established standards for locomotive design, construction, and materials. 49 U.S.C. §20701, et seq.

The two acts have been repeatedly amended and have been supplemented by other later acts. One such act, The Federal Railroad Safety Act (FRSA), enacted in 1970, deals with a broad range of substantive safety and related issues. It authorizes the Secretary of Transportation to issue regulations on these issues. 49 U.S.C. §20106, et seq. The act, however, does not reference the BIA or the SSA, nor by its explicit terms does it supplant the provisions of the earlier acts. It leaves the two earlier acts fully intact. Consolidated Rail Corp. v. Pennsylvania Public Utility Comm'n, 536 F. Supp. 653, 656, aff'd, 696 F.2d 981 (3rd Cir. 1982), aff'd, 461 U.S. 912 (1983).

A second act relates generally to employee redress for job injuries and pertains to railroad employees, amongst others. The Federal Employees Liability Act (FELA) enacted in 1908, permits a railroad employee to bring an action against a railroad employer based upon violations of the BIA or the SAA, where the violation of either may form the basis for a showing of negligence. 45 U.S.C. §51 et seq. The BIA and the SAA are regarded as acts which are supplemental to the FELA. Urie v Thompson, 337 U.S. 163, 189 (1949).

Finally, under a delegation from the Secretary of Transportation, The Federal Railroad Administration regulates railroads and administers, albeit not necessarily exclusively, the provisions of the SSA, the BIA, the FRSA, and the FELA.

The principle argument advanced by defendant Pneumo Abex is that these acts, read together, preempt the field of railroad safety and preclude a state court action, sounding in tort, for injuries suffered by a railroad worker between 1947 and 1958.

### The Boiler Inspection Act (BIA)

The BIA regulates locomotive manufacturers. It regulates the safety, inspection, testing, and condition of all "parts and appurtenances of the locomotive. 49 U.S.C. § 20701-20903.1. The Act delegates to federal regulators regulatory authority that extends to "the design, the construction and the material of every part of the locomotive and tender and of all appurtenances." Napier v. Atlantic Coast R. Co., 272 U.S. 605, 611 (1926). In Napier, the Court evaluated two State statutes that had sought to regulate safety features on locomotives. It concluded that though the proposed regulations addressing crew safety features on locomotives - a specialized curtain and a specialized switch designed to protect crew members - had not been the subject of specific treatment under the BIA, the BIA was intended to preclude any state regulation that had to do with locomotives. The Court rejected the state's argument that the federal legislation was not intended to fully occupy the field of locomotive related legislation. The Court found that the federal act was directed towards the ill of accidental injury whereas the states had sought to prevent sickness and disease. Therefore, the Court held that "State legislation is precluded because the Boiler Construction Act, as we construe it, was intended to occupy the field." Napier, at 613. The Court barred any state regulation pertaining to locomotives.

The Napier preemption has come to be widely understood to extend to bar claims by employees who have suffered injury connected with exposure to products, including asbestos used in locomotive manufacture and maintenance.

In Scheiding v. General Motors Corp., 993 P.2d 996 (Ca. 2000), the California Supreme Court, following a long line of cases from a number of jurisdictions, held that Napier preempted state law claims by railroad workers for exposure to asbestos materials in connection with the manufacture of locomotives. The Court grounded its reasoning in the broad preemption language contained in Napier. The Scheiding court also based its reasoning upon the United States. Supreme Court's summary affirmance in Consol. Rail Corp. v Pennsylvania Pub. Util., 536 F.Supp. (E.D. Pa. 1982), affirmed 696 F.2d 981 (3d Cir. 1982), affirmed sub nom 461 U.S. 912 (1983). There, Pennsylvania had argued that the post Napier enactment of the Federal Railroad Safety Act (FRSA) had redistributed railroad regulatory authority and had substantially weakened the broad Napier preemption. The District court rejected that reasoning and concluded that Pennsylvania could not require the installation of speed regulation devices on locomotives. The court found that Congress had specifically considered the BIA in enacting the FRSA, and had left it fully in place.

Therefore, Napier must be understood to remain particularly broad in scope. The California Supreme Court's conclusion that the Napier preemption doctrine extends to state tort claims is reasonable, logical, and persuasive. That conclusion avoids a jury verdict against a locomotive manufacturer or supplier which would impel design choices

3

which might be at odds with federal regulations. State litigation which forces design changes would effectively remove authority from federal regulators acting under the BIA. It would be no different then if a state directly sought to regulate locomotive manufacturing.

The California Appellate Court's decision in Frastaci v Vapor Corporation, 158 Cal. App. 4th 1389 (2007), holding that the Napier field preemption pertained to worker's asbestos related claims arising not only from the manufacture of locomotives, but also from their repair is equally logical. The BIA regulates every part of the locomotive. Napier, 272 U.S. 611. Its regulations require both the inspection of parts and continued maintenance. See, 49 C.F.R §229.25, requiring periodic inspection of insulation in locomotives.

The decisions cited by plaintiff for the proposition that field preemption does not extend to state tort claims ignores the reasoning associated with the practical defacto regulatory effect of state verdicts. Therefore, the reasoning in those cases is rejected in favor of the reasoning expressed in Scheiding and Frastaci which has been embraced by the Supreme Court in Medtronic, Inc v. Lohr, 518 U.S. 470 (1996),a case dealing with a preemption clause in the Medical Devices Amendments Act. There, Justice Bryer, concurring in part in an opinion that found no preemption, expressed the anomalous effect of permitting state juries to act where state regulators could not:

> To distinguish between [a state agency regulation and a jury award] for pre-emption purposes would grant greater power to a single state jury than to state officials acting through state administrative or legislative law making processes. Where Congress likely did not focus specifically upon the matter, ... I would not take it to have intended this anomalous result. Medtronic, 518 U.S. at 504.

The question left unanswered by the Scheiding and Frastaci analysis is whether the preemption reasoning extends not only to claims against locomotive manufacturers or maintainers but also to claims asserted directly, as in this case, against suppliers of locomotive parts. The answer must be that it does.

Napier defines what is regulated by the BIA. As noted, it is the "...design, the construction and the material of a locomotive's 'parts and appurtenances.'" Napier 272 U.S. at 611 [emphasis added]. The inclusion of material and parts as within the scope of regulation can only have meaning if the manufacturers of those parts and material are themselves within the regulatory authority's scope. If they were excluded, then parts manufacturers would find themselves regulated by state authorities as to items constructed for inclusion in locomotives. Such regulations would have the strong potential for creating conflicting and unmanageable standards. Alternatively, they would have the potential to indirectly define federal manufacturing standards. It would work this way: a supplier, and particularly a dominant one, who adhered to a state regulation as the path of least resistance, would transform that regulation into the unspoken national standard for the particular part. That supplier would then control the manufacturing standard.

Such an outcome would contradict the concept of uniformity that underlies the BIA. The BIA regulations undertake to avoid such an outcome. For example, when BIA regulations address penalty issues they do not define their scope narrowly to encompass

4

only locomotive manufacturers. Instead, they define the scope far more broadly to encompass equipment suppliers: Any "manufacturer ... of railroad equipment who violates or causes the violation of "any requirement of the Locomotive Inspection Act" is subject to penalties. 49 C.F.R. §§229.7(b), 230.0. (The reference to the "Locomotive Inspection Act" is a reference to the full name of the BIA, "The Locomotive Boiler Inspection Act.")

The reasoning, then, of the Court in Law v. General Motors Corp., 114 F.3d. 910 (9th Cir. 1997) is sound:

> The distinction [between manufacturers and railroads... is without significance. The BIA preempts any state action that would affect the design, the construction and the material of locomotives. [citation omitted]. Imposing tort liability on railroad equipment manufacturers would do just that, by forcing them to conform to design and construction standards imposed by the States. This would transfer the regulatory locus from the Secretary of Transportation to the state courts – a result the BIA was clearly intended to foreclose. Law, 114 F.3d at 911-12.

The BIA bars Plaintiff's action against Pneumo Abex.


Safety Appliance Act

The SAA regulates certain enumerated safety appliances, including railroad brakes. 49 U.S.C §20302. Congress enacted the SAA and the BIA for the same purposes – the maintenance of proper and safe conditions within the railway industry. Urie v Thompson, 337 U.S. 163 (1949). The preemption analysis that governs the BIA likewise governs the SAA.

To the extent, then, that plaintiff's claims fall within the ambit of the SAA rather than the BIA, they are barred.


Occupational Safety and Health Administration (OSHA)

The plaintiffs contend that notwithstanding any analysis which might arguably find preemption under the BIA, the FELA or the SAA, OSHA governs shop safety at railroad facilities. Plaintiffs assert that the Federal Railroad Administration, the administrator for railroad safety issues, including issues arising under the BIA and the SAA, has left worker safety issues in the hands of OSHA. Plaintiffs argue that the FRA did not have to do this, but chose to do so. Plaintiffs say that the FRA could have removed itself from OSHA supervision if it had exercised its authority under the following OSHA provision:

> Nothing in this Act shall apply to working conditions of employees with respect to which other Federal agencies... exercise statutory authority to prescribe or enforce standards or

regulations affecting occupational safety or health.   29USC §653(b)(1)

But having not done so, the plaintiff argues that where, as here, injury to an employee, occurs in a shop environment, as opposed to injury which occurs while operating rail locomotives or rolling stock, OSHA provides by its terms, access to state courts for employees governed by it regulations.   Plaintiff relies on 29 U.S.C. §653(b)(4) which provides:

Nothing in this Act shall be construed to supersede or in any manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

Plaintiff further relies on the reasoning set forth in Southern Railway Co. v. Occupational Safety & health Review Comm'n, 539 F.2d 335 (4th Cir. 1976). There, the Court found that the FRA had not established standards for shop safety and that the FRA acknowledge as much   The Court found that the Secretary of Labor could cite Southern Railway for OSHA violations.

Applying this reasoning here, Plaintiff reasons that OSHA regulated working conditions in the maintenance shop where plaintiff's decedent worked, that OSHA regulations pertained to the hazards associated with, amongst other things, the materials such as asbestos, used in the construction or maintenance of locomotives or rolling stock, and that plaintiff is entitled to pursue a state cause of action under section 653 (b)(4)

In response defendant argues that the FRA retained control pursuant to 29 USC §653(b)(1), when it stated:

"...it is the judgment of the agency that piecemeal regulation of individual hazards in any of the three regulatory fields – track, roadbed and associated devices and structures, 2) equipment; and (3) human factors - by any other agency of government would be disruptive and contrary to the public interest." Railroad Occupational Safety Health Standards: Termination 43 Fed. Reg 10583, 10,585 (FRA Mar. 10, 1978).

Pneumo Abex cites this language from an Alabama case which referenced it and which concluded:   "The clear implication of the Policy Statement was that the FRA intended its statutory authority to regulate in those three subject areas to the exclusion of OSHA. Norfolk So. Ry. Co. v Denson 774 So.2d 549, 555 (Ala. 2000).

The plaintiff's analysis, even if correct, has no application here. Likewise, the defendant's analysis is inapposite. Congress did not enact OSHA until 1970. Mr. DeFrancesco's injuries occurred between 1947 and 1958. Any failings relating to worker safety therefore arose under the exclusive jurisdiction of the BIA, the SAA or the FELA.   An OSHA analysis in this case is inapplicable.

6

For the reasons set forth, the prior order of this court is vacated and summary judgment is entered in favor of Pneumo Abex. An order is attached.

Sincerely,

Robert G. Millenky, J.S.C.

CC:    Honorable Ann McCormick, JSC

7