## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE:  ASBESTOS  PRODUCTS | : | |
| LIABILITY LITIGATION (NO. VI) | : | Civil Action No. MDL-875 |

| | |
|---|---|
| **This Document relates to:** | : |
| **ALL FELA ACTIONS** | : |
| | : |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
### GRIFFIN WHEEL'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs hereby file this opposition and ask this Court to deny Griffin Wheel's motion on the grounds that Griffin Wheel is not entitled to judgment based upon federal preemption. Plaintiffs submit this brief in support of their opposition.

### Introduction

The Federal Railroad Administration ("FRA"), which regulates railroads, has no direct authority over Griffin Wheel.  The FRA has issued no regulation regarding the content of asbestos in Griffin Wheel's products or the appropriate warning those products should bear. Notwithstanding FRA inaction, Griffin Wheel argues that the states cannot enforce any safety standard with respect to asbestos content of Griffin Wheel's brake shoes or Griffin Wheel's duty to warn.  Griffin Wheel attempts to argue that it is not accountable for its own negligence because the federal government failed to regulate someone else, the railroads, regarding asbestos. But Griffin Wheel's plea for an implied derivative immunity is not only a distortion of railroad safety legislation; it is manifestly unjust to the very railroad workers whom railroad safety legislation was enacted to protect.  Moreover, it is not the law.  State law is presumed to be valid, and Congress has expressly preserved state law applicable to rail safety matters, particularly where there is no federal action as to the particular matter.  Griffin Wheel's motion should be overruled.

**Argument**

**I.      Summary of Argument**

In 1970, Congress passed an express preemption statute "with respect to railroad safety matters". 49 U.S.C. § 20106(a).  This statute begins with a broad reservation of authority to the states, declaring that a "State may adopt or continue in force a law, regulation, or order related to railroad safety". § 20106(a).  The legislative purpose of the preemption statute was to replace field preemption with an express standard that permits states to enforce their laws under certain conditions, and thus it legislatively overruled field preemption "with respect to railroad safety matters". Id.  This legislative purpose is established in the text of the statute, the placement of the statute in a consolidated scheme governing rail safety, the legislative history of the statute, and the overall legislative purpose of protecting the health of rail workers, all of which are factors that the Supreme Court has found relevant to preemption analysis.

Plaintiffs' state-law claims for asbestos injury are **not** preempted under the preemption statute, 49 U.S.C. § 20106(a).  That provision starts with a presumption that a state generally has authority to enforce its own laws "related to railroad safety", and the state law remains in effect until the FRA "prescribes a regulation or issues an order covering the subject matter of the [s]tate requirement."  Id.  The FRA has not issued orders or regulations covering the subject matter of asbestos, and state law concerning asbestos may be enforced with respect to railroad products.

Griffin Wheel's argument depends entirely upon the theory that all matters regarding rail safety are subject to field preemption of state law claims. If Griffin Wheel's position is accepted, unless and until the FRA regulates the asbestos content in railroad equipment, there can be no legal standard whatsoever for asbestos content in Griffin Wheel's brake shoes or the warnings

that should be placed on the products. [1]  That outcome, which is claimed to be the intended effect

of rail safety legislation, is directly contrary to the purpose of rail safety legislation.  Rail safety

legislation was not enacted for the purpose of granting impunity to an unregulated railroad

supplier, but rather for the purpose of protecting railroad workers.  Fortunately, in the absence of

FRA action, a state's authority to protect railroad workers from the risk of asbestos is preserved

by 49 U.S.C. § 20106(a).


II.     **The Supreme Court's Standard for Federal Preemption of State Law Claims, Which Focuses on the Federal Statute and Legislative Intent, Disfavors Preemption**

Two recent Supreme Court decisions set a high bar for finding for federal preemption of

state tort claims.  Wyeth v. Levine, ---U.S. ----, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009); and

Altria Group, Inc. v. Good, 555 U.S. ----, 129 S.Ct. 538, 543 (2008).  In both decisions, the

Supreme Court emphasized that there is an assumption against preemption, stating in Wyeth that

---

[1] The crux of Griffin Wheel's argument is that protection of the plaintiffs under state tort law is preempted by the existence of what Griffin Wheel claims is a "comprehensive scheme of federal regulation."  (Doc. 7081, at 16, page 7 of Griffin Wheel's Brief in Support).  Plaintiffs have served discovery for additional facts to disprove Griffin Wheel's contention and to demonstrate that Griffin Wheel has never been regulated by the FRA with regard to any standard relevant to Plaintiffs' asbestos-injury claims.  (Exhibits 1 and 2, attached without exhibits).  In 2003 and again on April 23, 2010, Plaintiffs served upon Griffin Wheel interrogatories and requests for production related to the actual role of the FRA with regard to the asbestos content of Griffin Wheel brake shoes and the content of any warnings Griffin Wheel may have provided with its asbestos products.  (See, for example, Exhibit 1, Interrogatories 1 through 12, Exhibit 2, Requests for Production 1 and 2).

  Griffin Wheel (through its parent company, Amsted Industries) requires that vendors, from whom it purchases the components for their rail products, warranty those components pursuant to the law of the state of Illinois.  (Exhibit 3).  Plaintiffs' discovery requests evidence that over the years Griffin Wheel sold its asbestos-containing brake shoes and purchased their component parts pursuant to standards governed by state law.  (See, for example, Exhibit 1, Interrogatories 13 and 14, Exhibit 2, Request for Production 3).  This discovery will establish that Griffin Wheel has always regarded its railroad products to be governed by state-law standards and sold them under state-law warranty. Pending response to its discovery, there can be no resolution of issues of material fact regarding applicability of state-law standards to Plaintiffs' claims.

"**all** pre-emption cases, and particularly in those in which Congress has 'legislated ... in a field which the States have traditionally occupied,' ... we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " Wyeth, 129 S.Ct. at 1194, 1195 (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996); quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)) (emphasis added) (footnote omitted); Altria Group, 129 S.Ct. at 543.  In Wyeth, the Supreme Court specifically rejected the contention, made here by Griffin Wheel, that "[t]here is no presumption against preemption in field preemption analysis".  (Brief, page 19).  Wyeth, 129 S.Ct. at 1195, fn. 3.[2]

State law is presumed to apply to Plaintiffs' claims because worker safety in the railroad industry is an area traditionally occupied by the states.[3]  Terminal R. Ass'n v. Brotherhood of RR Trainmen, 318 U.S. 1, 63 S.Ct. 420, 87 L.Ed. 571 (1943).  In Terminal Railroad, which concerned a state law requiring cabooses for the health and safety of rail workers, the Supreme Court found that "**State laws have long regulated a great variety of conditions in transportation** and industry, such as **sanitary** facilities and **conditions, safety devices** and protections, purity of water supply, fire protection, and innumerable others." Id., 63 S.Ct. 423 (emphasis added).  The Supreme Court in Wyeth rejected the contention that the federal regulator bears primary responsibility for the safety of a product or adequacy of its warnings. Wyeth, 129 S.Ct. at 1197, 1198.  The primary responsibility remains with the manufacturer, Id.,

---

[2]  Griffin Wheel's reliance upon U.S. v. Locke, 529 U.S. 89, 120 S.Ct. 1135 (2000) to support this contention is misplaced.  In U.S. v. Locke, the Supreme Court merely found that the presumption against preemption does not apply to the specific area of "maritime commerce", which is not applicable to these cases.  Id., 120 S.Ct. at 1147.

[3]  In Wyeth, the Supreme Court rejected Wyeth's contention that the presumption against preemption did not apply because the Federal Government had regulated drug labeling for more than a century, roughly the period that railroads have been regulated by the federal government. Id., 129 S.Ct. at 1195, fn. 3. Personal injury claims are not a field traditionally regulated by the

and holding the manufacturer accountable for unsafe products is a role traditionally held by the states.

In light of this presumption against preemption, "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.' " Altria Group, 129 S.Ct. at 543 (quoting Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005)).   Thus, even if there is ambiguity as to whether 49 U.S.C. § 20106(a) legislatively overruled field preemption for all matters of rail safety, Altria Group requires that the ambiguity be resolved by " 'accept[ing] the reading that disfavors pre-emption.' " Id.

In Altria Group, the Supreme Court described the purpose of Congress as "the ultimate touchstone in every pre-emption case." Altria Group, 129 S.Ct. at 543 (quoting Medtronic, 518 U.S., at 485, 116 S.Ct. 2240).   In a preemption case, the purpose of Congress "primarily is discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it."   Medtronic, 116 S.Ct. 2250, 2251; citing Gade v. National Solid Wastes Management Assn., 505 U.S. 88, 111, 111, 112 S.Ct. 2374, 2390, 120 L.Ed.2d 73 (1992) (Kennedy, J., concurring in part and concurring in judgment).   The preemption analysis also includes the " 'structure and purpose of the statute as a whole,' as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." Id. (quoting Gade, 505 U.S. at 98, 112 S.Ct. at 2382 (internal citation omitted)).   The purpose of rail safety legislation is to protect railroad workers, not to deny them the protection of state law in matters where the FRA does not protect them, such as exposure to asbestos from railroad brake shoes.   The express preemption provision allows for the protection of workers; and, as

federal government.

discussed below, the "structure" of the preemption statute and "its surrounding regulatory scheme" indicate that it was intended to overrule complete field preemption.

In <u>Altria Group</u>, the Supreme Court did away with the fiction that states may not enforce similar common law standards because doing so would frustrate the purpose of providing an industry with a uniform national standard.  <u>Altria Group</u>, 129 S.Ct. at 544, 545.  The Supreme Court held that each state could enforce the common law duty of truthfulness in advertising without defeating the applicable express preemption provision's "purpose of preventing nonuniform state warning requirements."  <u>Id</u>. (citing 15 U.S.C. § 1331).  Plaintiffs' position herein, that states can enforce a common law requirement that the brake shoes be **safe**, is consistent with the FRA's requirement that "air brake equipment on a locomotive shall be in a **safe** and suitable condition for service."  49 C.F.R. § 232.105 (emphasis added).  Plaintiffs rely upon essentially the same standard from state to state with respect to simple negligence, failure to warn (§ 388 of the Restatement (Second) of Torts) and breach of implied warranty of merchantability (§ 2-314 of the Uniform Commercial Code).  Griffin Wheel could have complied with the federal regulation and state law for all 50 states by simply using a less toxic binding agent in its brake shoes, as it does now.  After <u>Altria Group</u>, Plaintiffs' claims are no longer preempted in the name of preserving uniformity.

The Supreme Court did not adopt a more expansive view of preemption, as argued by Griffin Wheel, in <u>Riegel v. Medtronic, Inc.</u>, 552 U.S. 312, 128 S.Ct. 999 (2008).  In <u>Riegel</u>, the Court upheld preemption of a state-law design defect claim pursuant to an express preemption clause, where the FDA pre-approved a specific design for the device at issue and required that the device be made with almost no deviations from specifications in the approval application.  <u>Id</u>., 128 S.Ct. at 1007.  The court ruled that the state requirement was preempted only to the extent that it differed from the federal standard.  <u>Id</u>., 128 S.Ct. at 1011.  <u>Riegel</u> is distinguishable

from this case because Griffin Wheel was never required to use asbestos in its products and its use of asbestos was never reviewed or approved by the FRA.  Riegel does stand for the proposition, put forward by Plaintiffs in this opposition, that the Supreme Court follows Congress' express standard for preemption.

It is clear from the preemption provision regarding rail safety, the structure of the statute as a whole, and its history, each discussed below, that Congress does not intend there to be preemption of state law claims that are based upon asbestos-related injury.

III.   **The Legislative History of the Express Preemption Clause Reveals an Intent to Replace Field Preemption Under the Boiler Inspection Act and Safety Appliances Act**

The legislative history cited by Griffin Wheel repeatedly documents Congressional intent to change from field preemption under the Boiler Inspection Act ("BIA") enacted in 1911 and Safety Appliances Act ("SAA") enacted in 1893, to the new legislated standard.  H.R. REP. 91-1194 (1970), reprinted in 1970 U.S.C.C.A.N. 4104, 1970 WL 5692 (Leg. Hist.) (Exhibit 4).[4]  As referenced by Griffin Wheel, the report does contain the language "where the government has authority, with respect to rail safety, it preempts the field."  (Doc. 7081 at 28, page 19 of Brief).  However, Griffin Wheel left out four very important words (bolded below) that precede the excerpt it quoted and the sentence that followed:

> **At the present time** where the federal government has authority, with respect to rail safety, it preempts the field.  With respect to the reported bill, the task force recommended that existing state requirements remain in effect until preempted by federal action.

---

[4] The language cited by Griffin Wheel comes from a report of a committee of the House, one of two chambers that passed the bill.  H.R. REP. 91-1194 (1970).  By contrast, the final statute, which contains clear language permitting state law, was accepted by the majority of both chambers.  Nevertheless, the full report and especially the final recommendations allow for state law over matters, such as asbestos, not regulated by the FRA.

H.R. REP. 91-1194, at 4108 (emphasis added).

Each of the two sentences above refers to a different time frame.  The first sentence containing the phrase "[a]t the present time" refers to the period of time before passage of the bill and describes the condition of the law before the bill was passed; whereas, the phrase in the second sentence, "[w]ith respect to the reported bill", refers to the law as intended with passage of the bill.  Thus, reference in the first sentence to "preempts the field" merely reflects the understanding of the law **before** passage of the bill.  The second sentence describes a new standard to replace the field preemption standard.  The second sentence reflects a change from preemption by "authority," which was then granted by the BIA and SAA, to preemption by actual "federal action," which refers to regulation or order of the Secretary through the FRA.

The legislative history shows a connection between Congress' goal of protecting railroad workers' safety and Congress' decision to recognize state law authority over rail safety matters. The bill authorizes state regulation in "any area of rail safety" until preempted by an action of the Secretary (i.e. a regulation or order, not a statute) "with respect to the **particular** matter"; and it does so for the stated purpose of "promot[ing] safety in all areas of railroad operations":

Summary of the Reported Bill

**The Purpose of this bill is to promote safety in all areas of railroad operations,** to reduce railroad related accidents, and to reduce deaths and injuries to persons and damage to property caused by accidents involving any carrier of hazardous materials.
To provide the legislative framework to achieve this purpose, the reported bill includes,

* * *

4. State Regulation

Section 205 **authorizes states to regulate** in **any area of railroad safety** until the Secretary acts with respect to the **particular** subject matter.

Id., at 4112 (emphasis added).

The final recommendations in the legislative history contain the same federal and state relationship, namely that the power to regulate matters of rail safety be returned to the states,

until and unless specifically preempted by a federal regulation:

> The specific recommendations of this task force are:
>
> * * *
>
> 3.  Existing state rail safety statutes and regulations remain in force until and unless preempted by federal regulation.  Administration of the program should be through a federal-state partnership, including state certification similar to the certification principles set forth in the federal natural gas pipeline safety act of 1968.

Id., at 4129.

The legislative history cited by Griffin Wheel provides for state law to remain in force, except in matters where it is preempted by a federal **regulation**.  Congress certainly understands the difference between a regulation, which it refers to in the recommendation, and a statute such as the BIA or SAA.  Thus, the phrase "preempted by federal regulation" means something different from preemption by statutes such as the BIA and SAA, and the committee's recommendation was to replace preemption of the field by those statutes.

The language above from the Congressional history also documents Congress' recognition of a "federal-state partnership".  That partnership is a dramatic change from the relationship set out in Napier v. Atlantic Coast Line R. Co., 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432 (1926).

When Congress decided to retain the provisions of the BIA and SAA intact, it decided to do away with the preemptive effect previously attributed to them and recorded that decision in the legislative history.  Where the legislative history reports that the BIA and SAA "have served well" and would be "continued without change", as reported by Griffin Wheel (Doc. 7081 at 28, page 19 of Brief), the same paragraph of the legislative history documents that the BIA and SAA would be supplemented by state law:

> These particular laws have served well.  In fact the committee chose to continue them without change.  It is recognized, however, that they meet only certain and special types of railroad safety hazards. ... **Consequently, there is a strong**

**consensus which makes it appear clearly that the time is now here for** broadscale federal legislation with **provisions for state participation to assure a much higher degree of railroad safety in the years ahead.**

Id., at 4105.

Congress regarded the provisions of the BIA and SAA to be inadequate on their own to protect railroad workers.  Congress provided for two means to supplement the BIA and SAA, by more comprehensive federal regulation and by allowing states to supplement the federal legislation.  Congress determined that state participation would "assure a much higher degree of railroad safety in the years ahead."  Id.  The language "the time is now" and "in the years ahead" indicate a change.  The BIA and SAA were retained but placed in a broader legal framework allowing over time certain state regulation of rail safety.

That change is reflected in the bill that was passed by Congress in 1970, enacting the preemption provision now at 49 U.S.C. § 20106(a).  In the same Chapter, Congress expressly recognized that the states' authority over rail-safety extends to "railroad equipment" and "rolling stock" when it provided that a "State may participate in [investigations and surveillance] activities when the safety practices for **railroad equipment**, facilities, **rolling stock**, and operations in the State are **regulated by a State authority**…"  49 U.S.C. § 20105 (emphasis added).  Rolling stock refers to rail cars and locomotives, which are also the subject of the BIA and SAA.  49 C.F.R. § 224.5.

Prior decisions giving the BIA and SAA the effect of field preemption were legislatively overruled in 1970 by the adoption of the express preemption clause, now 49 U.S.C. § 20106(a). The preemption clause expressly applies broadly to "railroad safety matters", and Congress gave no indication that its purpose was to preserve a preemption scheme not expressed in the legislation.  Rather, the legislative history reveals Congress' intent to change the preemption standard.  The Supreme Court has since held that "[i]f the statute contains an express pre-

emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent."  Easterwood, 113 S.Ct. at 1737.  The plain wording of the express preemption clause covers "rail safety matters" without limitation.  49 U.S.C. § 20106(a)(2).

## IV.    The Express Preemption Provision Governs All Subject Matters Concerning Rail Safety and Presumes That States Have Power to Regulate in Matters of Rail Safety

49 U.S.C. § 20106 is an express preemption provision that was enacted in 1970 to address preemption for the entire area of rail safety, including matters addressed in 1911 by the BIA and in 1893 by the SAA.  The preemption provision is part of an organized and consolidated set of provisions that govern rail safety - PART A of Subtitle V of Title 49.  49 U.S.C. §§ 20101 – 21311.  The language of the express preemption provision and its location within the general provisions of PART A demonstrate that the preemption provision is intended to apply generally to rail safety provisions throughout all of PART A.  PART A also includes the current version of the provisions originally enacted under the BIA and SAA.  Thus, the provisions originally enacted with the BIA and SAA are now part of a larger statutory scheme that includes an express preemption clause.

Railroad legislation as a whole is organized comprehensively within Subtitle V of Title 49, titled "Rail Programs".  49 U.S.C. §§ 20101 – 28505.  PART A of Subtitle V is titled "Safety", and it contains the rail safety provisions discussed in this brief and in Griffin Wheel's. 49 U.S.C. §§ 20101 – 21311.  The chapters in PART A are as follows:

CHAPTER 201—GENERAL (§§ 20101—20167)
CHAPTER 203—SAFETY APPLIANCES (§§ 20301—20306)
CHAPTER 205—SIGNAL SYSTEMS (§§ 20501—20505)
CHAPTER 207—LOCOMOTIVES (§§ 20701—20703)
CHAPTER 209—ACCIDENTS AND INCIDENTS (§§ 20901—20903)
CHAPTER 211—HOURS OF SERVICE (§§ 21101—21109)

CHAPTER 213—PENALTIES (§§ 21301—21311)

The provisions originally enacted in 1911 under the BIA are found in their current form within PART A, Chapter 207, titled "LOCOMOTIVES".  The provisions originally enacted in 1893 under the SAA are found in their current form within PART A, Chapter 203, titled "SAFETY APPLIANCES".  Each of these Chapters is part of the framework of PART A, which is generally governed by the provisions set forth in Chapter 201, titled "GENERAL".  For example, Chapter 201 sets forth definitions for the whole of PART A (§ 20102), the scope of the regulatory authority of the Secretary of Transportation ("Secretary") over rail safety (§ 20103), the Secretary's authority to carry out rail-safety inspections and investigations (§ 20107), and the states' authority to conduct rail-safety inspections and investigations (§ 20105).  Likewise, Chapter 201 includes the standard for preemption to be applied throughout PART A (§ 20106).

The preemption provision for PART A refers generally to "[l]aws, regulations, and orders related to railroad safety":

> **(a) National Uniformity of Regulation.—**
> (1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.
> (2) **A State may adopt or continue in force a law, regulation, or order related to railroad safety** or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order—
>> (A) is necessary to eliminate or reduce an essentially local safety or security hazard;
>> (B) is not incompatible with a law, regulation, or order of the United States Government; and
>> (C) does not unreasonably burden interstate commerce.

(49 U.S.C. § 20106(a)) (emphasis added)

The language of the preemption statute starts with a plain general statement preserving the authority of the states to "adopt or continue in force a law, regulation, or order related to railroad safety".  49 U.S.C. § 20106(a)(2).  The starting point is a presumption of state authority over railroad safety, and nothing in the statute limits the states' authority to particular areas of railroad safety.  The only limitation on the states' authority over rail safety is federal regulatory action.  States may enforce laws in all areas "related to railroad safety" unless and until the Secretary of Transportation "prescribes a regulation or issues an order covering the subject matter of the State requirement." Id.  Even if the subject matter is regulated by the Secretary, the state may enforce a more stringent law when the law where certain elements are met. Id.

The Supreme Court has found that § 20106(a)(2) applies beyond the Federal Rail Safety Act (FRSA), the act which adopted it.  CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 113 S.Ct. 1732, 1737 (1993).  The Court stated that the "plain terms of § 434 [now § 20106(a)] do not limit the application of its express preemption clause to regulations adopted pursuant to the FRSA. Instead, they state that any regulation 'adopted' by the Secretary may have preemptive effect, regardless of the enabling legislation." Easterwood, 113 S.Ct. at 1737, fn 4.  The preemption provision applies by its own terms, not in accordance with enabling legislation.  The reservation of state power regarding railroad safety is not limited to areas addressed by FRSA provisions, rather, it covers all areas "related to rail safety."

## V.   Plaintiffs' Claims Are Saved from Preemption in Congress' Express Preemption Clause

The Supreme Court described § 20106(a)(2) as "a provision that displays considerable solicitude for state law in that its express pre-emption clause is both prefaced and succeeded by express saving clauses." Easterwood, 113 S.Ct. at 1737 (citation omitted).  Griffin Wheel

acknowledges in its brief that § 20106(a)(2) "**only** preempts when the FRA has issued a regulation on the subject, **and then only** where the state rule conflicts with the federal rule." (Doc. 7081, at 27, page 18 of Brief in Support) (emphasis added).  Even though preemption under § 20106(a)(2) is narrow, the provision applies broadly to all areas "related to railroad safety".

     Plaintiffs' causes of action are not preempted by the federal preemption statute because the Secretary, through the FRA, has not prescribed a regulation or issued an order "covering the subject matter" of asbestos in railroad equipment, the asbestos content of brake shoes, or warning of the risk of asbestos exposure at railroad worksites.  49 U.S.C. § 20106(a)(2).  The Supreme Court has found that Congress' use of the word "covering" within the first savings clause in § 20106(a)(2) has the effect of narrowing the scope of preemption. Easterwood, 113 S.Ct. at 1738. The party claiming that railroad regulations preempt state law for a subject matter "must establish more than that they 'touch upon' or 'relate to' that subject matter, for 'covering' is a more restrictive term which indicates that pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law."   Id. (internal citation omitted).  There are no federal regulations that "substantially subsume" the subject matter of Plaintiffs' tort claims against Griffin Wheel.

     Griffin Wheel's argument, that federal regulation and thus federal preemption cover the entirety of rail safety, is contradicted by the language of the preemption provision.  The statute begins with the presumption that state law "related to rail safety" is preserved, and the statute then provides that state law "related to rail safety" may be preempted as to a certain "subject matter." 49 U.S.C. § 20106 ("A state may adopt or continue in force a law, regulation, or order related to railroad safety … until the Secretary of Transportation (with respect to railroad safety matters) … prescribes a regulation or issues an order covering the subject matter of the State

requirement."). Thus, the question of whether federal law preempts a state law "related to railroad safety" must be considered subject matter by subject matter, not as a blanket with regard to the entire field of rail safety.

Asbestos is a subject matter that has **not** been addressed by the Secretary through the FRA. The word "asbestos" does not even appear in the FRA regulations, 49 C.F.R. §§ 200 through 268. There is nothing in the U.S. Code or the Code of Federal Regulations remotely incompatible with a state law prohibiting asbestos in railroad brake shoes or requiring a warning of the danger of asbestos, and Griffin Wheel has not and cannot suggest that there is. Griffin Wheel has not produced any evidence that asbestos has anything to do with compliance with the regulations that pertain to brake shoes. Plaintiffs have served discovery upon Griffin Wheel asking for relevant evidence on this issue. (Exhibits 1 and 2).

**VI.    The Supreme Court Has Ruled That the Purpose of the BIA and SAA Is the Protection of the Rights of Railroad Workers, Including Personal Injury Suits**

Because the purpose of Congress is "the ultimate touchstone in every pre-emption case", Altria Group, 129 S.Ct. at 543 (citation omitted), the outcome of this case must be consistent with the Supreme Court's findings with regard to the legislative purpose of the BIA and SAA. In Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), the Supreme Court analyzed the purpose of the BIA and SAA and concluded that together they have "the purpose and effect of facilitating employee recovery, not restricting such recovery or making it impossible." Id., 337 US. at 189, 69 S.Ct. at 1034. The Court explained:

> [T]he Safety Appliance Acts, together with the Boiler Inspection Act, are substantively, if not in form, amendments to the Federal Employers Liability Act. They dispense, for the purposes of employees' suits, with the necessity of proving that violations of the safety statutes constitute negligence and making proof of such violations is effective to show negligence as a matter of law…Regarded in this light, **the Boiler Inspection and Safety Appliance Acts would take on**

**highly incongruous character if**, at the very time they were expediting employee recovery under the Employers' Liability Act by substituting the comparatively light burden of proving violation of their prohibitions for the heavier one of proving negligence, **they were also contracting the scope of compensable injuries and to that extent defeating recovery altogether**… In the absence of any specific showing Congress had in mind such a restrictive and inconsistent object, we are not free to create one by inference…"

Urie v. Thompson, 337 U.S. 163, 189-190, 69 S.Ct. 1018 (1949) (citations omitted) (emphasis added).

The Supreme Court in Urie thus rejected the argument that the BIA and SAA could impair claims by injured railroad workers. Id.  Griffin Wheel's argument is that the BIA and SAA completely bar claims by injured railroad workers against manufactures of products that contain injurious substances, such as asbestos.  According to that position, the BIA and SAA are intended to preempt state law so as to protect the railroad industry by granting manufacturers the right to knowingly expose railroad workers to the hazards of asbestos.  That cannot be.  In fact, the Supreme Court has already found the purpose of the BIA and SAA to be the opposite, "the protection of railroad employees…" Id., at 190.

## VII.   Griffin Wheel is Wrong When It Argues that the BIA, SAA and Their Implementing Regulations Are Separate from Chapter 201 of PART A With Regard to Preemption.

Griffin Wheel argues that the express preemption provision, § 20106(a)(2), adopted as part of the Federal Railroad Safety Act ("FRSA"), does not apply to regulations adopted pursuant to other enabling legislation, such as the BIA and SAA.  (Doc. 7081 at 27, page 18 of Brief).  The Supreme Court rejected that argument in Easterwood, 113 S.Ct. at 1737 (fn. 4).  The Supreme Court found that § 20106(a)(2) applies to a matter of rail safety even if it is subject to federal law adopted outside of the FRSA.  Id., 113 S.Ct. at 1737.

Griffin Wheel's argument, which separates railroad-safety law according to historical enabling legislation, also conflicts with its own argument that the BIA and SAA are part of a

comprehensive scheme.  Because that scheme of regulations is now authorized by 49 U.S.C. § 20103, enacted by the FRSA, the scheme of regulations cited by Griffin Wheel cannot be logically separated from FRSA provisions.

Griffin Wheel argues that preemption arises out of a "**comprehensive** array of detailed federal **regulations** governing the operation and safety of the railroads and the necessary equipment, including locomotives, railcars, and their brakes."  (Doc. 7081 at 16, page 7 of Griffin Wheel' Brief, emphasis added).[5]  However, these regulations cannot be separated from Chapter 201 of PART A because all such regulations are actually authorized **within** Chapter 201. PART A, Chapter 201, §20103 provides that the "Secretary of Transportation, as necessary, shall prescribe regulations and issue orders for **every area of railroad safety** supplementing laws and regulations in effect on October 16, 1970."  (emphasis added).  Chapters 203 and 207, which contain the current versions of provisions originally enacted in the BIA and the SAA, do not include a counterpart to §20103.  Thus, §20103 of Chapter 201 authorizes regulations applicable to "every area of railroad safety"; and the regulatory scheme cannot be separated from Chapter 201.

Just as Chapter 201 sets forth the FRA's authority to implement by regulation the provisions in each of the Chapters throughout PART A, Chapter 201 likewise sets forth the preemption provision (§ 20106) applicable to all Chapters throughout PART A.  Griffin Wheel's argument that § 20106 is separate disregards Congress' clear language in § 20106, Congress' placement of § 20106 in Chapter 201, which precedes Chapters 203 and 207, and the relationship between Chapter 201 and the Chapters that follow.  Ignoring § 20106 in favor of an unwritten

---

[5]  Griffin Wheel further argues that there is a "**comprehensive** scheme of federal **regulation** over locomotive safety and equipment" and that the scheme "preempt[s] all state law in those fields". (Doc. 7081 at 26, page 17 of Griffin Wheel's Brief, emphasis added).  However, Griffin Wheel does not point to a single regulation relevant to Plaintiffs claims.

and infinitely broad standard for preemption would violate the Supreme Court's recent guidance to accept the alternative "that disfavors pre-emption." Altria Group, 129 S.Ct. at 543 (citation omitted).

## VIII.   Napier and Other Cases Cited by Griffin Wheel Do Not Require Preemption of Plaintiffs' Cases

Napier v. Atlantic Coastline Railroad Company, 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432 (1926) did not concern whether the BIA preempted a state common law tort duty.  Napier concerned preemption of a state statute specifying a particular locomotive design, and the decision arose out of a suit to enjoin enforcement of the state statute.  Id., 47 S.Ct. at 208.  The Supreme Court compared the state statute at issue with the BIA and found that the "federal and the state statutes are directed to the same subject -- the equipment of locomotives." Id., 47 S.Ct. at 210.  The Court found the state's rule for locomotive design preempted by the BIA.

Likewise, Southern Ry. Co v. R.R. Comm., Indiana, 236 U.S. 439, 35 S.Ct. 304, 59 L.Ed. 661 (1915) did not concern whether the SAA preempted a state common law tort duty; and again the state statute and federal law were directed to the same subject.  Southern Ry. Co. concerned preemption of a state statute requiring grab irons or hand holds on rail cars, and the decision arose out of a fine levied against a railroad for allegedly violating the state statute.  Southern Ry. Co., 35 S.Ct. at 304.  The Supreme Court found the state statute was preempted by the SAA, which sets forth its own requirement and penalties for failing to equip cars with hand holds.  Id., 35 S.Ct. at 304, 306.  The Court noted that the railroad was indeed subject to penalties for violating the SAA. Id., 35 S.Ct. at 304.

The Supreme Court has not extended the holdings of Napier or Southern Ry. Co. to preempt state common-law tort claims.  The federal law cited by Griffin Wheel and state law

relied upon by Plaintiffs are not directed to the same subject.  The state law is directed to asbestos and the duty to warn, and it applies equally outside of the railroad industry.  The federal statutes and regulations are directed specifically to railroad equipment, and they are silent with regard to asbestos or the duty to warn.  Napier or Southern Ry. Co. each involved litigation between a state regulator and a railroad regulated by the federal government.  Griffin Wheel's motion is filed in cases between railroad workers and a manufacturer whose customers are regulated by the federal government, though not with regard to the subject matter of these cases.

In Terminal Railroad, supra, the Supreme Court chose not to extend Napier and Southern Ry. Co., where there was no specific federal standard and the state standard was intended to protect railroad worker safety.  In that regard Terminal Railroad more closely resembles Plaintiffs' claims than the matters in Napier and Southern Ry. Co.  At issue in Terminal Railroad was whether a state law requiring cabooses, intended to protect the safety of railroad workers riding at the rear of trains, was preempted by the federal government's authority to regulate cabooses.  The railroad asserted preemption under the BIA, the SAA and the Interstate Commerce Act. Id., 63 S.Ct. at 422.  The Supreme Court held that "these statutes, do not by themselves and unimplemented by any action of the Interstate Commerce Commission[6] lay down any requirement that cabooses shall or shall not be used on any of the runs in question.  Nor is it contended that the Interstate Commerce Commission itself has sought to make any such requirement.  At least in the absence of such action these acts do not themselves preclude the state Order." Id.  The Court went on to note that if the ICC should exercise the power granted to it and determine whether railroads must provide cabooses, the State would be powerless to issue its order. Id.  However, where there was no regulation by the Federal Railroad Administration,

---

[6] This agency regulated railroads at the time.

the Supreme Court found that there was no field preemption of state law protecting railroad workers. Id.   After Terminal Railroad, a subject matter in the field of railroad safety is not preempted until that subject matter is regulated by the FRA.

The Supreme Court more recently permitted a state to enforce its own safety standard, notwithstanding a pervasive regulatory scheme, in Sprietsma v. Mercury Marine, a Div. of Brunswick Corp., 537 U.S. 51, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002).   Sprietsma concerned a common law claim for wrongful death, in which the decedent was allegedly killed by the propeller of a boat's outboard motor.   The defendant argued that the plaintiff's claim, that the absence of a propeller guard rendered the motor unreasonably dangerous, was both expressly preempted by federal statute and field preempted by a scheme of Coast Guard regulations. Id., 123 S.Ct. at 527.   The Supreme Court found that that the applicable federal statute did not expressly preempt common law and that the Coast Guard regulations, particularly the decision not to require propeller guards, did not preempt common law through field preemption.   Prior to the decedent's accident, the Coast Guard had found that propeller guards were not feasible and decided not to set a standard requiring them.  Id., at 525.   The Coast Guard subsequently made the decision to set a standard but had not carried through on its plan at the time of the issuance of the Court's opinion. Id., at 525, 526.   Under the Supreme Court's current standards for preemption, those facts did not support field preemption. Id., at 530.   Where, as here, the FRA has not regulated asbestos or warnings regarding asbestos, the question of whether it has the power to do so or has ever considered doing so is insufficient to support preemption under Sprietsma.

Griffin Wheel's statement that Consolidated Rail Corp. v. Pennsylvania Pub. Util. Comm'n, 536 F. Supp. 653 (E.D.Pa. 1982) was affirmed by the Supreme Court, without further explanation, suggests more than it actually means.   Consolidated was decided on multiple

grounds by the lower courts and summarily affirmed without opinion. Summary affirmances by the United States Supreme Court are not precedential where two different possible explanations for affirmance exist. <u>City of Akron v. Akron Center for Reproductive Rights</u>, 462 U.S. 416 (1983); *overruled on other grounds* <u>Gonzalez v. Carhart</u>, 550 U.S. 124 (2007). Multiple bases for affirmance existed. Though one possible basis was field preemption, the Court found express pre-emption as to speed recording devices under 49 U.S.C. § 20106 because the FRA specifically regulated speedometers on locomotives. <u>Id.</u>, at 657. Since <u>Consolidated Rail Corp.</u> was decided, the Supreme Court has given § 20106(a)(2) broad effect to govern preemption of state law in matters concerning railroad safety, including matters outside the scope of that section's enabling legislation. <u>Easterwood</u>, 113 S.Ct. at 1737. Though § 20106(a)(2) also applies to Plaintiffs claims, there is no preemption because the FRA has not regulated asbestos.

## IX.   OSHA Standards, Not FRA Standards, Apply to Exposures in Railroad Shops, and Preemption Rules Applicable to OSHA Standards Apply to Plaintiffs' Exposure in Shops

Griffin Wheel's motion is filed against numerous railroad workers who were exposed to asbestos brake shoe dust in a variety of places, including railroad repair shops. The FRA, which concerns itself with railroad "operations" (train crews "operating" moving trains), does not and never has regulated safety or health in railroad repair shops. <u>Southern Ry. Co. v. OSHA</u>, 539 F.2d 335, 339 (4th Cir. 1976). In <u>Southern Ry. Co. v. OSHA</u>, the Fourth Circuit Court of Appeals determined that, because the FRA had never regulated working conditions in railroad shops, Occupational Safety and Health Administration ("OSHA") regulations apply to those workplace standards. <u>Id</u>.

In 1978, the FRA reviewed the same question, and not only reached the same conclusion, but also decided to continue to defer to OSHA in the future:

We, therefore, believe that FRA must exercise a continuing role in the area of railroad occupational safety and health.  However, given the present staffing level for field investigation and inspection, the FRA has determined that, at this time, it would not be in the best interests of the public and of railroad safety for this agency to become involved extensively in the promulgation and enforcement of a complex regulatory scheme covering in minute detail, as do the OSHA standards, working conditions which, although located within the railroad industry, are in fact similar to those of any industrial workplace.  Rather, we believe that the proper role for FRA in the area of occupational safety in the immediate future is one that will **concentrate our limited resources** in addressing hazardous working conditions **in those traditional areas of railroad operations** in which we have special competence.

43 Fed. Reg. 10583-10586 (1978).

With regard to shop safety, the FRA expressly determined that it would **not** issue regulations.  It makes little sense to suggest that the FRA's inaction regarding asbestos exposure in railroad shops reflects a decision by the federal government to allow such exposure, especially because such exposure has been regulated by OSHA in essentially every other workplace.  It makes far more sense to simply accept that the FRA has deferred to OSHA to regulate asbestos exposure in railroad maintenance and repair shops.

Griffin Wheel cites the 1996 FRA Report to Congress regarding Cab Working Conditions to support the contention that the FRA has sole authority to regulate asbestos on locomotives. (Doc 7081 at 19, page 10 of brief).  However, in that report, the FRA again deferred to OSHA with respect to asbestos exposure.  The FRA found that OSHA had already adopted specific standards for workers exposed to asbestos and that, "This OSHA rule applies to railroad operating employees."  Federal Railroad Administration, U.S. Dep't of Transportation, Rep. to Congress, Locomotive Crashworthiness and Cab Working Conditions (Sept.1996) at 10-11 (Exhibit 5).  The FRA further found "the use of asbestos in locomotive production was terminated many years ago".  Id., at 10-11, 10-12.  The report concluded that the "FRA does not feel that **further** action with respect to asbestos in locomotive cabs is warranted at this time." Id.,

at 10-12 (emphasis added).   FRA found that OSHA regulations already regulated asbestos exposure to railroad workers and the locomotive manufacturers had removed asbestos from their products.

Because OSHA regulates asbestos exposure in railroad shops, the OSHA preemption standard should determine the question of whether federal regulation of asbestos in railroad shops preempts enforcement of state law in railroad shops.   The statute enabling OSHA to regulate workplaces does not preempt state law claims. <u>Pedroza v. Shell Oil Co.</u>, 942 F.2d 48 (1st Cir. 1991).   The OSHA savings clause states that nothing "…shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C. § 653(b)(4).   Pursuant to 49 U.S.C. § 20106(a)(2), Plaintiffs' state law claims arising out of exposures on the rail line are not preempted.   In addition, pursuant to 29 U.S.C. § 653(b)(4), Plaintiffs' state-law claims are not preempted to the extent they arise out of asbestos exposure occurring in railroad shops.   Summary judgment is not proper because Griffin Wheel has not shown that all of Plaintiffs' alleged exposures, whether occurring on the rail line or in shops, are subject to preemption.  <u>McCain v. CSX Transp., Inc.</u>, --- F.Supp.2d ----, 2010 WL 1659714 (E.D.Pa., 2010).

## CONCLUSION

Congress has put in place a single standard for preemption for all rail safety matters, thus overruling implied field preemption by the BIA and SAA.   49 U.S.C. § 20106(a)(2) starts with a plain statement that state law is enforceable within the field of rail safety, and state law is not preempted unless and until there is federal regulation specific to the matter being preempted.

The statute starts with a presumption that state law is not preempted, and preemption analysis in general likewise starts with a presumption against preemption. § 20106(a)(2) overruled field preemption as to all matters regarding rail safety, as is evidenced by the clear language of the statute, its placement in the statutory scheme, and the legislative history.

Griffin Wheel has failed to overcome the presumption against preemption. It has not presented valid evidence that § 20106(a)(2) covers less ground than "rail safety", nor has Griffin Wheel presented any evidence that it is federally regulated with regard to the subject matter of Plaintiffs' suits – asbestos. Discovery on that issue is outstanding. § 20106(a)(2) governs Griffin Wheel's motion and expressly preserves the state law upon which each Plaintiff brings his claim.

Respectfully Submitted

By:     /s/  Marc C. Greco

Kip A. Harbison, Esquire
Marc C. Greco, Esquire
GLASSER & GLASSER, P.L.C.
Crown Center, Suite 600
580 East Main Street
Norfolk, Virginia 23510

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically transmitted to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to counsel for Defendant Griffin Wheel Company, Larry D. Ottaway on this 14th day of May, 2010.

/s/  Marc C. Greco