IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: ASBESTOS PRODUCTS | : | |
| LIABILITY LITIGATION (No. VI) | : | Civil Action No: |
| | : | MDL 875 |
| This Document Relates to those cases | : | |
| listed on Exhibit A | : | |

MEMORANDUM OPINION

DAVID R. STRAWBRIDGE, U.S.M.J.                                  DECEMBER 13, 2011

Presently before the Court are seven motions[1] related to discovery matters involving one or more of plaintiffs' principal diagnosing and testifying expert physicians, Dr. Alvin J. Schonfeld, Dr. Henry Anderson, and Dr. Ibrahim Sadek and anticipated *Daubert* motions to exclude their diagnoses and testing results. Following upon the issuance of our case management and scheduling order permitting discovery on the *Daubert* issues on September 27, 2011 (e.g. 08-89293, Doc. No. 22), certain disputes arose, leading to these motions. Following extensive briefing, oral argument and *in camera* review of sample documents, the matters are ripe for resolution. Accordingly, by our Order of December 9, 2011, we ruled upon:

1.  **Plaintiffs' Motion for Protective Order Regarding Drs. Anderson and Sadek (01-MD-875, Doc. No. 8060) and**

1A.  **Certain Defendants'[2] Motion to Compel Production of the same (01-MD-875 Doc. No. 8096);**

2.  **Defendants' Motion to Compel Production of Documents from Alvin J.**

---

[1] For organizational purposes, we set out paragraphs 1 through 5 of our Order with reference to the five original motions that were filed. We point out, however, that responses to the first and third of these motions added two opposing motions (1A and 3A) dealing with the same discovery disputes, yielding seven motions to be resolved.

[2] The defendants who filed this Motion to Compel are the same as those who issued the subpoenas at issue—General Electric Co., CBS Corporation, Union Carbide Corp., Bayer CropScience, Inc., Georgia-Pacific LLC, Owens-Illinois, Inc. (hereinafter "Certain Defendants").

        **Schonfeld, D.O. (e.g. 08-89293, Doc. No. 26);**

3.    **Plaintiffs' Motion for Protective Order Regarding Screening Documents (e.g. 11-66288, Doc. No. 74) and**

3A.    **Certain Defendants' Motion to Compel the same (e.g. 11-66288, Doc. No. 80);**

4.    **Plaintiffs' Motion to Compel and/or Verify Compliance with Rule 26(a)(1)(A)(ii) (e.g. 10-67807, Doc. No. 10);**

5.    **Plaintiffs' Motion to Compel Forman Perry Watkins Krutz & Tardy, LLP to Turn Over W.R. Grace Study Documents Relating to Drs. Schonfeld and Anderson (e.g. 11-63482, Doc. No. 235).**

We will discuss numbers 1, 1A, 2, 3, and 3A together, and numbers 4 and 5 in turn.

A.    **Procedural history of 1. Plaintiffs' Motion for Protective Order Regarding Drs. Anderson and Sadek (01-MD-875, Doc. No. 8060) and 1A. Certain Defendants' Motion to Compel Production of the same (01-MD-875, Doc. No. 8096)**

On August 17, 2011, plaintiffs' counsel filed, on behalf of Drs. Anderson and Sadek, a motion for a protective order regarding subpoenas issued to them from Certain Defendants seeking materials concerning the doctors' medical assessments[3] (01-MD-875, Doc. No. 8060). After discussing the issues with the parties on August 18, 2011 (01-MD-875, Doc. No. 8085) and on August 29, 2011 (01-MD-875, Doc. No. 8107), defendants filed their response and motion to compel Drs. Anderson and Sadek to produce the same documents on August 31, 2011 (01-MD-875, Doc. No. 8096). Plaintiffs then filed a reply on September 21, 2011 (01-MD-875, Doc. No. 8150), defendants filed a sur-reply on September 30, 2011 (01-MD-875, Doc. No. 8172), and plaintiffs filed

---

[3] Defendants use the term "screenings" to describe generally the three doctors' assessments or processes of testing for and considering the medical condition of certain persons who participated in work-related activity that potentially could have caused them to be exposed to products containing asbestos. We acknowledge that plaintiffs have taken issue with the usage of this term, asserting that it is "loaded" and improperly categorizes the processes undertaken by physicians on behalf of CVLO. (e.g. 11-66288 Doc. No. 94.) By our usage of this term, we make no judgment as to the type of diagnosing procedure it may or may not imply.

a "Supplemental Authority" brief on October 5, 2011 (e.g. 08-91953, Doc. No. 24), to which defendants filed a response (e.g. 08-91953 Doc. No. 29). On October 7, 2011, the Court held a telephonic oral argument on plaintiffs' motion and ordered defendants to take limited depositions of the two doctors to ascertain the availability of their litigation-related records (e.g. 08-91953, Doc. No. 32). On November 10, 2011, after counsel completed the depositions, defendants filed a supplement to their Motion to Compel based on the information obtained at the depositions (e.g. 08-91953, Doc. No. 48). On November 16, 2011, plaintiffs filed a reply to defendants' response to their "Supplemental Authority" brief (e.g. 08-91953, Doc. No. 54).

On December 7, 8, and 9, 2011, following upon the direction of the Court at oral argument on December 5, 2011, plaintiffs' counsel provided the Court with samples of the materials for which the Court understood that plaintiffs were seeking protection. The Court has conducted an *in camera* review of these materials, which have been filed under seal (01-MD-875 Doc. No. 8310).

**B.     Procedural history of 2. Defendants' Motion to Compel Production of Documents from Alvin J. Schonfeld, D.O. (e.g. 08-89293, Doc. No. 26)**

On October 5, 2011, several defendants filed a motion to compel Dr. Schonfeld to produce certain materials concerning his medical screenings of plaintiffs based upon a subpoena substantially similar to the ones served upon Drs. Anderson and Sadek (e.g. 08-89293, Doc. No. 26). Dr. Schonfeld filed his response to the motion on November 3, 2011 (e.g. 08-89293, Doc. No. 48) and defendants filed their reply on November 7, 2011 (e.g. 08-89293, Doc. No. 50). By Order of November 1, 2011, the Court amended the briefing schedule permitting defendants to take Dr. Schonfeld's deposition on the subject of the availability of his litigation related documents (e.g. 08-89293, Doc. No. 44). After taking the deposition, defendants filed a supplement to their Motion to

Compel Production of Documents by Alvin J. Schonfeld, D.O., on December 5, 2011 (e.g. 08-89293 Doc. No. 69). On December 7, 8, and 9, 2011, following upon the direction of the Court at oral argument on December 5, 2011, plaintiffs' counsel provided the Court with samples of the materials for which the Court understood that plaintiffs were seeking protection. The Court has conducted an *in camera* review of these materials, which have been filed under seal (01-MD-875 Doc. No. 8310).

**C.**    **Procedural history of 3. Plaintiffs' Motion for Protective Order Regarding Screening Documents (e.g. 11-66288, Doc. No. 74) and 3A. Certain Defendants' Motion to Compel the same (e.g. 11-66288, Doc. No. 80)**

On November 1, 2011, plaintiffs filed a motion for a protective order regarding defendants' screening interrogatories and document requests related to the activity of the three doctors (e.g. 11-66288, Doc. No. 74). On November 14, 2011, defendants filed a combined response to plaintiffs' motion and their own motion to compel this material (e.g. 11-66288, Doc. No. 80). Plaintiffs filed a motion for an extension of time to file a response to defendants' new motion and response to plaintiffs' motion (e.g. 11-66288 Doc. No. 84), which we granted in part (e.g. 11-66288 Doc. No. 86). Plaintiffs then filed a response on December 2, 2011 (e.g. 11-66288, Doc. No. 94). On that same date, defendants filed a sur-reply in support of their response to plaintiffs' motion (e.g. 11-66288 Doc. No. 95).

**D.**    **Discussion on Motions 1, 1A, 2, 3, and 3A**

At the December 5, 2011 hearing, the Court heard argument on these motions. At the commencement of the argument, counsel for defendants, Daniel Mulholland, Esq., advised the Court that there had been a substantial narrowing of the issues presented and set out six different categories of documents to which the defendants had now limited their requests. These categories were: (1) the exposure histories of all currently pending CVLO plaintiffs within MDL-875; (2) the medical

and smoking histories of all currently pending CVLO plaintiffs within MDL-875; (3) the materials used to determine the percentage ("positive-negative" rates) at which the diagnosing doctors found asbestos-related diseases when screening potential plaintiffs;[4] (4) the materials used to determine the daily volume of screenings performed by each diagnosing doctor; (5) the "transmittal letters" sent by CVLO to the diagnosing doctors; and (6) the pulmonary function tests ("PFTs") and x-rays ordered by Dr. Sadek in connection with screenings in Wisconsin.[5]  Mr. Mulholland suggested to the Court that we consider resolution of the discovery issues within this framework.  Counsel for plaintiffs agreed with this suggestion.

We agree that this suggestion is helpful and we consider the discovery of the material in each category with reference to the legal issues raised—with particular focus upon relevance, burden and work product.  From this analysis and as our Order of December 9, 2011 (e.g. 01-MD-875 Doc. No. 8306) sets out, we have concluded that both plaintiffs and defendants are entitled to some, but not all, of the relief that has been requested.

### 1.     Relevance and Burden

We generally conclude that the materials sought by defendants in all six categories are the proper subjects of discovery to the extent that they are relevant or "reasonably calculated to the lead the discovery of relevant evidence." *See* Fed. R. Civ. P. 26(b)(1), *Small v. Provident Life & Accid.*

---

[4] Paragraph 3 of the subpoenas at issue seeks documents relating to the "number or percentage of litigants or potential litigants found positive and/or negative at screenings, tests, examinations or evaluations."  As plaintiffs correctly point out in their reply brief to their Motion for Protective Order (e.g. 11-66288 Doc. No. 94), this category of documents does not apply to Dr. Sadek, who "has not provided CVLO any B-reads."

[5] This last category of documents refers only to records related to Dr. Sadek; all others relate to each of the three doctors, except for those regarding B-Reads, which Dr. Sadek did not complete.

*Ins. Co.*, 98-2934, 1999 WL 1128945, *1 (E.D. Pa. Dec. 9, 1999)(holding that "discovery need not be confined to matters of admissible evidence but may encompass that which 'appears reasonably calculated to lead to the discovery of admissible evidence'" (*quoting* Fed. R. Civ. P. 26(b)(1)).)[6] These conclusions are in accordance with previously entered orders in MDL-875 from Presiding Judges James T. Giles and Eduardo C. Robreno, as well as one of our own Memorandum Opinions. *See, e.g.,* 08-88575, Doc. No. 11 (Judge Giles' February 2, 2007 order regarding a similar subpoena to Dr. Schonfeld); 01-MD-875, Doc. No. 5815 (Judge Robreno's February 24, 2009 opinion holding that all documents relevant to MDL-875 were included in the scope of the subpoena); 09-MC-103, Doc. Nos. 2 and 6 (our Order and Memorandum Opinion on the "Renewed Combined Motion and Brief to Compel Dr. Jay T. Segarra's Production of Documents and Responses to the Subpoena").

Acknowledging some exceptions referred to within, we are not prepared to permit the broader scope of discovery sought by defendants. This question arises in connection with plaintiffs' motion 3 and defendants' motion 3A regarding the interrogatories and a request to produce certain screening documents. (e.g. 11-66288, Docs. 74 and 80). The discovery requests consist of just two interrogatories and one request for production. Interrogatory #1 requests that plaintiffs "identify all doctors, x-ray technicians, x-ray companies, pulmonary test technicians, pulmonary testing companies, and other personnel or entities involved in screenings or medical evaluations of *Plaintiff* for an asbestos disease, and the services performed by each such person or entity" (e.g. 11-66288 Doc. No. 74) (emphasis added). To the extent that it pertains to the identification of "personnel or entities involved in screenings or medical evaluations of Plaintiff," who is a currently pending CVLO

---

[6] With respect to all material that fell outside of the six categories, we deem those requests to be withdrawn and accordingly have denied them as moot and without prejudice.

plaintiff in MDL-875, plaintiffs' Motion for Protective Order has been **DENIED**. To the extent that it pertains to the identification of "personnel or entities involved in screenings or medical evaluations of Plaintiff," who is *not a currently pending CVLO plaintiff* in MDL-875, plaintiffs' Motion for Protective Order has been **GRANTED**.

Interrogatory #2 calls for the identification of documents used or generated by the individuals who have been identified in Interrogatory #1. Interrogatory #2, however, is not limited to the identification of documents from these medical sources concerning "Plaintiff," but rather seeks identification of documents pertaining to "all other persons represented by the Cascino Vaughan Law Offices for asbestos-related disease" (e.g. 11-66288 Doc. No. 74). Defendants do not even limit this request to those who have presented with medical evaluations done by Drs. Schonfeld, Anderson or Sadek. In this respect defendants go too far. To the extent that the request pertains to the identification of documents regarding any "Plaintiff" who is a currently pending CVLO plaintiff in MDL-875, we have **DENIED** plaintiffs' Motion for Protective Order. To the extent that Interrogatory #2 pertains to the identification of documents regarding "all other persons represented by Cascino Vaughan Law Offices," who are not currently pending plaintiffs in MDL-875, we have **GRANTED** plaintiffs' Motion for Protective Order.

With respect to the production of materials, defendants' request again must be limited to all currently pending CVLO plaintiffs in MDL-875. Accordingly, we have **GRANTED** plaintiffs' Motion for Protective Order as to the production of documents to "all other persons represented by Cascino Vaughan Law Offices."[7]

---

[7] Plaintiffs argue that "[i]t would be a tremendous burden" and also repetitive to require each plaintiff to provide the kind of identifying information defendants seek. (e.g. 11-66288
(continued...)

With respect to plaintiffs' Motion for Protective Order regarding the materials from Drs. Anderson and Sadek (01-MD-875, Doc. No. 8060) (motion 1), and defendants' Motion to Compel with respect to the materials of Dr. Schonfeld (e.g. 08-89293, Doc. No. 26) (motion 1A), we acknowledge that the subject of the document requests go beyond the clearly discoverable exposure, medical and smoking histories and could include those materials that defendants seek as a basis to determine the "positive-negative" rates or the volume of screenings performed by a particular doctor on a particular date. We accept that this information is not directly relevant to a particular plaintiff's case, as a plaintiff's exposure or medical history would be.

We are satisfied, however, that defendants have raised significant issues with some support that warrant further discovery. We have concluded that this discovery will be permitted for the limited purposes of determining positive-negative rates or the volume of screenings performed on a day pertinent to a particular plaintiff. We also accept that working out the details of a proper limitation may involve certain challenges. We are pleased to see that counsel have pledged to work together to overcome those challenges and establish a mutually-agreeable process. We have now ordered that they do so and we expect that they understand that the scope of our Order in these two limited areas is broader than that which pertains specifically to particular plaintiffs.

Certain defendants have vigorously argued that the screening procedures used by CVLO and these three doctors are highly suspect; they repeatedly cite the decision of Judge Janis Graham Jack

---

[7](...continued)
Doc. No. 74.) They refer to the AO12 submissions they have made, for example, as a source of this information already in defendants' possession. We point out that plaintiffs are free to say in their interrogatory responses that they have previously provided this information, as a means to avoid any burdensome production of duplicative material, but we would not consider this a sufficient answer unless plaintiffs also identify with particularity where and how that information has been produced.

in *In re Silica Products Liability Litigation*, 398 F. Supp. 2d 563 (S.D. Tex. 2005), which indeed was highly critical of certain screening techniques utilized by doctors involved in those cases. Specifically, defendants' counsel highlights that "[i]n the Silica MDL, Judge Jack characterized lawyer-generated diagnosing reports such as those CVLO apparently created for many of its plaintiffs as 'lawyers practicing medicine and doctors practicing law,'...and held them to be inadmissible under Rule 702" (e.g. 11-66288 Doc. No. 80, *quoting In re Silica Products Liability Litigation*, 398 F. Supp. 2d 563, 632-635 (S.D. Tex. 2005). Defendants have emphasized certain associations between practices and procedures utilized here and the practices and procedures so severely criticized by Judge Jack.

While we may have some question about whether defendants will be able to successfully mount the same kind of challenge here, we have no hesitation granting them the expanded discovery they seek. Defendants have pointed out that there are at least two studies, that of Dr. Daniel Henry and the second of Professor Lester Brickman, that would tend to support an argument that the positive-negative rates achieved by Drs. Schonfeld, Anderson and Sadek were out of line with what would be expected to be the norm and argue that, for this reason, they are unreliable (e.g. 11-66288 Doc. No. 80). Plaintiffs, for their part, have criticized the reports upon which defendants rely. We do not resolve this question by this Memorandum Opinion. Rather, we have simply ordered that certain discovery be produced with the limitations imposed such as to give defendants access to certain of the materials sought as long as it is not unduly burdensome is not imposed.

With respect to the issue of burden, plaintiffs have argued generally that the production of the materials sought would impose an undue burden upon them and that the potential benefits of the discovery would not justify that imposition. We do not agree and conclude that the production of

the material sought from the physicians and from CVLO with respect to exposure, medical and smoking histories of all currently pending CVLO plaintiffs within MDL-875 is not unduly burdensome, particularly in light of the circumstance that defendants have agreed to staff and manage the production of these materials at their own cost. Obviously, the final reports of the experts ("e.g. B-Reads and causation letters") and the "facts and data considered by the doctors, such as medical records, exposure history, and reports of other experts" (e.g. 11-66288, Doc. 94) are of particular relevance. Indeed, plaintiffs have acknowledged as much and have agreed to produce these materials with the limitation interposed by plaintiffs that they are not agreeable to certain forms of "transmittal letters," which we discuss within. Similarly, with respect to all PFTs and x-ray orders materials sought regarding Drs. Anderson and Schonfeld (category 6), we deem the subpoena requests to be withdrawn (*see* footnote 6 and accompanying text), and accordingly have **DENIED** the relief sought as moot and without prejudice.

We also conclude that the production of the information sought with respect to producing "positive and negative" rates and volume of potential plaintiffs screened by a doctor on any particular day need not be unduly burdensome and again note that the defendants have agreed to facilitate the production of this material and pay all reasonable costs associated with that production. Following upon the discussion with respect to the potential production of this material, counsel for plaintiffs and defendants,[8] through CVLO and Forman Perry, have been ordered to work together to reach an agreement on the least intrusive, most expeditious way to provide the defendants the information reasonably needed to undertake the testing exercise. Counsel have been ordered to make

---

[8] At oral argument on December 5, suggestions were made by both sides (e.g. using "negative" B-reads CVLO has stored, and using billing records) that they committed to explore.

every effort to reach agreement by December 15, 2011 and if they are unable to do so, provide a specific proposal, including an appropriate form of order to the Court by December 16, 2011.[9]

### 2.   Work Product Privilege

A specific issue has arisen with respect to the production of "transmittal letters" that plaintiffs provided to the three doctors. It appears that these letters may have furnished certain information about exposure, medical and smoking history to the doctors and may have been utilized by them in the formation of any letters or reports provided to counsel to support a claim. Plaintiffs argue that these "transmittal letters" are work product and are subject to the protection set out in Fed. R. Civ. P. 26(b)(3)(A) *Trial Preparation: Materials,* which states:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney ...). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> >
> > (ii) the party shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain the substantial equivalent by other means.

Defendants point out that it is the "subject to Rule 26(b)(4)" (pertaining to the discovery of expert material) reference which must be analyzed in that the transmittal letters provide certain information to the expert physicians. The relevant portion of Rule 26(b)(4), as amended, reads:

> Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under 26(a)(2)(B) regardless of the form of the communications except to the extent that the communications:

---

[9] The Court would expect that counsel shall reach reasonable confidentiality agreements limiting the extent of any discovery.

>   (i) relate to compensation for the expert study or testimony;
>
>   (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>
>   (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(C). The question that arises is whether information provided constitutes "facts or data" or "assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C)(ii) and (iii).

Counsel for defendants have presented in their papers some evidence to indicate that CVLO in fact provided the doctors information in the form of draft correspondence, prepared as letters on the doctors' letterheads that would then come back to CVLO from one of the physicians and where there would be certain spaces left blank (or, in some cases, filled out at least in part by CVLO) indicating exposure history, medical history, and certain anticipated conclusions or medical opinions. Without making any concessions as to whether this practice existed, or its impropriety, CVLO has argued that the transmittal letters should be entitled to protection, not just pursuant to Fed. R. Civ. P. 26(b)(3)(A), but also pursuant to Fed. R. Civ. P. 26(b)(4)(C), which protects communications between a party's attorney and expert witnesses.

Plaintiffs argue that Rule 26(b)(4) has been amended to "prohibit[] discovery of draft expert reports as well as non-testifying expert communications " (e.g. 11-66288 Doc. No. 94). Plaintiffs point out that the December 2010 "amendments to Rule 26 expressly protect drafts of expert reports." Indeed, Fed. R. Civ. P. 26(b)(4)(B) states that "Rules 26(b)(3)(A) and (B) protect drafts of any reports and disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded."

Similarly, Rule 26(b)(4)(C) provides that "Rule 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B) regardless of the form of the communications, *except*...." (emphasis added). It is the exceptions that pertain to the identification of "facts or data" or "assumptions" that are at issue here.

We do not view these changes to apply to the motions before us in the way that plaintiffs' suggest.[10] Rather, we view the information and format that CVLO provided to its diagnosing doctors regarding individuals' exposure, medical, and smoking histories to fall squarely within the definition of all "facts or data" considered by the expert, which the amendments will not protect under Rule 26(b)(3)(A) or (B). As the subcommittee notes to the Rule explain,

> the intention is that 'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, *from whatever source*, that contains factual ingredients. The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert.

Advisory Committee's Notes on 2010 Amendments, Fed. R. Civ. P. 26 Subdivision (a)(2)(B) (emphasis added). Accordingly, defendants are entitled to any documents (in their original format) CVLO provided the doctors, that the doctors "considered," including draft letters, as they are

---

[10] The rule protects from disclosure the "mental impressions, conclusions, opinions or legal theories of a party's attorney." Fed. R. Civ. P. 26(b)(3)(B). A lawyer who provides objective facts or data to a doctor, as was done here in the context of the "transmittal letters" is not conveying "mental impressions, conclusions, opinions or legal theories."

As the Amendment has been recently codified, it remains to be determined how courts will interpret its provisions. As one commentator notes, an "unanswered question is whether counsel will be able to use Rule 26(b)(4)(B) to trump Rule 26(b)(4)(C)(ii-iii)–can counsel protect from discovery facts or data considered by or assumptions relied upon by a retained expert by providing some in a draft report." *See* George Lieberman, *"Experts and the Discovery/ Disclosure of Protected Communication,"* 78 Defense Counsel Journal 220, 227 (Apr. 2011). As this defense counsel commentator surmises, "[c]ourts would not seem to be receptive to such an obvious loophole, and caution dictates against embarking upon such a course without the support of new case law in support of such a practice." *Id.* We endorse this view.

"communications" that identify "facts or data" and "assumptions."[11] We further conclude that this material is discoverable regardless of whether it is presently in the possession of any of the doctors, CVLO, or anyone under their control.

As part of the consideration of this aspect of the motion, we required plaintiffs to submit *in camera* samplings of these transmittal letters. On December 7, 8 and 9, 2011, CVLO provided three separate packets of documents which collectively represent 170 pages that were reportedly responsive to the Court's direction. Further, on December 8, 2011, the Court engaged in a *ex parte* recorded conversation with Michael Cascino, Esq. where he articulated some further description of the documents and the process by which CVLO corresponded with the doctors regarding diagnostic information pertaining to individuals represented by CVLO at various periods of time over the last twenty years. We have concluded from our independent review of these documents that they represent communications between the parties' attorney and an expert, and they specifically identify "facts or data" for the expert to consider in forming opinions, and may well be considered to contain assumptions that "the party's attorney provided" and that the expert relied upon.[12] Further, they do not represent the "mental impressions, conclusions, opinions or legal theories of a party's attorney." Fed. R. Civ. P. 26(b)(3)(B).

---

[11] We note with respect to Dr. Anderson, that he has in his possession copies of his handwritten notes. These do not fall under the draft report provision of Rule 26(b)(4)(B). These notes were not "draft reports," but rather reflect his own interpretations of the B-read results he was retained to analyze for CVLO. Accordingly, they should be considered "the expert's testing of material involved in litigation, and notes of any such testing," which are not "exempted from discovery by" Rule 26. *See* Advisory Committee's Notes on 2010 Amendments, Fed. R. Civ. P. 26 Subdivision (b)(4).

[12] By Order of December 12, 2011, we have caused the documents presented *in camera* to be filed under seal. We have also directed that a transcript be prepared of the *ex parte* session with Mr. Cascino and that it also be filed under seal.

**E.     Plaintiffs' Motion to Compel and/or Verify Compliance with Rule 26(a)(1)(A)(ii):**

On October 26, 2011, plaintiffs filed a motion to compel defendants to produce any information they had collected regarding Drs. Schonfeld, Anderson, and Sadek, pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii) (e.g. 10-67807, Doc. No. 10).  Defendants responded to the motion on November 7, 2011 (e.g. 10-67807, Doc. No. 14) and plaintiffs filed their reply on November 14, 2011 (e.g. 10-67807, Doc. No. 17).

After considering all of the submitted materials relating to this motion, we conclude that plaintiffs interpret the Rule 26 disclosure issues somewhat more broadly than we do.  Rule 26(a)(1)(A)(ii) provides that

> Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated by the court, a party must, without awaiting a discovery request, provide to the other parties:...a copy—or a description by category and location—of all documents...and tangible things that the disclosing party has in its possession, custody or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

Plaintiff argues that the documents and other information defendants have assembled with respect to Drs. Schonfeld, Anderson and Sadek are materials that would support its "claims or defenses."

We do not agree.  In addition to the implications of the protection of the attorney's work product, we note that Rule 26(a)(2), which applies specifically to "disclosure of expert testimony," begins with "[i]n addition to the disclosures required by Rule 26(a)(1), a party must...".  We consider this explicit distinction between *initial* disclosures under Rule 26(a)(1) and *required* disclosures under Rule 26(a)(2), to be purposeful and observe that references to any documents or information that a party "may use to support its claims or defenses, unless the use would be solely for impeachment," which appears in Rule 26(a)(1), does not appear in Rule 26(a)(2) and therefore does

not apply to expert testimony. We do not find any other authority, nor does plaintiff direct us to any, to support an application of the Rule as plaintiffs suggest. Accordingly, the motion has been **DENIED.**[13]

F. **Plaintiffs' Motion to Compel Forman Perry, Watkins, Krutz & Tardy, LLP to Turn Over W.R. Grace Study Documents Relating to Drs. Schonfeld and Anderson (e.g. 11-63482, Doc. No. 235)**

On November 21, 2001, plaintiffs filed a Motion to Compel the law firm of Forman, Perry, Watkins, Krutz & Tardy, LLP to turn over all documents in their possession concerning Drs. Schonfeld and Anderson from the W.R. Grace Bankruptcy Trust (e.g. 11-63482, Doc. No. 235). Defendants responded to the motion on November 25, 2011 (e.g. 11-63482, Doc. No. 242) and plaintiffs replied on November 30, 2011 (e.g. 11-63482 Doc. No. 243). On December 2, 2011, Defendants filed a sur-reply (e.g.11-63482, Doc. No. 245).

Defendants have, in their various presentations of the *Daubert* issue, made reference to a report from the W.R. Grace Bankruptcy proceedings concerning Dr. Henry Anderson (e.g. 08-88250 Doc. No. 34). Plaintiffs also claim that certain of Dr. Schonfeld's B-reads were audited in the W.R. Grace bankruptcy proceedings and that Dr. Schonfeld was found not to have over-read x-rays. Plaintiffs allege that defendants and their consultant Dr. Daniel Henry are withholding evidence to which they are entitled.

Apparently Dr. Henry prepared an expert report to be relied upon by defendants in their anticipated *Daubert* motion, using some x-ray evidence that was not made part of the public record.

---

[13] At the December 5, 2011 hearing, the Court made clear that it expects that defendants will not seek to introduce evidence not previously disclosed at a *Daubert* hearing. Defense counsel stated that he had no intention of utilizing or presenting any information that had not first been disclosed in the pleadings or that plaintiffs did not already have in their possession.

Defendants assert that the presiding Bankruptcy Judge Judith K. Fitzgerald, entered an "Order Regarding X-ray Evidence" on December 22, 2006, in which she prohibited the use or disclosure of the x-ray evidence used by Dr. Henry in rendering his report. In declining to produce the evidence demanded by plaintiffs in connection with this motion, defendants cite this Order where it appears that the parties interpret the relevant aspect of the Order differently (e.g. 08-88250 Doc. No. 32).

After considering all of the submitted materials and the testimony relating to this motion, we conclude that it would not be appropriate for us to interpret Judge Fitzgerald's Order. We believe that the appropriate place for plaintiffs to pursue the relief they seek is with the bankruptcy court that issued the Order. Accordingly, we have **DENIED** plaintiffs' motion**.**

BY THE COURT:

 /s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE